UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Honeywell International Inc., <br><br> *Plaintiff*, <br> v. <br><br> Buckeye Partners, L.P., Buckeye GP LLC, Buckeye Pipe Line Company, L.P., Buckeye Pipe Line Holdings, L.P., <br><br> *Defendants*. | Civil Action No.: 5:18-CV-0646 <br> (FJS/DEP) |

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO CONSOLIDATE AND FOR JUDGMENT ON THE PLEADINGS

HANCOCK ESTABROOK LLP
John G. Powers, Esq. (508934)
Wendy A. Marsh, Esq. (302274)
Paul J. Tuck, Esq. (520814)
1500 AXA Tower I
100 Madison St.
Syracuse, NY 13202
(315) 565-4500

COUNSEL FOR DEFENDANTS
*Buckeye Partners, L.P., Buckeye GP LLC,*
*Buckeye Pipe Line Company, L.P., and Buckeye Pipe Line Holdings, L.P*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ........................................................................................... 1

BACKGROUND ................................................................................................................... 2

MOTION TO CONSOLIDATE ........................................................................................... 5

I.      Standard for Consolidation ...................................................................................... 5

II.     The *Buckeye* and *Sunoco* Actions share common questions of law and fact sufficient to warrant consolidation................................................................................................. 6

III.    The *Johnson* factors weigh in favor of consolidation. ........................................... 8

MOTION FOR JUDGMENT ON THE PLEADINGS ........................................................ 10

I.      Standard of Review.................................................................................................. 10

II.     Honeywell failed to plausibly allege the release of any "hazardous substances," precluding its CERCLA claims. ............................................................................... 11

        A.      The Petroleum Exclusion ............................................................................ 11

        B.      The petroleum exclusion unquestionably applies to Honeywell's CERCLA claims…………………………………………………………………………… 14

III.    Honeywell's OPA claim must be dismissed............................................................ 15

        A.      The OPA claim is untimely.......................................................................... 15

        B.      The OPA is not properly pleaded in this case.............................................. 16

        C.      Like with Sunoco, Honeywell failed to comply with the OPA's presentment requirement……………………………………………………………………... 18

        D.      Likewise, Honeywell's OPA claim fails because Honeywell is not a responsible party……………………………………………………………………………… 19

IV.     Honeywell's state law claims should be dismissed. ................................................ 19

        A.      Sunoco's preemption argument applies with equal force to Buckeye. ................ 19

        B.      Navigation Law claims cannot be premised on a voluntary clean-up. ................ 19

V.      Buckeye adopts all other applicable Sunoco arguments.................................................. 20

VI.     Conclusion ................................................................................................................ 20

# TABLE OF AUTHORITIES

<u>**Cases**</u>                                                                                                    **Page(s)**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)…………………………………………………………………...11

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007)…………………………………………………………………...11

*Boca Ciega Hotel, Inc. v. Bouchard Transp. Co.*,
    51 F.3d 235 (11th Cir. 1995)…………….......................................................................18

*Brady v. Top Ships Inc.*,
    324 F. Supp. 3d 335 (E.D.N.Y. 2018)……………………………………………….8

*City of New York v. Exxon Corp.*,
    766 F. Supp. 177 (S.D.N.Y.1991)………………………………………………………13

*Cleveland v. Caplaw Enters.*,
    448 F.3d 518 (2d Cir. 2006)……………………………………………………………...10

*Consorti v. Armstrong World Indus., Inc.*,
    72 F.3d 1003 (2d Cir. 1995)……………………………………………………………...10

*Consorti v. Owens-Corning Fiberglas Corp.*,
    518 U.S. 1031 (1996)……………………………………………………………………...10

*Darezzo v. 200 Ninth Rest. LLC*,
    Nos. 14 Civ. 9081(PAE), 14 Civ. 5099(PAE), 2015 WL 195852
    (S.D.N.Y. Jan. 14, 2015)………………………………………………………………….8

*DeRogatis v. Bd. of Trs. of the Cent. Pension Fund of the Int'l Union of Operating Eng'rs*,
    No. 13 CIV. 8788 CM, 2015 WL 936114 (S.D.N.Y. Mar. 3, 2015)……………………10

*Devlin v. Transp. Commc'ns Int'l Union*,
    175 F.3d 121 (2d Cir. 1999)……………………………………………………………....6

*Hoffman v. Ighodaro*,
    No. 16 Civ. 0155 (LAK) (JCF), 16 Civ. 4380 (LAK) (JCF), 2016 WL 5812666
    (S.D.N.Y. Sept. 28, 2016)…...…………………………………………………………….7

*Hyman v. Cornell Univ.*,
    834 F. Supp. 2d 77 (N.D.N.Y. 2011)………………………………………………………10

*In re Methyl Tertiary Butyl Ether ("MBTE") Prods. Liab. Litig.*,
    2007 WL 1601491 (S.D.N.Y. June 4, 2007)…………………………………………………19

*In re Oil Spill*,
    808 F. Supp. 2d 943 (E.D. La. 2011)……………………………………………………18

*Jacobs v. Castillo*,
    612 F. Supp. 2d 369 (S.D.N.Y. 2009)……………………………………………………9

*James v. Correct Care Sols*.,
    No. 13-CV-0019 NSR, 2013 WL 5730176, at *3 (S.D.N.Y. Oct. 21, 2013)……………11

*Johnson v. Celotex Corp.*,
    899 F.2d 1281 (2d Cir. 1990)……………………………………………………5, 6, 8, 9, 10

*State of New York v. Almy Brothers Inc*.,
    No. 90-CV-818, 1998 WL 438523 (N.D.N.Y. July 31, 1998)………………………13, 14

*Wademan v. Concra*,
    13 F. Supp. 2d 295 (N.D.N.Y. 1998)……………………………………………………13

*White Plains Hous. Auth. v. Getty Properties Corp*.,
    No. 13-CV-6282 NSR, 2014 WL 7183991 (S.D.N.Y. Dec. 16, 2014)……...11, 12, 13, 14

*Wilshire Westwood Assocs. v. Atlantic Richfield Corp*.,
    881 F.2d 801 (9th Cir. 1989)…………………………………………………...12, 13

**Statutes and Rules**

33 U.S.C. § 2701…………………………………………………………………………...17, 18

33 U.S.C. § 2702…………………………………………………………………………....17, 18

33 U.S.C. § 2713……………………………………………………………………………18

33 U.S.C. § 2717……………………………………………………………………………15, 17

42 U.S.C. § 9601…………………………………………………………………………………11

Federal Rule of Civil Procedure 12………………………………………………………...10

Federal Rule of Civil Procedure 42………………………………………………………………5

General Order 12 § G(2)……………………………………………………………………8

N.Y. Nav. Law § 172………………………………………………………………………19

N.Y. Nav. Law § 181.....……………………………………………………………………19

Buckeye Partners, L.P., Buckeye GP LLC, Buckeye Pipe Line Company, L.P., and Buckeye Pipe Line Holdings, L.P (collectively, "Buckeye") move to consolidate this case with a companion action pending in this Court involving identical factual and legal issues pursuant to Rule 42 of the Federal Rules of Civil Procedure and, thereafter, dismiss this action pursuant to Rule 12(c) of the Federal Rules of Civil Procedure for the reasons set forth below.

## PRELIMINARY STATEMENT

Where appropriate, judicial economy can be achieved by joining together actions growing out of the same set of facts. For instance, where two or more actions assert the same legal causes of action based on the same factual proof, joinder of cases can reduce litigation costs, speed recoveries, and make more economical use of the court's time. By the same token, it is highly inefficient to proceed with multiple trials involving essentially the same case because the demand on the Court's and the parties' resources doubles and the potential for inconsistent outcomes on the same issues is created.

The two actions subject to this motion for consolidation present a classic example of the appropriate circumstances for consolidation. Both *Honeywell International Inc. v. Buckeye Partners, L.P., et al*., Civ. No. 5:18-CV-646 (FJS/DEP) (the "*Buckeye* Action") and *Honeywell International Inc. v. Sunoco (R&M), LLC et al.*, Civ. No. 5:18-CV-1176 (FJS/DEP) (the "*Sunoco* Action") relate to the same operative set of facts and involve overlapping legal determinations. Thus, consolidation would promote judicial efficiency and avoid the threat of inconsistent verdicts. Accordingly, Buckeye respectfully seeks an Order consolidating these actions.

As the Court is aware, Defendants in the *Sunoco* Action have recently moved to dismiss Honeywell's case against them. *See Sunoco* Action, Dkt. No. 18-1. Given the legal and factual similarity between the claims in both actions, Buckeye joins Sunoco's motion to dismiss and submits this brief to amplify those arguments, address some inconsequential factual differences

that are present in the allegations, and assert several additional grounds to dismiss. To that end, Plaintiff Honeywell International Inc.'s (hereinafter, "Honeywell's") Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA") claims are based solely on releases of petroleum and petroleum products. Because CERCLA excludes petroleum products from its definition of "hazardous substances," Honeywell is unable to sufficiently or viably plead entitlement to relief.

Moreover, Honeywell's Oil Pollution Act ("OPA") claim is time barred. Additionally, Honeywell has improperly pleaded this claim and failed to otherwise comply with statutory prerequisites to assert an OPA claim. To that end, Honeywell failed to tie its claim for damages to any specific "incident" post-dating August 1990, and failed to present its claim to Buckeye in a sum certain before commencing suit. Finally, neither Honeywell nor Buckeye has been designated a "responsible party" as required under the OPA. Consequently, Honeywell's OPA claim should be dismissed.

With regard to Honeywell's state law claims, they are preempted because Honeywell is attempting to achieve through New York law that which it is only entitled to receive through CERCLA. Moreover, Honeywell's Navigation Law claim that relates to the parcel of land referred to as "SYW-12" cannot go forward because Honeywell has accepted responsibility to remediate that area voluntarily.

Accordingly, for the reasons described below, the Court should consolidate the *Buckeye* and *Sunoco* actions, consider the motions to dismiss together, and dismiss this action in its entirety.

## **BACKGROUND**

A study of Onondaga Lake provides a lesson in the extensive environmental price of unchecked industrial proliferation and the power of the CERCLA. As this Court is aware, given its substantial involvement in the litigation related to Onondaga Lake, Honeywell has undertaken

substantial remediation activities at the Onondaga Lake Superfund Site (the "Site"). The two actions subject to Buckeye's motion to consolidate each represent Honeywell's effort to recuperate part of the millions of dollars it has spent on this remediation.

Through these lawsuits, Honeywell seeks contribution from Buckeye and Sunoco for a portion of the Site remediation allegedly related to their historical operations in Syracuse, New York relative to the transport and storage of petroleum products. As the Complaints allege, Buckeye and Sunoco each owned properties and operated their respective business in an area of land south-east of the lake known as "Oil City." *See Buckeye* Action, Dkt. No. 1 ("Buckeye Compl.") ¶ 78 (providing a map of the location of Buckeye's operation); *Sunoco* Action, Dkt. No. 1 ¶ 78 (providing a map of the location of Sunoco's operation).

Buckeye's presence at Oil City was two-fold. For one, Buckeye owned and operated a pipeline that transported petroleum products to a manifold location that thereafter pumped the product to other company's tank terminals for storage. *See Buckeye* Compl. ¶ 114. Buckeye also briefly owned and operated a tank terminal from 1983 to 1990 that stored various petroleum products including gas, kerosene, diesel, and fuel oil no. 2. *See id.* ¶¶ 125, 133-34.

According to Honeywell, "spills and leaks" occurred from Buckeye's pipeline during Buckeye's period of ownership and operation. *See id.* ¶ 120; *see also id.* ¶¶ 121-24 (providing examples). Similarly, Honeywell alleges that "[s]pills and leaks of petroleum and hazardous substances" were documented at the Buckeye terminal during Buckeye's ownership. *See id.* ¶ 135.

Honeywell contends that these "spills and leaks" from Buckeye's oil tanks and pipeline contributed to contamination at two subsites on, in, and near Onondaga Lake. To wit, an area in the southern part of the lake known as "SMU-6," where Honeywell completed capping and

dredging, and a wetland/marsh area known as "SYW-12" that is on the south-easterly banks of

Onondaga Lake. The picture below, found at Buckeye Compl. ¶ 66, approximates these two sites:



Though Honeywell does not appear to allege any direct discharge from the former Buckeye

properties or pipeline directly at SMU-6 or SYW-12, Honeywell presents several "pathways" for

which spilled and leaked petroleum may have found its way to the impacted areas. In that regard,

Honeywell asserts that groundwater flow, sediment movement from the barge canal, and historic

dredging of the barge canal are the primary means through which contaminates that were originally

spilled in Oil City moved to SMU-6 or SYW-12. *See id.* ¶¶ 207-27.

In the *Sunoco* action, Honeywell pleads identical theories of liability against Sunoco

alleging contamination of SMU-6 or SYW-12 via the same pathways—*i.e.*, groundwater flow,

sediment movement from the barge canal, and historic dredging of the barge canal—as alleged

against Buckeye.

Based on these factual allegations, Honeywell asserted the following claims against both

Buckeye and Sunoco: (1) a CERCLA cost recovery claim for SYW-12 response costs; (2) a

CERCLA contribution claims for costs related to the remediation of SMU-6; (3) a CERCLA contribution claim for Natural Resource Damages ("NRD"); (4) an OPA contribution claim related to SMU-6 and SYW-12; (5) a New York Navigation Law claim related to SMU-6 and SYW-12; and (6) a New York common law contribution claim.

Sunoco moved to dismiss Honeywell's action against it on several grounds, including: (1) that Honeywell's action is based on alleged releases of petroleum and therefore cannot, by definition, state a CERCLA claim; (2) that the OPA claim fails because Honeywell never presented its claim to Sunoco in a "sum certain" prior to bringing suit; (3) that the OPA claim similarly fails because Honeywell was never designated as a "responsible party" under the statute; and (4) that CERCLA preempts Honeywell's New York state causes of action.

Buckeye brings this motion now to consolidate these two related cases and to dismiss Honeywell's claims against it on the same grounds as Sunoco and on several additional grounds as stated below.

## **MOTION TO CONSOLIDATE**[1]

### I.      **Standard for Consolidation**

Federal Rule of Civil Procedure 42(a) governs consolidation and provides as follows:  "If actions before the court involve a common question of law or fact, the court may: (1) join for hearing or trial any or all matters at issue in the actions; (2) consolidate the actions; or (3) issue any other orders to avoid unnecessary cost or delay." Fed. R. Civ. P. 42(a); *accord Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284 (2d Cir. 1990) ("Rule 42(a) of the Federal Rules of Civil Procedure empowers a trial judge to consolidate actions for trial when there are common questions of law or fact to avoid unnecessary costs or delay"). Rule 42(a) "should be prudently employed as

---

[1] Through its counsel, Honeywell indicated its consent to consolidate its suit against Buckeye (5:18-CV-0646 (FJS/DEP)) with its suit against Sunoco (5:18-CV-01176 (FJS/DEP)).

a valuable and important tool of judicial administration, invoked to expedite trial and eliminate unnecessary repetition and confusion." *Devlin v. Transp. Commc'ns Int'l Union*, 175 F.3d 121, 130 (2d Cir. 1999) (internal quotation marks and citation omitted).

Courts enjoy "broad discretion to determine whether consolidation is appropriate," *Johnson*, 899 F.2d at 1284, and, when exercising that discretion, take the view that "considerations of judicial economy favor consolidation." *Id.* at 1285. That said, "the discretion to consolidate is not unfettered," and "[c]onsiderations of convenience and economy must yield to a paramount concern for a fair and impartial trial." *Id.* To that end, a court exercising its broad discretion to consolidate should consider the following: (1) "[w]hether the specific risks of prejudice and possible confusion are overborne by the risk of inconsistent adjudications of common factual and legal issues"; (2) "the burden on parties, witnesses, and available judicial resources posed by multiple lawsuits"; (3) "the length of time required to conclude multiple suits as against a single one"; and (4) "the relative expense to all concerned of the single-trial, multiple-trial alternatives." *Id.* A court should also consider that "the risks of prejudice and confusion may be reduced by the use of cautionary instructions to the jury and verdict sheets outlining the claims of each plaintiff." *Id.*

## II.     The *Buckeye* and *Sunoco* Actions share common questions of law and fact sufficient to warrant consolidation.

The *Buckeye* and *Sunoco* Actions share common questions of law and fact, warranting consolidation. For example, Honeywell alleges in each lawsuit that each of the named defendants released petroleum which ended up in Onondaga Lake, resulting in contamination. Through these lawsuits, Honeywell seeks to recover costs and damages incurred from its efforts to remediate the contamination at Onondaga Lake. *See* Buckeye Compl. ¶¶ 1-2, 15-63; Sunoco Compl. ¶¶ 1-2, 11-60.

Aside from allegations specific to each defendant,[2] the factual allegations set forth in each complaint are essentially the same and, in most paragraphs, mirror each other verbatim. *Compare* Buckeye Compl. ¶¶ 15-262, *with* Sunoco Compl. ¶¶ 11-260. In each complaint, Honeywell alleges that the contamination at Onondaga Lake resulted from various leaks and spills stemming from the operations of various oil companies, including the named defendants, located in the former industrial area known as Oil City. Buckeye Compl. ¶¶ 207-52; Sunoco Compl. ¶¶ 194-256. Both complaints allege that the named defendants used the Oil City area as a bulk petroleum storage and distribution facility from the late 1910s through the 1990s. Buckeye Compl. ¶ 68; Sunoco Compl. ¶ 65. Both complaints allege that the named defendants stored and transported a variety of petroleum products and hazardous substances to Oil City by train, barge, pipeline, and truck, Buckeye Compl. ¶¶ 79-90; Sunoco Compl. ¶¶ 78-89, and that spills and leaks of petroleum and hazardous substances were inherent to operations at Oil City and occurred regularly due to the named defendants' operations. Buckeye Compl. ¶¶ 91-93; Sunoco Compl. ¶¶ 90-92. Both complaints allege that the named defendants' Oil City petroleum products, operations, and wastes contained a variety of contaminants that the New York State Department of Environmental Conservation ("DEC") has identified as current or pre-remediation contaminants of concern. Buckeye Compl. ¶¶ 192-206; Sunoco Compl. ¶¶ 175-93.

Based on those allegations, Honeywell asserts the same claims in each lawsuit: (1) a CERCLA cost recovery claim for response costs arising out of the property known as SYW-12;

---

[2] The allegations specific to each defendant describe their operations at the Oil City area. *See* Buckeye Compl. ¶¶ 114-91; Sunoco Compl. ¶¶ 108-74. That some factual differences exist between the two actions does not defeat consolidation, particularly where, as here, "[t]he differences . . . are dwarfed by the similarities." *Hoffman v. Ighodaro*, No. 16 Civ. 0155 (LAK) (JCF), 16 Civ. 4380 (LAK) (JCF), 2016 WL 5812666, at *2 (S.D.N.Y. Sept. 28, 2016) (observing that "for consolidation to be appropriate, actions do not have to be literally identical").

(2) a CERCLA contribution claim for response costs; (3) a CERCLA contribution claim for NRD costs; (4) an OPA contribution claim; (5) a New York Navigation Law contribution claim; and (6) a New York state law contribution claim. Buckeye Compl. ¶¶ 263-327; Sunoco Compl. ¶¶ 261-329.

In short, the two cases involve the same plaintiff, the same claims and legal theories, and substantially similar facts. Under these circumstances, consolidation of those cases is commonly found to be warranted and appropriate. *See, e.g.*, *Brady v. Top Ships Inc.*, 324 F. Supp. 3d 335, 343 (E.D.N.Y. 2018) ("[I]n light of the highly similar allegations and claims in the two putative class actions against defendants, consolidation is appropriate in order to serve the interests of judicial economy."); *Darezzo v. 200 Ninth Rest. LLC*, Nos. 14 Civ. 9081(PAE), 14 Civ. 5099(PAE), 2015 WL 195852, at *2 (S.D.N.Y. Jan. 14, 2015) (consolidating cases where they involved the same parties, arose out of the same facts, and asserted "parallel and highly similar claims").[3]

## III. The *Johnson* factors weigh in favor of consolidation.

All of the factors set forth in *Johnson* weigh in favor of consolidation such that consolidation would promote judicial economy and best serve the administration of justice. *See Johnson*, 899 F.2d at 1285. First, consolidation presents little to no risk of prejudice to the parties or confusion of the issues, given the substantial overlap of factual and legal issues between the two cases. *See id.* (stating that the court should consider whether "the specific risks of prejudice and

---

[3] Indeed, after Honeywell filed its lawsuit against the Sunoco defendants, it also filed a notice of related case, after which the *Sunoco* Action was reassigned to this Court and deemed a related case pursuant to General Order 12. *See* General Order 12 § G(2) ("A civil case is 'related' to another civil case . . . when, because of similarity of facts and legal issues or because the cases arise from the same transactions or events, a substantial saving of judicial resources is likely to result from assigning the cases to the same Judge and Magistrate Judge."). This is an apparent concession that there exist common questions of fact or law.

possible confusion are overborne by the risk of inconsistent adjudications of common factual and legal issues"). Indeed, because both cases involve nearly all the same facts, claims, and legal theories, consolidation will prevent needless duplication and possible confusion, as well as potentially inconsistent jury verdicts. Although no risk of prejudice or confusion is apparent, should any arise, the Court can ameliorate that risk through the use of carefully drafted limiting instructions and verdict sheets. *See id.*

Second, consolidation would reduce the burden on parties, witnesses, and the Court. *See id.* (stating that the court should consider "the burden on parties, witnesses, and available judicial resources posed by multiple lawsuits"). Because of the substantial legal and factual overlap between the two cases, the same discovery, documents, and witnesses will be relevant to both lawsuits. If these cases were to proceed separately, the parties would be required to duplicate discovery, increasing the burden on witnesses, the parties, and the Court. *See, e.g.*, *id.* ("[C]onsiderations of judicial economy favor consolidation."); *Jacobs v. Castillo*, 612 F. Supp. 2d 369, 373 (S.D.N.Y. 2009) ("Consolidation would further the goal of 'judicial economy' because discovery in each case is likely to be identical, motion practice and trial in the two cases would most likely cover the same facts and some identical issues of law."). Both cases are pending in front of the same Magistrate and Article III Judge.

Third, consolidation would reduce the delay in the final disposition of these nearly identical cases. *See Johnson*, 899 F.2d at 1285 (stating that the court should consider "the length of time required to conclude multiple suits as against a single one"). Consolidation would allow the parties to proceed on the same schedule for discovery, file a single set of dispositive motions (like the two motions currently before the Court), and proceed toward trial together. That the *Buckeye* Action has marginally proceeded to discovery while a motion to dismiss is pending in the *Sunoco* action

does not preclude consolidation, as the Court can easily place these cases on the same procedural track especially given Buckeye's motion to dismiss filed herewith. *See DeRogatis v. Bd. of Trs. of the Cent. Pension Fund of the Int'l Union of Operating Eng'rs*, No. 13 CIV. 8788 CM, 2015 WL 936114, at *2 (S.D.N.Y. Mar. 3, 2015) ("Consolidation is nonetheless possible, despite the two cases being at different stages in the litigation.").

Finally, consolidation would avoid the unnecessary expense that would result from multiple trials. *See Johnson*, 899 F.2d at 1285 (stating that the court should consider "the relative expense to all concerned of the single-trial, multiple-trial alternatives"). Empaneling separate juries to decide similar claims arising out of the same facts would be a waste of time and expense, particularly where, as here, those juries would hear largely the same evidence, need to be educated by the same expert and fact witnesses, and grapple with complicated issues of environmental science. *See Consorti v. Armstrong World Indus., Inc.*, 72 F.3d 1003, 1006 (2d Cir. 1995) (noting that consolidation is a "valuable and important tool of judicial administration," particularly because the "waste of time and expense involved in empaneling separate juries to decide the same sorts of questions over and over again is staggering")*, vacated on other grounds sub nom. Consorti v. Owens-Corning Fiberglas Corp.*, 518 U.S. 1031 (1996).

Accordingly, for the reasons set forth above, the Court should consolidate the *Buckeye* Action with the *Sunoco* Action.

<u>**MOTION FOR JUDGMENT ON THE PLEADINGS**</u>

**I.     Standard of Review**

"The standard for addressing a Rule 12(c) motion for judgment on the pleadings is the same as that for a Rule 12(b)(6) motion to dismiss for failure to state a claim." *Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006). Courts use a two-step inquiry when addressing a Rule 12(b)(6) motion. "First, they isolate the moving party's legal conclusions from its factual

allegations." *Hyman v. Cornell Univ.*, 834 F. Supp. 2d 77, 81 (N.D.N.Y. 2011). Second, courts must accept factual allegations as true and "determine whether they plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). A pleading must contain more than a "blanket assertion[ ] of entitlement to relief." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 n.3 (2007). Thus, to withstand a motion to dismiss, a pleading must be "plausible on its face" such that it contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted).

Additionally, when considering a motion to dismiss, a court is permitted to consider documents incorporated by reference into the Complaint. *See James v. Correct Care Sols.*, No. 13-CV-0019 NSR, 2013 WL 5730176, at *3 (S.D.N.Y. Oct. 21, 2013) (noting that "[o]ne way a document may be deemed incorporated by reference is where the complaint "refers to" the document" (citations omitted)). In this case, the Court is permitted to review the Tolling Agreement and its extensions as they are specifically referenced in the Complaint at Paragraphs 253 and 254. *See* Buckeye Compl.

## II.  Honeywell failed to plausibly allege the release of any "hazardous substances," precluding its CERCLA claims.

### A.    *The Petroleum Exclusion*

CERCLA defines "hazardous substance" as any substance designated within certain enumerated statutes which list a variety of toxic chemicals. *See* 42 U.S.C. § 9601(14). But the definition also contains an exception:

> The term does not include petroleum, including crude oil or any fraction thereof which is not otherwise specifically listed or designated as a hazardous substance under subparagraphs (A) through (F) of this paragraph. . . .

This carve-out is known as the "petroleum exclusion," and operates to bar a CERCLA claim to recover costs related to gasoline, kerosene, and fuel oil spills. *See White Plains Hous. Auth. v.*

*Getty Properties Corp.*, No. 13-CV-6282 NSR, 2014 WL 7183991, at *7 (S.D.N.Y. Dec. 16, 2014) (citing *Wilshire Westwood Assocs. v. Atlantic Richfield Corp.*, 881 F.2d 801, 801 (9th Cir. 1989)). In other words, given that the statutory definition of "hazardous substances" does not include petroleum products or any fraction thereof, a plaintiff does not adequately plead entitlement to relief under CERCLA when the contaminants involved are petroleum-based.

The case *White Plains*, 2014 WL 7183991, provides a thorough overview of the petroleum exclusions application to a factual scenario that is analogous to the present case. In *White Plains*, the plaintiff based its CERCLA claim on a putative release of benzene that was once part of a gasoline mixture. *Id.* at *4. Recognizing that gasoline discharge is non-actionable, whereas benzene discharge is actionable, the plaintiff framed the contamination as a "plume" of the hazardous substance benzene, which has been, and is continuing to be, "released" within the meaning of CERCLA. *Id.* at *7. Plaintiff further contended that "continuing migration" of contaminants from the gas station is a continuing "release." *Id.* at *8. Plaintiff argued that the petroleum exclusion did not apply where, once in the ground, gasoline separates "into its by-products or constituents due to physical, chemical, and biological actions," and where one of those by-products or constituents is benzene. *Id.*

Recognizing that no Second Circuit authority was on point, the court considered *Wilshire Westwood Associates v. Atlantic Richfield Corp.*, from the Ninth Circuit as the closest relevant appellant authority. 881 F.2d 801 (9th Cir. 1989). The *Wilshire Westwood* court specifically addressed whether the petroleum exclusion applies to releases of petroleum products that may contain other hazardous substances. *Id.* at 804. The court found that if it did not it would render the petroleum exclusion a nullity since hazardous substances are indigenous to petroleum and crude oil, and thus are always present as a constituent part. *Id.* The court also declined to draw a

distinction between substances added to a petroleum product and those indigenous to the product, where all of the alleged additives were also indigenous. *Id*. at 805. Ultimately, noting an absence of compelling legislative history, and according Environmental Protection Agency ("EPA") guidance due deference, the court concluded that "the petroleum exclusion in CERCLA does apply to unrefined and refined gasoline even though certain of its indigenous components and certain additives during the refining process have themselves been designated as hazardous substances within the meaning of CERCLA." *Id*. at 810.

The *White Plains* court further cited *City of New York v. Exxon Corp*., 766 F. Supp. 177, 186 (S.D.N.Y.1991), for authority on to what extent waste oil emulsion—a petroleum fraction to which contaminants have been added during use—falls within the petroleum exclusion. Consistent with the reasoning in *Wilshire Westwood* and with EPA guidance, the *Exxon Corp*. court found that, where levels of contaminants in the oil increase during the industrial process, the waste oil emulsion falls within CERCLA's definition of hazardous substances, rather than within the petroleum exclusion. *Id*. at 187. The court therefore held that CERCLA liability attaches if contaminant levels in the waste emulsion exceed the levels in the *unused petroleum product*. *Id*. By implication, however, indigenous contaminants which do not increase in concentration during the industrial process do not support a CERCLA claim. *See id*.

Finally, the *White Plains* court discussed two NDNY cases that addressed the petroleum exclusion and likewise tracked the reasoning in *Wilshire Westwood*. In *Wademan v. Concra*, after finding that a CERCLA claim failed for lack of standing, the court stated that the complaint failed to state a CERCLA claim considering the petroleum exclusion, where the complaint alleged that "benzene, a derivative of petroleum," was the source of the plaintiff's injuries. 13 F. Supp. 2d 295, 302 (N.D.N.Y. 1998). Then again, in *State of New York v. Almy Brothers Inc*., the court found no

CERCLA liability for the release of sludge from tanks that stored diesel fuel and other petroleum-related products, where there was no evidence that hazardous substances were added to the products or that the substances increased in concentration during product use. No. 90-CV-818, 1998 WL 438523 (N.D.N.Y. July 31, 1998).

Thus, applying this reasoning, the *White Plains* court held that: (1) "the mere presence of benzene in the gasoline originally released from [a gas station] does not forestall the operation of the petroleum exclusion;" (2) "the benzene now present in the groundwater is a 'derivative' of a petroleum product, gasoline;" and (3) "the benzene was wholly indigenous to the gasoline, not additive, and its concentration did not increase during storage or industrial use." 2014 WL 7183991, at *9. Therefore, the petroleum exclusion foreclosed the plaintiff's CERCLA causes of action.

**B.      The petroleum exclusion unquestionably applies to Honeywell's CERCLA claims.**

First, it is important to recognize that each of Honeywell's claims in this action are only tenable, at best, as they relate to SMU-6 and SYW-12. The contamination that may or may not be present at the old "Oil City" properties is not part of this action and no claims are made for contribution or cost recovery related to any of those parcels. Therefore, any mention of the spills and presence of hazardous substances at those locations is irrelevant and need not be considered when assessing this case.

Rather, the key section of the Complaint that establishes Honeywell's position vis-à-vis liability against Buckeye, is the discussion in Paragraphs 228-252 regarding the contamination present in SMU-6 and SYW-12. It is an undisputed truism that, if Buckeye had no role in the contamination at SMU-6 and SYW-12, Honeywell has *no* claims in this action.

A review of Honeywell's own allegations relative to these sites confirms that they have failed to properly plead a CERCLA claim in the face of the petroleum exclusion. To that end, Honeywell alleges that PAHs are the "predominant remedial driver in SMU 6." *See* Buckeye Compl. ¶ 232. And, moreover, that the PAHs allegedly from Oil City are "petrogenic," *i.e.*, a derivative of petroleum products. *See id.* ¶¶ 234-37. Thus, the contamination that forms the basis for Honeywell's contribution claim as to SMU-6 is petroleum-based PAHs. The same is true with respect to SYW-12. In that regard, Honeywell asserts that petroleum products or their derivatives are the reason it is pursuing a CERCLA claim against Buckeye and the other Oil City defendants. *See id.* ¶¶ 245-52.

In sum, Honeywell's complaint establishes: (1) that PAHs and other derivatives of petroleum products form the basis for its CERCLA claims; and (2) PAHs are indigenous to petroleum products, *i.e.*, not additive, and their concentration did not increase during storage or industrial use. Therefore, Honeywell cannot reasonably assert CERCLA liability against Buckeye and Honeywell's CERCLA claims should be dismissed.

## III.  Honeywell's OPA claim must be dismissed.

### A.  *The OPA claim is untimely.*

The OPA provides that "[n]o action for contribution for any removal costs or damages may be commenced more than 3 years after: (A) the date of judgment in any action under this Act for recovery of such costs or damages, or (B) the date of entry of a judicially approved settlement with respect to such costs or damages." *See* 33 U.S.C. § 2717(3). Honeywell states in its Complaint that it resolved its liability in a judicially approved settlement on January 4, 2007. *See* Buckeye Compl. ¶¶ 27-28. Therefore, to be timely, Honeywell's OPA action had to have been commenced on or before January 4, 2010.

This action was commenced on June 1, 2018. Accordingly, a straightforward application of the statute of limitations precludes this claim.

It is of no moment, moreover, that Honeywell and Buckeye entered a tolling agreement on December 18, 2009, because that agreement did not apply to a putative OPA claim. The terms of the Tolling Agreement related to CERCLA and state law claims only. *See* Ex. "A" to Marsh Decl., Tolling Agreement at Fifth WHEREAS clause. To that end, the Tolling Agreement that Honeywell drafted provided that:

> **WHEREAS**, each Party contends that it may have a claim or claims against the other Party pursuant to the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), as amended, 42 U.S.C. 9601 et seq., and/or New York State law, related to the investigation, remediation and/or restoration of the Site, including for response costs and/or damages (collectively, "Tolled Claims").

As is evident from the text of the definition of "Tolled Claims," the agreement contemplated tolling the statute of limitations pursuant to CERCLA and New York state law but did not mention claims related to the OPA. Therefore, these putative claims were never tolled, the statute of limitations started to run on January 4, 2007, and Honeywell's opportunity to litigate this claim expired on January 4, 2010.

Accordingly, the Court should dismiss Honeywell's OPA claims.

**B.      *The OPA is not properly pleaded in this case.***

The statute of limitations is just the beginning of the problems with Honeywell's OPA claim. For one, the OPA claim is at odds with the reality of this case. The OPA, enacted in response to the Exxon-Valdez oil spill in Alaska, is not the appropriate vehicle for Honeywell to seek contribution. Rather, the OPA is primarily concerned with responding promptly to significant oil spill events. As the Complaint in this case makes clear, Honeywell's allegations rely on many

unrelated spills and leaks over the course of nearly 100 years. On its face, therefore, Honeywell's claim should fail.

A brief overview of the OPA's language confirms that it is spill specific and should not apply where, as here, the contamination is from many sources throughout a prolonged time-frame. To that end, OPA's general liability provision in Section 2702 provides only a cause of action for damages "that result from such *incident*." *See* 33 U.S.C. § 2702(a) (emphasis added). "Incident," in turn, "means any occurrence or series of occurrences having the same *origin*, involving one or more vessels, facilities, or any combination thereof, resulting in the discharge or substantial threat of discharge of oil[.]" 33 U.S.C. § 2701(14). Additionally, the OPA provides that "[n]othing in [the OPA] shall apply to any cause of action or right of recovery arising from any incident which occurred prior to August 18, 1990." *See* 33 U.S.C. § 2717(e).

Taken together, therefore, liability under the OPA must be premised on a specific spill incident that occurred *after* August 18, 1990.

Honeywell, rather than attempting to appropriately plead contribution claims related to any specific spill, conveniently neglects the OPA's reference to the word "incident" or its temporal limitation and instead attempts to lump all past spills into one OPA claim. *See* Buckeye Compl. ¶¶ 298-308. But, as described above, the OPA is incident-specific and failing to allege any spill that resulted in Honeywell having to expend money on removal costs or damages is fatal to its claim.[4] Accordingly, the Court should dismiss Honeywell's OPA claim for this reason alone.

_____

[4] A review of the Complaint reveals that the only allegations that Honeywell has asserted after August 1990 involve alleged spills in 1998 and 2004. *See* Buckeye Compl. ¶¶ 121, 124. Of course, these spills did not occur in Onondaga Lake or at SYW-12. Thus, it is unclear how these spills could possibly have made their way to the sites at issue in this lawsuit. Indeed, Honeywell's alleged "Pathways from Defendants' Facilities to Onondaga Lake and SWY-12" contemplate historical pathways, *e.g.*, barge dredging and spills through the sanitary sewer. It

**C.**     ***Like with Sunoco, Honeywell failed to comply with the OPA's presentment requirement.***

Buckeye joins Sunoco's arguments with respect to Honeywell's failure to present its OPA claim in a "sum certain" prior to bringing this lawsuit. *See Sunoco* Action, Dkt. No. 18-1 at 16-21 (*citing, among others, Boca Ciega Hotel, Inc. v. Bouchard Transp. Co*., 51 F.3d 235 (11th Cir. 1995)). To that end, the OPA presentment clause requires that "all claims for removal costs or damages *shall be presented first to the responsible party*." 33 U.S.C. § 2713(a) (emphasis added). The OPA defines "claim" as a "request, made in writing for a sum certain, for compensation for damages for removal costs resulting from an incident." 33 U.S.C. § 2701(3). "Damages" are defined to include real property damage, loss of subsistence use of natural resources, loss of revenue, loss of profits, and loss of public services. 33 U.S.C. § 2701(5); *see also* 33 U.S.C. § 2702(b)(2).

As Sunoco noted, "presentment of a claim to an alleged responsible party is a mandatory condition precedent to filing a lawsuit that seeks relief under OPA." *See Sunoco* Action, Dkt. No. 18-1 (citing *Boca Ciega*, 51 F.3d at 240 (emphasis added) (holding that presentment is a mandatory prerequisite to filing suit under OPA); *see also In re Oil Spill*, 808 F. Supp. 2d 943, 964 (E.D. La. 2011) (stating (1) that claimants who have not complied with the presentment requirement are subject to dismissal without prejudice, and (2) that dismissed plaintiffs must exhaust the presentment process before returning to court)).

Honeywell is attempting to pursue an OPA claim against Buckeye without having first presented its claims to Buckeye in a sum certain. Accordingly, the Court should dismiss Honeywell's claim.

---

strains credulity to find that a 1998 or 2004 spill could have migrated to SMU-6 or SYW-12 and caused Honeywell to experience response costs.

**D.**      ***Likewise, Honeywell's OPA claim fails because Honeywell is not a responsible party.***

As Sunoco correctly asserts, Honeywell has never been designated a "responsible party" under the OPA and it therefore cannot seek contribution from another party. *See* Dkt. No. 18-1 at 16-19. Buckeye incorporates Sunoco's arguments by reference herein and the Court should dismiss Honeywell's OPA claim against Buckeye if it finds Sunoco's argument persuasive.

**IV.    Honeywell's state law claims should be dismissed.**

**A.      *Sunoco's preemption argument applies with equal force to Buckeye.***

Sunoco makes the persuasive argument that each of the costs that Honeywell is trying to recuperate through this lawsuit were spent (or will be spent) because of CERCLA. Therefore, Plaintiff's claims that seek, through New York state law, that which is only available through CERCLA contribution and cost recovery actions are preempted. *See Sunoco* Action, Dkt. No. 18-1 at 19-22. In other words, it would frustrate CERCLA to permit Honeywell to use state law to collect response costs—*expended in the name of CERCLA*—through New York law. Accordingly, for the reasons Sunoco articulated in its Motion to Dismiss, the Court should dismiss Honeywell's New York state law claims because CERCLA preempts them.

**B.      *Navigation Law claims cannot be premised on a voluntary clean-up.***

The Navigation Law allows recovery both for "all cleanup and removal costs and all direct and indirect damages ... as defined in this section." N.Y. Nav. Law § 181(1). "Cleanup and removal costs" are defined as "all costs associated with the cleanup and removal of a discharge ... incurred by the state or its political subdivisions or their agents or any *person with the approval* of the [DEC]." N.Y. Nav. Law § 172(5) (emphasis added). Costs incurred without approval from the DEC are therefore not "cleanup and removal costs." *In re Methyl Tertiary Butyl Ether ("MBTE") Prods. Liab. Litig*., 2007 WL 1601491, at *18 (S.D.N.Y. June 4, 2007) ("*In re MBTE*").

Here, Honeywell specifically alleges that it has "voluntarily" undertaken the clean-up and investigation at SYW-12. *See* Buckeye Compl. ¶ 272; *see id*. ¶¶ 55-63 (explaining Honeywell's actions at SYW-12). Therefore, Honeywell has not alleged that it suffered any "cleanup and removal costs" as to SYW-12 and its Navigation Law claim subsequently fails.

## V.      Buckeye adopts all other applicable Sunoco arguments.

Buckeye hereby joins in all other arguments presented by Sunoco in their pending motion, whether or not such arguments are contained or referenced in this brief. Buckeye respectfully requests that any favorable ruling be applied consistently with any applicable claim asserted against Buckeye.

## VI.     Conclusion

As discussed above, there are several grounds to dismiss Plaintiff's claims against Buckeye. The following table provides an overview of the arguments related to each claim:

| Claims | Grounds for dismissal | | | | |
|---|---|---|---|---|---|
| Claim 1. CERCLA Cost Recovery for SYW-12 Response Costs | Petroleum exclusion, *see supra*. at 11–15. | | | | |
| Claim 2. CERCLA Contribution Claim for Response Costs | Petroleum Exclusion, *see supra*. at 11–15. | | | | |
| Claim 3. CERCLA Contribution Claim for NRD Costs | Petroleum Exclusion, *see supra*. at 11–15. | | | | |
| Claim 4. OPA Contribution claim. | Time barred, *see supra*. at 15–16. | No connection to a specific "incident," *see supra*. at 16–17. | No presentment, *see supra*. at 17–18. | Not a "responsible party," *see supra*. at 18–19. | No spill post August 1990, *see supra*. at 16–17. |
| Claim 5. Navigation Law Contribution Claim | Preempted, *see supra* at 19. | | Not alleging statutory response costs as to SYW-12, *see supra* at 19. | | |
| Claim 6. Common Law Contribution. | Preempted, *see supra*. at 19. | | | | |

Accordingly, the Court should consolidate this case with the *Sunoco* Action, consider Buckeye's Motion to Dismiss with Sunoco's Motion to Dismiss, and dismiss this claim in its entirety.

JANUARY 9, 2019                                     HANCOCK ESTABROOK, LLP

BY:      *s/Paul J. Tuck*
                  John G. Powers, Esq.  (508934)
                  Wendy A. Marsh, Esq. (302274)
                  Paul J. Tuck, Esq. (520814)
                  1500 AXA Tower I – 100 Madison Street
                  Syracuse, New York  13202
                  Telephone:     (315) 565-4500

                  **Counsel for Defendants Buckeye Partners, L.P., Buckeye GP LLC, Buckeye Pipe Line Company, L.P., and Buckeye Pipe Line Holdings, L.P.**

**CERTIFICATE OF SERVICE**

      I hereby certify that, on January 9, 2019, I caused the foregoing to be electronically filed with the Clerk of the District Court of the Northern District of New York using the CM/ECF system, which sent notification of such filing to all counsel of record.


                                          *s/Paul J. Tuck*

Dated:  January 9, 2019                             Paul J. Tuck