UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

HONEYWELL INTERNATIONAL,
INC.,

                          Plaintiff,

v.

BUCKEYE PARTNERS, L.P.;                    5:18-CV-0646
BUCKEYE GP, LLC; BUCKEYE                   (FJS/ML)
PIPE LINE COMPANY, L.P.; and
BUCKEYE PIPE LINE
HOLDINGS, L.P.,

                          Defendants,


BUCKEYE PARTNERS, L.P.;
BUCKEYE GP, LLC; BUCKEYE
PIPE LINE COMPANY, L.P.; and
BUCKEYE PIPE LINE
HOLDINGS, L.P.,

                          Third-Party Plaintiffs,

v.

YAD ASSOCIATES, INC.;
PYRAMID COMPANY OF
ONONDAGA; ROBERT J.
CONGEL; and BRUCE A.
KENAN,

                          First Third-Party Defendants,

BUCKEYE PARTNERS, L.P.;
BUCKEYE GP, LLC; BUCKEYE
PIPE LINE COMPANY, L.P.; and
BUCKEYE PIPE LINE
HOLDINGS, L.P.,

               Third-Party Plaintiffs,

v.

ATLANTIC RICHFIELD COMPANY;
CITGO PETROLEUM CORPORATION;
CHEVRON CORPORATION;
CHEVRON U.S.A. INC.; KINDER
MORGAN INC.; EXXONMOBIL OIL
CORPORATION; EXXON MOBIL
CORPORATION; HESS CORPORATION;
SHELL OIL COMPANY; SUNOCO (R&M),
LLC; SUN PIPE LINE COMPANY, LLC;
TEXACO, INC.; and TRMI-H LLC,

               Second Third-Party Defendants,


CHEVRON CORPORATION;
CHEVRON U.S.A. INC.; TEXACO, INC.;
and TRMI-H LLC,

               Counter-Claimants,

v.

BUCKEYE PARTNERS, L.P.;
BUCKEYE GP, LLC; BUCKEYE
PIPE LINE COMPANY, L.P.; and
BUCKEYE PIPE LINE
HOLDINGS, L.P.,

               Counter-Defendants,

CHEVRON CORPORATION;
CHEVRON U.S.A. INC.; TEXACO, INC.;
and TRMI-H LLC,

       Cross-Claimants,

v.

ATLANTIC RICHFIELD COMPANY;
CITGO PETROLEUM CORPORTATION;
KINDER MORGAN INC.; EXXONMOBIL
OIL CORPORATION; EXXON MOBIL
CORPORATION; HESS CORPORATION;
SHELL OIL COMPANY; SUNOCO (R&M),
LLC; and SUN PIPE LINE COMPANY,
LLC,

       Cross-Defendants.

_____

| APPEARANCES: | OF COUNSEL: |
|---|---|
| ARNOLD & PORTER KAY SCHOLER LLP<br> Co-Counsel for Plaintiff<br>601 Massachusetts Avenue N.W.<br>Washington, D.C. 20001 | BRIAN D. ISRAEL, ESQ.<br>JOHN ROBINSON, ESQ.<br>LAUREN COLE DANIEL, ESQ. |
| GEOFFREY J. MICHAEL<br> Co-Counsel for Plaintiff<br>6407 11th Street<br>Arlington, Virginia 22307-3141 | GEOFFREY J. MICHAEL, ESQ. |
| HANCOCK ESTABROOK, LLP<br> Counsel for Defendants, Third-Party Plaintiffs,<br> and Counter-Defendants<br>1800 AXA Tower 1, 100 Madison Street<br>Syracuse, New York 13202 | JOHN G. POWERS, ESQ.<br>WENDY ANN MARSH, ESQ.<br>CHRISTOPHER HALL, ESQ.<br>JAMES J. O'SHEA, ESQ. |
| THE WEST FIRM LAW, PLLC<br> Counsel for Second Third-Party Chevron<br> Defendants, Counter-Claimants, and<br> Cross-Claimants<br>677 Broadway, 8th Floor<br>Albany, New York 12207 | MICHAEL W. PETERS, ESQ. |

DEVAPRASAD PLLC                                     S. DAVID DEVAPRASAD, ESQ.
  Counsel for Second Third-Party Atlantic          RANA CHANEL BALESH, ESQ.
  Defendant and Cross-Defendant Atlantic
119 Washington Avenue
Albany, New York 12210

KAREN LEE PRENA P.C.                                KAREN L. PRENA, ESQ.
  Counsel for Second Third-Party Citgo
  Defendant and Cross-Defendant Citgo
3100 N. Sheridan Road, Suite 4d
Chicago, Illinois 60657

GERMAIN, GERMAIN LAW FIRM                           ROBERT M. GERMAIN, ESQ.
  Counsel for Second Third-Party Hess
  Defendants and Cross-Defendants Hess
314 East Fayette Street
Syracuse, New York 13202

McCUSKER, ANSELMI, ROSEN & CARVELLI                 JOHN B. McCUSKER, ESQ.
  Counsel for Second Third-Party Exxon             KATHERINE E. SUELL, ESQ.
  Defendants and Cross-Defendants Exxon
201 Park Avenue, Suite 301
Florham Park, New Jersey 07932

BEVERIDGE & DIAMOND P.C.                            MEGAN BRILLAULT, ESQ.
  Counsel for Second Third-Party Shell
  Defendant and Cross-Defendant Shell
477 Madison Avenue, 15th Floor
New York, New York 10022-5802

McCARTER & ENGLISH, LLP                             AMANDA G. DUMVILLE, ESQ
  Counsel for Second Third-Party Sunoco            JOHN J. McALEESE, ESQ.
  Defendants and Cross-Defendants Sunoco           MINJI KIM, ESQ.
100 Mulberry Street, 4 Gateway Center
Newark, New Jersey 07102

THE WLADIS LAW FIRM, P.C.                           KEVIN C. MURPHY, ESQ.
  Counsel for First Third-Party Defendants         TIMOTHY J. LAMBRECHT, ESQ.
6312 Fly Road
East Syracuse, New York 13057


MIROSLAV LOVRIC, United States Magistrate Judge

## <u>ORDER and REPORT-RECOMMENDATION</u>

Currently before the Court, in this environmental clean-up action filed by Honeywell International, Inc. ("Plaintiff") against Buckeye Partners, L.P., Buckeye GP, LLC, Buckeye Pipe Line Company, L.P., and Buckeye Pipe Line Holdings, L.P. (collectively "Defendants"), are the following three motions: (1) Defendants' motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) and first motion to consolidate pursuant to Fed. R. Civ. P. 42 (Dkt. No. 25), (2) First Third-Party Defendants' motion to dismiss Defendants' First Third-Party Complaint pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) (Dkt. No. 55), and (3) Defendants' second motion to consolidate pursuant to Fed. R. Civ. P. 42 (Dkt. No. 107). For the reasons set forth below, it is recommended that (a) Defendants' motion for judgment on the pleadings be granted in part and denied in part, and (b) First Third-Party Defendants' motion to dismiss be denied. Moreover, for the reasons set forth below, it is ordered that Defendants' motions to consolidate are granted.

## <u>TABLE OF CONTENTS</u>

I.    **RELEVANT BACKGROUND** ........................................................................ 1

   A.  **Procedural History** ................................................................................ 1

   B.  **Plaintiff's Claims** ................................................................................. 5

   C.  **Defendants' Claims against First Third-Party Defendants** ......................... 10

   D.  **Parties' Briefing on Defendants' Motion for Judgment on the Pleadings and First Motion to Consolidate** ............................................................ 12

   E.  **Parties' Briefing on First Third-Party Defendants' Motion to Dismiss** .................. 17

   F.  **Parties' Briefing on Defendants' Second Motion to Consolidate** ............... 18

II.   **GOVERNING LEGAL STANDARDS** ........................................................ 19

   A.  **Legal Standard Governing Motions for Judgment on the Pleadings and Motions to Dismiss for Failure to State a Claim** ................................... 19

   B.  **Legal Standard Governing Motions to Consolidate** ....................................... 23

   C.  **Legal Standard Governing Liability Under CERLCA** ................................. 23

   D.  **Legal Standard Governing Incorporating Another Party's Motion by Reference** ... 25

   E.  **Legal Standard Governing Motions to Dismiss for Lack of Subject-Matter Jurisdiction** ....................................................................................... 25

III.  **ANALYSIS** .......................................................................................... 26

   A.  **Defendants' Motion for Judgment on the Pleadings and First Motion to Consolidate**. ..................................................................................... 26

   B.  **First Third-Party Defendants' Motion to Dismiss** ..................................... 36

   C.  **Defendants' Second Motion to Consolidate** ............................................ 39

# I.     RELEVANT BACKGROUND

## A.     Procedural History

On June 1, 2018, Plaintiff commenced this action against Defendants and ExxonMobil Oil Corporation and Exxon Mobil Corporation.[1]  (Dkt. No. 1.)  On August 29, 2018, Plaintiff filed a stipulation of dismissal against Second Third-Party Exxon Defendants (Dkt. No. 16), which was so ordered by United States District Judge Frederick J. Scullin on August 30, 2018 (Dkt. No. 18).

On January 9, 2019, Defendants filed a motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c).  (Dkt. No. 25.)  Defendants' motion also requests that this case ("*Honeywell I*") be consolidated with *Honeywell Int'l Inc. v. Sunoco (R&M), LLC*, No. 5:18-CV-1176 (FJS/ML) ("*Honeywell II*"), pursuant to Fed. R. Civ. P. 42.  (Dkt. No. 25.)

On February 25, 2019, Defendants filed their First Third-Party Complaint against YAD Associates, Inc. ("YAD"), Pyramid Company of Onondaga ("Pyramid"), Robert J. Congel, and Bruce A. Kenan[2] (collectively "First Third-Party Defendants").  (Dkt. No. 38.)

On May 28, 2019, First Third-Party Defendants filed a motion to dismiss Defendants' First Third-Party Complaint for lack of subject matter jurisdiction and failure to state a claim

---

[1]     ExxonMobil Oil Corporation and Exxon Mobil Corporation collectively referred to hereinafter as "Second Third-Party Exxon Defendants."

[2]     In First Third-Party Defendants' motion to dismiss (Dkt. No. 55, Attach. 1) counsel represented to the Court that the first third-party defendant referred to by Defendants as "Bruce Keenan" is actually "Bruce Kenan."  (*Id.* at 7, n.1.)  This representation is consistent with the waiver of service and counsels' notices of appearance for this first third-party defendant.  (Dkt. Nos. 45, 53, 54.)  As a result, the Clerk of the Court is directed to amend the docket sheet accordingly.  Any reference in the First Third-Party Complaint (Dkt. No. 38) to "Bruce Keenan" shall be deemed to refer to "Bruce Kenan."

upon which relief may be granted pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).  (Dkt. No. 55.)

On August 5, 2019, Defendants filed a Second Third-Party Complaint against Atlantic Richfield Company,[3] Citgo Petroleum Corporation,[4] Chevron Corporation,[5] Chevron U.S.A. Inc., Kinder Morgan Inc., Second Third-Party Exxon Defendants, Hess Corporation,[6] Shell Oil Company,[7] Sunoco (R&M), LLC,[8] Sun Pipe Line Company, LLC, Texaco, Inc., and TRMI-H LLC (collectively "Second Third-Party Defendants").  (Dkt. No. 72.)

On October 30, 2019, Defendants filed a second motion to consolidate, requesting to consolidate *Honeywell I* with *Honeywell Int'l Inc. v. Citgo Petroleum Corp*., No. 5:19-CV-1219 (FJS/ML) ("*Honeywell III*"), pursuant to Fed. R. Civ. P. 42.  (Dkt. No. 107.)  This motion is uncontested.  (Dkt. No. 109; Dkt. No. 122.)

On October 30, 2019, Defendants filed an Amended Second Third-Party Complaint against Second Third-Party Defendants.  (Dkt. No. 108.)

---

[3]     Atlantic Richfield Company hereinafter referred to as "Second Third-Party Atlantic Defendant."

[4]     Citgo Petroleum Corporation hereinafter referred to as "Second Third-Party Citgo Defendant."

[5]     Chevron Corporation, Chevron U.S.A. Inc., Texaco, Inc., and TRMI-H LLC, hereinafter collectively referred to as "Second Third-Party Chevron Defendants."

[6]     Hess Corporation and Kinder Morgan Inc., hereinafter collectively referred to as "Second Third-Party Hess Defendants."

[7]     Shell Oil Company hereinafter referred to as "Second Third-Party Shell Defendant."

[8]     Sunoco (R&M), LLC and Sun Pipe Line Company, LLC, hereinafter collectively referred to as "Second Third-Party Sunoco Defendants."

On December 2, 2019, Plaintiff filed a motion to strike the Amended Second Third-Party Complaint pursuant to Fed. R. Civ. P. 14. (Dkt. No. 123.)

On January 21, 2020, Second Third-Party Chevron Defendants answered the Amended Second Third-Party Complaint.  (Dkt. Nos. 139, 140.)  Second Third-Party Chevron Defendants asserted counterclaims against Defendants and cross-claims against Second Third-Party Atlantic Defendant, Second Third-Party Citgo Defendant, Second Third-Party Exxon Defendants, Second Third-Party Hess Defendants, Second Third-Party Shell Defendant, and Second Third-Party Sunoco Defendants (collectively "Cross-Defendants").  (*Id.*)

On January 21, 2020, Second Third-Party Exxon Defendants filed a motion to dismiss the Amended Second Third-Party Complaint for lack of subject-matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1), and in the alternative for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).  (Dkt. No. 141.)

On January 21, 2020, Second Third-Party Sunoco Defendants filed a motion to dismiss the Amended Second Third-Party Complaint for lack of subject-matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1), and for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).  (Dkt. No. 142.)

On January 21, 2020, Second Third-Party Shell Defendant filed a motion to dismiss the Amended Second Third-Party Complaint for lack of subject-matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1), and for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).  (Dkt. No. 143.)

On January 21, 2020, Second Third-Party Hess Defendants filed a motion to dismiss the Amended Second Third-Party Complaint for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).  (Dkt. Nos. 144, 145.)

On January 21, 2020, Second Third-Party Atlantic Defendant filed a motion to dismiss the Amended Second Third-Party Complaint for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), and for lack of subject-matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1).  (Dkt. No. 146.)

On January 21, 2020, Second Third-Party Citgo Defendant filed a motion to dismiss the Amended Second Third-Party Complaint for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).  (Dkt. No. 147.)

On February 11, 2020, Second Third-Party Hess Defendants filed a motion to dismiss Second Third-Party Chevron Defendants' cross-claims for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).  (Dkt. Nos. 159, 160.)

On February 12, 2020, Second Third-Party Chevron Defendants filed a motion for judgment on the pleadings requesting dismissal of the Amended Second Third-Party Complaint pursuant to Fed. R. Civ. P. 12(c).  (Dkt. Nos. 162, 163.)

On March 3, 2020, Second Third-Party Exxon Defendants filed a motion to dismiss Second Third-Party Chevron Defendants' cross-claims for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).  (Dkt. No. 191.)

On March 3, 2020, Second Third-Party Sunoco Defendants filed a motion to dismiss Second Third-Party Chevron Defendants' cross-claims for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) and for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).  (Dkt. No. 192.)

On March 31, 2020, Second Third-Party Citgo Defendant filed a motion to dismiss Second Third-Party Chevron Defendants' cross-claims for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).  (Dkt. No. 198.)

This Order and Report-Recommendation considers (1) Defendants' motion for judgment on the pleadings and first motion to consolidate (Dkt. No. 25), (2) First Third-Party Defendants' motion to dismiss Defendants' First Third-Party Complaint (Dkt. No. 55), and (3) Defendants' second motion to consolidate (Dkt. No. 107).

### B.    Plaintiff's Claims

Generally, liberally construed, Plaintiff's Complaint alleges as follows.  (*See generally*, Dkt. No. 1 [Pl.'s Compl.].)

Plaintiff alleges that it has cleaned (and will continue to clean) petroleum and hazardous substances from Onondaga Lake and the areas surrounding it that were spilled and leaked by Defendants and others during decades of operation at Oil City.  (*Id.*)  Plaintiff alleges that "Oil City" refers to the real property in the former industrial area in the City of Syracuse located north of the downtown business area, near Onondaga Lake.  (*Id.*)  Plaintiff alleges that the New York State Department of Environmental Conservation ("DEC") has found numerous current or pre-remediation contaminants of concern in the Oil City area.  (*Id.*)

Plaintiff alleges that, in 1953, Defendants and/or their predecessors extended their pipeline originating in New Jersey, to the Syracuse area, which serviced terminals in Oil City. (*Id.*)

Plaintiff alleges that from 1983 until 1990, Defendants owned and operated a tank terminal in Oil City, which consisted of at least eight tanks that were used to store various products including gasoline, kerosene, diesel, fuel oils, and slop that contained hazardous substances.  (*Id.*)  Plaintiff alleges that during Defendants' ownership of its terminal, documented and undocumented spills and leaks of petroleum and hazardous substances occurred there.  (*Id.*)  Plaintiff alleges that as a result of these spills and leaks, Defendants' terminal was extensively contaminated with petroleum and hazardous substances.  (*Id.*)

5

Plaintiff alleges that Defendants' former terminal, along with several other Oil City terminals, were included in an area of DEC designation within the New York State Brownfield Cleanup Program, identified as "Site 6." (*Id.*) Plaintiff alleges that, in addition to petroleum related contamination, Site 6 also contains metal contamination that exceed Commercial Soil Cleanup criteria for arsenic, copper, lead, and mercury. (*Id.*) In addition, Plaintiff alleges that groundwater at Defendants' former terminal exceeds regulatory standards for arsenic and petroleum-related compounds. (*Id.*) Furthermore, Plaintiff alleges that the highest concentration of volatile organic compounds throughout Site 6 were detected at Defendants' former terminal. (*Id.*)

<u>SYW-12</u>

Plaintiff alleges that the SYW-12 property is located on the southern end of Onondaga Lake along the northeastern shoreline and is owned by Onondaga County. (*Id.*) Plaintiff alleges that it and its predecessors did not operate at SYW-12 and that no administrative or judicial settlement or order resolves its liability for SYW-12. (*Id.*)

<u>Contamination of SYW-12</u>

Plaintiff alleges that Defendants' Oil City operations contributed to the Barge Canal[9] contaminants, which were then pumped to the SYW-12 area. (*Id.*) Plaintiff alleges that it is "possible that Defendant[s'] pipeline, which bordered SYW-12, contributed directly to the contamination at SYW-12." (*Id.*) Plaintiff alleges that the following contaminants have been detected at SYW-12: (1) stained soils with petroleum odors and oil sheen on groundwater, (2)

---

[9]    Plaintiff alleges that in 1918, construction of a barge canal began in the Oil City area ("Barge Canal"), which, when completed, formed the southeastern boundary of the Oil City area. (*Id.*) Plaintiff alleges that groundwater beneath Oil City flows towards the Barge Canal and that the Barge Canal flows into Onondaga Lake.

PAHs in surface soil samples, (3) chlorinated benzenes, (4) benzene, (5) toluene, (6) ethylbenzene, (7) xylene, (8) carbon disulfide, (9) 2-butanone, (10) methylene, (11) chloride, (12) acetone, (13) PCBs (Aroclor 1254 and 1260), (14) cadmium, (15) copper, (16) lead, (17) mercury, (18) zinc, (19) nickel, (20) chromium, (21) beryllium, (22) silver, and (23) arsenic. (*Id*.)  Plaintiff alleges that the PAHs present at SYW-12 suggest petrogenic and pyrogenic[10] sources, "meaning that a portion of the PAH contamination is from petroleum sources."  (*Id*.) Plaintiff alleges that Defendants contributed "a major portion" of the Oil City petrogenic sources that came to rest in SYW-12.

SMU 6

Plaintiff alleges that the subsite remediation area directly adjacent to the Oil City area, SYW-12, and into which Barge Canal discharges, is referred to as Sediment Management Unit 6 ("SMU 6").  (*Id*.)

Plaintiff alleges that PAHs are the predominant remedial driver in SMU 6 and "contributed significantly to the need to remediate in 100% of the areas in SMU 6 requiring remediation."  (*Id*.)  Plaintiff alleges that "the PAH contamination in SMU 6 is primarily the result of petroleum products and wastes leaked or spilled into the environment," which were caused (in part) by Defendants' operations at Oil City.  (*Id*.)

Contamination of Onondaga Lake

Plaintiff alleges that Onondaga Creek, which is a tributary of Onondaga Lake, historically flowed through the Oil City area.  (*Id*.)  Plaintiff alleges that the environmental contamination

---

[10]     Plaintiff alleges that anthropogenic PAHs in the environment fall into two categories: (1) petrogenic, which result from petroleum products and wastes; and (2) pyrogenic, which result from combustion of materials like oil, coal, and vegetation.  (*Id*.)

from leaks and spills at Oil City, from oil barges, and Defendants' pipeline, made its way to Onondaga Lake through various pathways including, *inter alia*, (a) through the publicly owned treatment plant, (b) the storm and sanitary sewers, (c) flowing over the ground and directly into the Barge Canal, (d) groundwater, (e) non-aqueous phase liquid, (f) dredging of the Barge Canal, and (g) disposition of the Barge Canal dumping on the SYW-12 area and in Onondaga Lake. (*Id.*)

Plaintiff alleges that as a result of Defendants' Oil City operations and transportation to Onondaga Lake through these various pathways, the lake became heavily contaminated with "petroleum products, petroleum wastes, and other hazardous substances."  (*Id.*)

<u>Plaintiff's Cleanup of Onondaga Lake</u>

The Complaint alleges that in 2007, the U.S. District Court entered a Consent Decree between Plaintiff and the DEC with respect to the Onondaga Lake Bottom Subsite, which permitted Plaintiff to "seek contribution from any person except those entitled to contribution protection under 42 U.S.C. § 9613(f)(2)."  (*Id.*)

Further, the Complaint alleges that in 2018, the U.S. District Court entered another Consent Decree ("2018 Response Costs Consent Decree") between Plaintiff and the United States Environmental Protection Agency ("EPA"), which required Plaintiff "to pay $7.3 million in reimbursement of response costs incurred by the United States with respect to the Onondaga Lake Superfund Site."  (*Id.*)  In addition, Plaintiff alleges that the 2018 Response Costs Consent Decree, by its terms, "constitutes a judicially-approved settlement pursuant to which each Settling Party and each Settling Federal Agency has, as of the Effective Date, resolved liability to the United States within the meaning of Section 113(f)(3)(B) of CERCLA, 42 U.S.C. § 9613(f)(3)(B)."  (*Id.*)

Moreover, the Complaint alleges that in 2018, the U.S. District Court entered another Consent Decree ("2018 NRD Consent Decree") between Plaintiff and the EPA, which required that Plaintiff pay approximately $26 million for natural resource damages at the Onondaga Lake Superfund Site.  (*Id*.)  Moreover, Plaintiff alleges that the 2018 NRD Consent Decree, by its terms, "constitutes a judicially-approved settlement pursuant to which each Settling Party has resolved liability to the United States for Natural Resource Damages within the meaning of Section 113(f)(3)(B) of CERCLA, 42 U.S.C. § 9613(f)(3)(B)."  (*Id*.)

<u>Procedural History</u>

Plaintiff alleges that it entered a tolling agreement with Defendants ("Tolling Agreement") and subsequently entered tolling extensions ("Tolling Extensions"), which tolled its claims from December 18, 2009, until June 1, 2018.  (*Id*.)  In addition, Plaintiff alleges that it "presented the full detail of these claims to Defendants" in 2013.  (*Id*.)

<u>Claims and Relief Sought</u>

Plaintiff asserts the following six claims: (1) a claim for cost recovery related to the SYW-12 response costs, pursuant to section 107(a) of CERLCA, 42 U.S.C. § 9607(a); (2) a claim for contribution related to response costs at the Onondaga Lake Bottom Site, pursuant to section 113(f) CERCLA, 42 U.S.C. § 9613(f); (3) a claim for contribution related to natural resource development costs at the Onondaga Lake Superfund Site, pursuant to section 113(f) of CERCLA, 42 U.S.C. § 9613(f); (4) a claim for contribution related to oil-related removal costs incurred at the Onondaga Lake Bottom Site and SYW-12, pursuant to OPA, 33 U.S.C. § 2702; (5) a claim for contribution related to petroleum discharges at the Onondaga Lake Bottom Site and SYW-12, pursuant to the New York Navigation Law, N.Y. Nav. Law §§ 176(8), 181; and (6) a claim of contribution for contamination of Onondaga Lake that resulted in and will result in

the incurrence of costs by Plaintiff, pursuant to New York State common law and N.Y. C.P.L.R. § 1401. (*Id.*)

Plaintiff seeks, *inter alia*, declaratory judgment and contribution by Defendants of their equitable share of response, removal and/or cleanup costs and natural resource development costs incurred or to be incurred by Plaintiff. (*Id.*)

Familiarity with the remaining factual allegations supporting these claims and the relief requested in the Complaint is assumed in this Order and Report-Recommendation.

### C.     Defendants' Claims against First Third-Party Defendants

Generally, liberally construed, Defendants' First Third-Party Complaint alleges as follows. (*See generally*, Dkt. No. 38 [Defs.' First Third-Party Compl.].)

Defendants allege that in July 1989, they entered an agreement of sale with YAD (the "Agreement"), pursuant to which, Defendants sold YAD two parcels of land (the "Property") in Syracuse, New York. (*Id.*) Defendants alleged that they previously used the parcels to operate an above-ground petroleum tank terminal. (*Id.*)

Defendants allege that Plaintiff's Complaint alleges that "petroleum and petroleum by-products from the Tank Terminal have caused it to incur costs for which it now seeks reimbursement in the form of this federal lawsuit." (*Id.*) However, Defendants allege that the Agreement provided a broad environmental defense and indemnification requirement ("Environmental Indemnity Clause"), which applies to Plaintiff's claims. (*Id.*) More specifically, Defendants allege that the Agreement provided that YAD "shall . . . . indemnify [and] defend . . . from and against any and all claims, demands, suits, actions, proceedings, costs, expenses (including reasonable attorneys' fees) and damages of whatever nature occasioned by, arising out of or from, caused by, or in any manner relating to the presence of petroleum

10

products and/or constituents, and/or byproducts and/or derivatives thereof on, at in or from the Property . . ." (*Id*.)  As a result, Defendants allege that YAD owes them a contractual duty to defend and indemnify the claims in Plaintiff's Complaint. (*Id*.)

In addition, Defendants allege that YAD issued a Resolution of the Board of Directors that agreed "to indemnify Buckeye . . . as to the environmental condition" of the purchased property. (*Id*.)  Defendants allege that Pyramid executed a Continuing Guaranty and Surety Agreement (the "Guaranty") that bound it to the terms of the Agreement executed by YAD, including the environmental indemnity clause. (*Id*.)  Defendants allege that on January 26, 1990, First Third-Party Defendant Congel executed a letter indicating that he was a general partner of Pyramid and that there is "no provision in the Partnership Agreement of Pyramid . . . that limits in any manner the personal liability of any general partner of the partnership for the debts, liabilities and other obligations of the partnership." (*Id*.)

Defendants allege that on February 22, 2012, they provided notice to First Third-Party Defendants, who responded through counsel on March 5, 2012, refusing to defend and indemnify Defendants, thereby breaching the Agreement and Guaranty. (*Id.*)  Defendants allege that on June 15, 2018, they sent First Third-Party Defendants an additional notice letter and included a copy of Plaintiff's Complaint, who responded through counsel on June 29, 2018, refusing to defend and indemnify Defendants, thereby breaching the Guaranty. (*Id.*)

Defendants assert the following three claims against First Third-Party Defendants: (1) a claim for declaratory judgment that First Third-Party Defendants have a duty to indemnify and defend relative to the Agreement; (2) a claim for declaratory judgment that First Third-Party Defendants have a duty to indemnify and defend relative to the Guaranty; and (3) a claim for breach of contract because First Third-Party Defendants have a duty to defend Defendants. (*Id*.)

Defendants seek, *inter alia*, declaratory judgment and a money judgment against First Third-Party Defendants jointly and severally, in the amount of attorneys' fees, litigation costs, and court courts previously expended by Defendants in defense of Plaintiff's action.  (*Id.*)

### D.    Parties' Briefing on Defendants' Motion for Judgment on the Pleadings and First Motion to Consolidate

#### 1.    Defendants' Memorandum of Law-in-Chief

Generally, in support of their first motion to consolidate, Defendants assert that *Honeywell I* (this matter) should be consolidated with *Honeywell II*, because the actions share common questions of law and fact sufficient to warrant consolidation.  (*See generally* Dkt. No. 25, Attach. 3 [Defs.' Mem. of Law].)  More specifically, Defendants argue that the cases involve the same Plaintiff, the same claims and legal theories, and substantially similar facts.  (*Id.*)  In addition, Defendants argue that the *Johnson* factors weigh in favor of consolidation.  (*Id.*)

Generally, in support of their motion for judgment on the pleadings, Defendants assert that in *Honeywell II*, Sunoco moved to dismiss and Defendants "join" that motion to dismiss. (*Id.*)  In addition, Defendants assert the following three arguments: (1) Plaintiff failed to plausibly allege that Defendants released any "hazardous substances," which precludes its claims pursuant to the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9601, *et seq.*, because (a) petroleum is excluded from CERCLA liability, and (b) the release of hazardous substances at locations other than SYW-12 or SMU-6 are irrelevant to Plaintiff's claims; (2) Plaintiff's claim pursuant to the Oil Pollution Act ("OPA"), 33 U.S.C. § 2701, *eq seq.*, must  be dismissed because (a) it is untimely in that, it was not included in the Tolling Agreement or Tolling Extensions, (b) alternatively, it has not been properly pleaded in that, the Complaint failed to connect Plaintiff's claim for damages to any specific incident post-dating August 1990, (c) alternatively, like Sunoco argued in *Honeywell II*,

Plaintiff failed to comply with OPA's presentment requirement, and (d) alternatively, neither Plaintiff nor Defendants have been designated as a "responsible party" as required by OPA; and (3) Plaintiff's state law claims should be dismissed because (a) just as Sunoco argued in *Honeywell II*, Plaintiff's state law claims are preempted by CERCLA, and (b) alternatively, at a minimum, Plaintiff's Navigation Law claims related to the clean-up at SYW-12 are not recoverable because liability cannot be premised on a voluntary clean-up, and Plaintiff alleges that it voluntarily undertook the clean-up at SYW-12.  (*Id.*)

### 2.     Plaintiff's Opposition Memorandum of Law

Generally, in opposition to Defendants' motion, Plaintiff asserts the following seven arguments.  (*See generally* Dkt. No. 29 [Pl.'s Opp'n Mem. of Law].)

First, Plaintiff argues that the petroleum exception to CERCLA is inapplicable because the Complaint plausibly alleges release of hazardous substances as well as releases of petroleum mixed with hazardous substances.  (*Id*.)  More specifically, Plaintiff argues that the Complaint identified the following hazardous substances were released by Defendant at Oil City: (a) spills of products contaminated with rust and metals, (b) spills of tank bottom cleanout and tank bottom sludge, (c) spills of chemical solvents from cleaning equipment, (d) storm water directed to oil/water separators that generated sludge and waste water containing hazardous substances, and (e) chlorinated volatile organic compounds in soil and groundwater.  (*Id*.)  In addition, Plaintiff argues that Defendants' assertions that oil constituents are the primary contaminant driving remediation, mischaracterizes the Complaint and are irrelevant to the legal analysis at this juncture.  (*Id.*)

Second, Plaintiff argues that its OPA claim is timely because the Tolling Agreement included tolling for its OPA claim.  (*Id*.)  Further, Plaintiff argues that the Tolling Extensions

amended and clarified the Tolling Agreement to make clear that the tolled claims included claims under laws other than just CERCLA and state law.  (*Id.*)  Plaintiff argues that, to the extent there is any ambiguity regarding the intent of the parties in the Tolling Agreement, resolution of that ambiguity is not appropriate at the motion to dismiss stage.  (*Id.*)

Third, Plaintiff argues that, in stark contrast with Defendants' assertions, OPA's definition of "incident" includes multiple events occurring over time.  (*Id.*)  More specifically, Plaintiff asserts that OPA defines incident as "any occurrence or series of occurrences having the same origin, involving one or more vessels, facilities, or any combination thereof, resulting in the discharge or substantial threat of discharge of oil."  (*Id.*)

Fourth, Plaintiff argues that it satisfied OPA's presentment requirement because the Complaint alleged that it presented the full detail of its claims to Defendants in 2013 and despite five years of intensive negotiations, the parties failed to reach a settlement.  (*Id.*)  Moreover, Plaintiff argues that pursuant to Fed. R. Civ. P. 9(c), it suffices to allege generally that all conditions precedent have been satisfied.  (*Id.*)

Fifth, Plaintiff argues that it has properly alleged all elements of an OPA contribution claim because any person (not just a responsible party) may bring a contribution claim pursuant to 33 U.S.C. § 2709.  (*Id.*)

Sixth, Plaintiff argues that CERCLA does not preempt contribution claims related to oil pollution brought under the New York Navigation Law.  (*Id.*)

Seventh, Plaintiff argues that, in investigating SYW-12, it incurred damages—a term not defined by the New York Navigation Law—that are recoverable because those damages were incurred at least in part, as a result of Defendants' discharges that polluted SYW-12.  (*Id.*)  In addition, Plaintiff argues that even if, as Defendants allege, Plaintiff's costs must qualify as

14

"cleanup and removal costs," they are nonetheless recoverable because they were with the approval of the DEC and Defendants do not cite any law to support that "voluntary" costs are not recoverable.  (*Id*.)  Moreover, Plaintiff argues that the most significant costs at SYW-12 will be future remediation costs, and this work will "almost certainly proceed under a DEC consent order."  (*Id*.)

### 3.    Defendants' Reply Memorandum of Law

Generally, in reply to Plaintiff's opposition, Defendants assert the following six arguments.  (*See generally*, Dkt. No. 32 [Defs.' Reply Mem. of Law].)

First, Defendants argue that the Complaint does not state a CERCLA cause of action. (*Id*.)  More specifically, Defendants argue that the Complaint does not allege that they caused the release of non-petroleum hazardous substances that were not indigenous to petroleum products at SMU-6 or SYW-12.  (*Id*.)  Defendants argue that Plaintiff's allegations that Defendants released hazardous substances at Oil City are irrelevant to whether Plaintiff can recover costs related to remediation at different locations.  (*Id*.)  Defendants assert that the only allegations in the Complaint that relate to migration of contaminants from Oil City to SMU-6 or SYW-12 relate to incidents that occurred before Defendants operated a tank terminal (1983-1990).  (*Id*.)  In addition, Defendants argue that Plaintiff does not attempt to attribute non-petroleum hazardous substances to Defendants' pipeline.  (*Id*.)

Second, Defendants assert that the Tolling Agreement (and the Tolling Extensions) did not apply to an OPA claim.  (*Id*.)  Defendants argue that the Tolling Extensions unambiguously limited their application to the tolling period and expressly stated that "[n]o other terms of the Tolling Agreement shall be modified by this Tolling Extension," which undermines Plaintiff's argument that the Tolling Extensions charged a defined term in the original Tolling Agreement

(i.e. the "tolled claims").  (*Id.*)  Moreover, Defendants argue that Plaintiff's assertion that the Tolling Extensions' use of the term "among other claims" produces an absurd result and the only plausible interpretation of the term is in reference to the Tolling Agreement's express mention of "New York State law" claims.  (*Id.*)

Third, Defendants assert that Plaintiff cannot state an OPA claim.  (*Id.*)  More specifically, Defendants reiterate their argument set forth in their memorandum-in-chief that liability under OPA must be premised on a specific spill/leak that occurred after August 18, 1990, and the Complaint fails to make any such allegation.  (*Id.*)

Fourth, Defendants assert that Plaintiff's own submission is conclusive evidence that it failed to properly present its OPA claims.  (*Id.*)  More specifically Defendants argue that Plaintiff's 2013 PowerPoint presentation fails to satisfy the OPA presentment requirement because (a) the only specific spills referenced in it pre-date August 1990 (the cutoff for OPA claims), (b) it does not mention OPA liability and instead refers specifically to "CERCLA, NRD and state law" claims, and (c) CERCLA excludes petroleum releases and OPA is only related to petroleum releases, so the presentation cannot relate to an "incident" without either (i) disclaiming the CERCLA claims, or (ii) acknowledging that the presentation contemplates non-OPA releases and therefore fails to satisfy OPA's presentment requirement.  (*Id.*)

Fifth, Defendants assert that Plaintiff's state claims are preempted, as set forth by Sunoco in *Honeywell II*.  (*Id.*)  In addition, Defendants argue that Plaintiff failed to rebut the argument that New York common law contribution claims are preempted by contribution claims for CERCLA response costs.  (*Id.*)

Sixth, Defendants assert that Plaintiff's Navigation law claims related to SYW-12 are untenable because they were incurred voluntarily.  (*Id.*)

###### E.    Parties' Briefing on First Third-Party Defendants' Motion to Dismiss

Generally, in support of their motion to dismiss, First Third-Party Defendants assert the following three arguments: (1) Defendants' claim for declaratory relief fails because it is not ripe for review and will not be ripe for review until Defendants are found liable to Plaintiff; (2) Defendants' claim for breach of contract fails because it is also not ripe for review and will not be ripe for review until Defendants can first establish that First-Third Party Defendants have a duty to indemnify them; and (3) in the alternative, the Environmental Indemnity Clause in the Agreement does not require indemnification because under New York law, a provision to indemnify must be clear and unambiguous but (a) Plaintiff's claims against Defendants include claims which would not be covered by the Agreement including (i) CERCLA claims against Defendants, and (ii) petroleum releases from Defendants' pipeline or Defendants' pipeline manifold near the Barge Canal, and (b) Defendants' claim for indemnification and defense for historic releases that migrated off of the Property is not supported by a plain reading of the Agreement.  (Dkt. No. 55, Attach. 1 [First Third-Party Defs.' Mem. of Law].)

Generally, in opposition to First Third-Party Defendants' motion to dismiss, Defendants assert the following two arguments: (1) Defendants' claims are not premature because (a) the contractual indemnification claims present an "actual controversy" under the Declaratory Judgment Act and judicial efficiencies dictates that the third-party claims should be decided with the main action claims since they are co-dependent and intertwined, (b) the difference between the scope of defense in a contractual defense/indemnity claim and an insurance defense is immaterial since both instances equally present a substantial controversy between parties having adverse legal interests, which warrant the issuance of a declaratory judgment, (c) New York state law is consonant with federal common law on this issue and there is no requirement that Defendants be successful in order to require indemnification or defense costs, and (d) the breach

17

of contract claims are not premature and became "live" when, at the latest, Plaintiff filed its Complaint in this action; and (2) the Environmental Indemnity Clause is unambiguous and requires First Third-Party Defendants to provide defense and indemnification for past offsite migration of petroleum.  (Dkt. No. 68, Attach. 2 [Defs.' Opp'n Mem. of Law].)

Generally, in reply to Defendants' opposition, First Third-Party Defendants assert the following three arguments: (1) the cases that Defendants rely on are not applicable because they involve situations where there was one pathway for damages (as opposed to here, where Plaintiff alleges that Defendants are also liable for damages related to releases at other properties and for discharges related to non-petroleum hazardous substances) and Defendants' massive overreach requesting that First Third-Party Defendants pay all of their defense cost, illustrates why the First Third-Party Complaint is not ripe for review; (2) the Environmental Indemnity Clause does not require First Third-Party Defendants to defend and/or indemnify Defendants under the circumstances presented here because it only applies to petroleum associated with the Property at the time of the purchase; and (3) First Third-Party Defendants note that there is authority for the Court to grant a stay of the proceedings pending resolution of the claims between Plaintiff and Defendants.  (*See generally*, Dkt. No. 73 [First Third-Party Defs.' Reply Mem. of Law].)

### F.    Parties' Briefing on Defendants' Second Motion to Consolidate

Generally, in support of their second motion to consolidate, Defendants assert that *Honeywell I* (this matter) should be consolidated with *Honeywell III*, because the actions share common questions of law and fact sufficient to warrant consolidation.  (*See generally* Dkt. No. 107, Attach. 3 [Defs.' Mem. of Law].)  More specifically, Defendants argue that the cases involve the same Plaintiff, the same claims and legal theories, and substantially similar facts. (*Id*.)  In addition, Defendants argue that the *Johnson* factors weigh in favor of consolidation. (*Id.*)

In response to Defendants' second motion to consolidate, Plaintiff stated that it did not oppose the motion.  (Dkt. No. 109.)  In addition, Second Third-Party Citgo Defendant indicated that it does not oppose Defendants' second motion to consolidate.  (Dkt. No. 122.)

## II.    GOVERNING LEGAL STANDARDS

### A.    Legal Standard Governing Motions for Judgment on the Pleadings and Motions to Dismiss for Failure to State a Claim

Rule 12(c) of the Federal Rules of Civil Procedure "permits the entry of judgment as a matter of law on the basis of the pleadings alone."  *Barber v. RLI Ins. Co.*, 06-CV-0630, 2008 WL 5423106, at *2 (N.D.N.Y. Dec. 24, 2008) (Scullin, J.) (citing *Jackson v. Immediate Credit Recovery, Inc.*, 05-CV-5697, 2006 WL 343180, at *4 (E.D.N.Y. Nov. 28, 2006)).  "The standard for granting a Rule 12(c) motion for judgment on the pleadings is identical to that of a Rule 12(b)(6) motion for failure to state a claim."  *Patel v. Contemporary Classics of Beverly Hills*, 259 F.3d 123, 126 (2d Cir. 2001) (collecting cases).

It has long been understood that a dismissal for failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6), can be based on one or both of two grounds: (1) a challenge to the "sufficiency of the pleading" under Fed. R. Civ. P. 8(a)(2); or (2) a challenge to the legal cognizability of the claim.  *Jackson v. Onondaga Cnty.*, 549 F. Supp. 2d 204, 211, nn.15-16 (N.D.N.Y. 2008) (McAvoy, J., adopting Report-Recommendation on *de novo* review).

Because such dismissals are often based on the first ground, a few words regarding that ground are appropriate.  Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a pleading contain "a *short and plain* statement of the claim *showing* that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2) (emphasis added).  In the Court's view, this tension between permitting a "short and plain statement" and requiring that the statement "show[]" an entitlement

to relief is often at the heart of misunderstandings that occur regarding the pleading standard established by Fed. R. Civ. P. 8(a)(2).

On the one hand, the Supreme Court has long characterized the "short and plain" pleading standard under Fed. R. Civ. P. 8(a)(2) as "simplified" and "liberal." *Jackson*, 549 F. Supp. 2d at 212, n.20 (citing Supreme Court case). On the other hand, the Supreme Court has held that, by requiring the above-described "showing," the pleading standard under Fed. R. Civ. P. 8(a)(2) requires that the pleading contain a statement that "give[s] the defendant *fair notice of* what the plaintiff's claim is and the grounds upon which it rests." *Jackson*, 549 F. Supp. 2d at 212, n.17 (citing Supreme Court cases) (emphasis added).[11]

The Supreme Court has explained that such *fair notice* has the important purpose of "enabl[ing] the adverse party to answer and prepare for trial" and "facilitat[ing] a proper decision on the merits" by the court. *Jackson*, 549 F. Supp. 2d at 212, n.18 (citing Supreme Court cases); *Rusyniak v. Gensini,* 629 F. Supp. 2d 203, 213 & n.32 (N.D.N.Y. 2009) (Suddaby, J.) (citing Second Circuit cases). For this reason, as one commentator has correctly observed, the "liberal" notice pleading standard "has its limits." 2 *Moore's Federal Practice* § 12.34[1][b] at 12-61 (3d ed. 2003). For example, numerous Supreme Court and Second Circuit decisions exist holding that a pleading has failed to meet the "liberal" notice pleading standard. *Rusyniak,* 629 F. Supp. 2d at 213, n.22 (citing Supreme Court and Second Circuit cases); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-52 (2009).

Most notably, in *Bell Atlantic Corp. v. Twombly*, the Supreme Court reversed an appellate decision holding that a complaint had stated an actionable antitrust claim under 15

---

[11]    *Accord, Flores v. Graphtex*, 189 F.R.D. 54, 54 (N.D.N.Y. 1999) (Munson, J.); *Hudson v. Artuz*, 95-CV-4768, 1998 WL 832708, at *1 (S.D.N.Y. Nov. 30, 1998); *Powell v. Marine Midland Bank*, 162 F.R.D. 15, 16 (N.D.N.Y.1995) (McAvoy, C.J.).

U.S.C. § 1. *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007). In doing so, the Court

"retire[d]" the famous statement by the Court in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957),

that "a complaint should not be dismissed for failure to state a claim unless it appears beyond

doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him

to relief." *Twombly*, 127 S. Ct. at 1968-69. Rather than turn on the *conceivability* of an

actionable claim, the Court clarified, the "fair notice" standard turns on the *plausibility* of an

actionable claim. *Id*. at 1965-74. The Court explained that, while this does not mean that a

pleading need "set out in detail the facts upon which [the claim is based]," it does mean that the

pleading must contain at least "some factual allegation[s]." *Id*. at 1965. More specifically, the

"[f]actual allegations must be enough to raise a right to relief above the speculative level [to a

plausible level]," assuming (of course) that all the allegations in the complaint are true. *Id*.

As for the nature of what is "plausible," the Supreme Court explained that "[a] claim has

facial plausibility when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*,

129 S. Ct. 1937, 1949 (2009). "[D]etermining whether a complaint states a plausible claim for

relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial

experience and common sense. . . . [W]here the well-pleaded facts do not permit the court to

infer more than the mere possibility of misconduct, the complaint has alleged–but it has not

show[n]–that the pleader is entitled to relief." *Iqbal*, 129 S. Ct. at 1950 [internal quotation marks

and citations omitted]. However, while the plausibility standard "asks for more than a sheer

possibility that a defendant has acted unlawfully," *id*., it "does not impose a probability

requirement." *Twombly*, 550 U.S. at 556.

Because of this requirement of factual allegations plausibly suggesting an entitlement to relief, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by merely conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1949. Similarly, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Iqbal*, 129 S. Ct. at 1949 (internal citations and alterations omitted).  Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (citations omitted).

Finally, a few words are appropriate regarding what documents are considered when a dismissal for failure to state a claim is contemplated.  Generally, when contemplating a dismissal pursuant to Fed. R. Civ. P. 12(b)(6) or Fed. R. Civ. P. 12(c), the following matters outside the four corners of the complaint may be considered without triggering the standard governing a motion for summary judgment: (1) documents attached as an exhibit to the complaint or answer, (2) documents incorporated by reference in the complaint (and provided by the parties), (3) documents that, although not incorporated by reference, are "integral" to the complaint, or (4) any matter of which the court can take judicial notice for the factual background of the case.[12]

---

[12]    *See* Fed. R. Civ. P. 10(c) ("A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes."); *L-7 Designs, Inc. v. Old Navy, LLC*, No. 10-573, 2011 WL 2135734, at *1 (2d Cir. June 1, 2011) (explaining that conversion from a motion to dismiss for failure to state a claim to a motion for summary judgment is not necessary under Fed. R. Civ. P. 12[d] if the "matters outside the pleadings" in consist of [1] documents attached to the complaint or answer, [2] documents incorporated by reference in the complaint (and provided by the parties), [3] documents that, although not incorporated by reference, are "integral" to the complaint, or [4] any matter of which the court can take judicial notice for the factual background of the case); *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (explaining that a district court considering a dismissal pursuant to Fed. R. Civ. 12(b)(6) "may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint. . . .  Where a document is not incorporated by reference, the court may neverless consider it where the complaint relies heavily

### B.    Legal Standard Governing Motions to Consolidate

Pursuant to Fed. R. Civ. P. 42(a), a court may consolidate actions where those actions

involve common questions of law or fact.  Fed. R. Civ. P. 42(a).  "District courts enjoy

substantial discretion in deciding whether and to what extent to consolidate cases."  *Hall v. Hall*,

138 S. Ct. 1118, 1131 (2018).  "The Court may order consolidation upon its own motion, and the

consent of the parties is not required."  *Tucker v. Kenney*, 994 F. Supp. 412, 415 (E.D.N.Y.

1998); *accord Nussbaum v. Spider, Inc.*, 09-CV-2023, 09-CV-2026, 2009 WL 2762785, at *1

(E.D.N.Y. Aug. 24, 2009) (citing *Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284-85 (2d Cir.

1990); *Devlin v. Transp. Commc'ns Int'l Union*, 175 F.3d 121, 130 (2d Cir. 1999)).

### C.    Legal Standard Governing Liability Under CERLCA

CERCLA is a comprehensive federal law governing the remediation of hazardous waste

sites.  It has now been over thirty-five years since CERCLA's enactment, and although many of

the provisions remain perplexing, the statute's primary purposes are axiomatic: (1) to encourage

the "timely cleanup of hazardous waste sites;" and (2) to "plac[e] the cost of that [cleanup] on

those responsible for creating or maintaining the hazardous condition."  *Consol. Edison v. UGI*

*Utils., Inc.,* 423 F.3d 90, 94 (2d Cir. 2005) (second alteration in original) (internal quotation

---

upon its terms and effect, thereby rendering the document 'integral' to the complaint. . . .
However, even if a document is 'integral' to the complaint, it must be clear on the record that no
dispute exists regarding the authenticity or accuracy of the document.  It must also be clear that
there exist no material disputed issues of fact regarding the relevance of the document.")
(internal quotation marks and citations omitted); *Chambers v. Time Warner, Inc.*, 282 F.3d 147,
152 (2d Cir. 2009) ("The complaint is deemed to include any written instrument attached to it as
an exhibit or any statements or documents incorporated in it by reference.") (internal quotation
marks and citations omitted); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72
(2d Cir.1995) (per curiam) ("[W]hen a plaintiff chooses not to attach to the complaint or
incorporate by reference a [document] upon which it solely relies and which is integral to the
complaint," the court may nevertheless take the document into consideration in deciding [a]
defendant's motion to dismiss, without converting the proceeding to one for summary
judgment.") (internal quotation marks and citation omitted).

marks omitted); *see also Key Tronic Corp. v. United States,* 511 U.S. 809, 819 n.13 (1994) (quoting *FMC Corp. v. Aero Indus., Inc.,* 998 F.2d 842, 847 (10th Cir. 1993)) ("'CERCLA is designed to encourage private parties to assume the financial responsibility of cleanup by allowing them to seek recovery from others.'"). Thus, the Court must "construe the statute liberally in order to effect these congressional concerns." *Schiavone v. Pearce,* 79 F.3d 248, 253 (2d Cir. 1996).

In order to achieve these dual purposes, the statute creates several distinct provisions that authorize parties in different procedural positions to recover costs incurred in cleaning up contamination: "(1) section 107(a), which permits the general recovery of cleanup and prevention costs; (2) section 113(f)(1), which creates a contribution right for parties liable or potentially liable under CERCLA; and (3) section 113(f)(3)(B), which creates a contribution right for parties that have resolved their liability by settlement." *Consol. Edison,* 423 F.3d at 94; *see also United States v. Atl. Research Corp.,* 551 U.S. 128, 139-41 (2007) (holding CERCLA section 107(a) provides potentially responsible parties with cause of action to recover necessary costs of response from other PRPs); *Cooper Indus., Inc. v. Aviall Servs., Inc.,* 543 U.S. 157, 165-68 (2004) (holding private parties who have not been sued in a CERCLA administrative or cost recovery action may not bring a contribution suit under section 113).

"But CERCLA's scope of coverage is not limitless." *Town of Halfmoon v. Gen. Elec. Co.*, 09-CV-0228, 11-CV-0006, 2015 WL 6872308, at *1 (N.D.N.Y. Nov. 9, 2015) (Hurd, J.). "CERCLA's definition of hazardous substance does not include petroleum, or the hazardous substances normally found in refined petroleum, including unadulterated waste oil." *Booth Oil Site Admin. Grp. v. Safety-Kleen Corp.,* 532 F. Supp. 2d 477, 510 (W.D.N.Y.2007); *see also* 42 U.S.C. § 9601(33) (excluding "petroleum" from the definition of a hazardous substance).

### D. Legal Standard Governing Incorporating Another Party's Motion by Reference

Generally, litigants are not permitted to "join in" on another's motions. *Cf. Nissan Motor Acceptance Corp. v. Dealmaker Nissan, LLC*, 09-CV-0196, 2012 WL 2522651, at *2 (N.D.N.Y. June 27, 2012) (Suddaby, J.) ("Setting aside the risk that such reference could cause the referring document to violate the District's rule on page limitations (once it is incorporated into the referred document), such a practice also risks causing the opposing party to inadvertently overlook the attempted incorporation, and risks confusing the Court as to which 'incorporated' arguments are actually being relied upon.").

### E. Legal Standard Governing Motions to Dismiss for Lack of Subject-Matter Jurisdiction

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *N.Y. by Schneiderman v. Utica City Sch. Dist.*, 177 F. Supp. 3d 739, 745 (N.D.N.Y. 2016) (Hurd, J.) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)). Notably, "the plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence." *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005). In evaluating First Third-Party Defendants' motion to dismiss for lack of subject matter jurisdiction, the Court "'must accept as true all material factual allegations in the complaint' but should not draw 'argumentative inferences to the party asserting jurisdiction.'" *Cole v. Zucker*, 17-CV-0251, 2019 WL 974820, at *3 (N.D.N.Y. Feb. 28, 2019) (Scullin, J.) (quoting *Atl. Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd.*, 968 F.2d 196, 198 (2d Cir. 1992)).

III.    ANALYSIS

    A.    **Defendants' Motion for Judgment on the Pleadings and First Motion to Consolidate**

        1.    **Plaintiff's CERCLA Claims**

After carefully considering the matter, I recommend denying Defendants' motion for judgment on the pleadings with respect to Plaintiff's CERCLA claims for the reasons stated in Plaintiff's memorandum of law.  (Dkt. No. 29 [Pl.'s Opp'n Mem. of Law].)  To those reasons, the Court adds the following analysis, which is intended to supplement but not supplant Plaintiff's arguments.

As set forth above in Part I.D. of this Report-Recommendation, Defendants seek the dismissal of Plaintiff's CERCLA claims because (1) the Complaint alleges that the contamination involved petroleum and petroleum constituents only, which are explicitly excluded from CERCLA, and (2) the Complaint does not plausibly allege that non-petroleum contaminants released by Defendants migrated to SMU-6 or SYW-12.

After carefully considering the matter, I reject both of Defendants' arguments.  The Complaint alleges facts plausibly suggesting that, in addition to petroleum contamination, Defendants' pipeline and tank terminal caused the Oil City area to be contaminated with chlorinated VOCs including "carbon tetrachloride, chlorobenzene, methylene chloride, trichloroethylene ('TCE'), vinyl chloride, 1,3-butadien, 1,4-dichlorobenzene, 1,1-dichloroethane, 1,2-dichloroethane, 1-3-dichloroethene, tetrachloroethylene, and 1,2,4-trichlorobenzene."  (Dkt. No. 1 at ¶ 205); *see T & K Realty, LLC v. Teeter Envtl. Servs., Inc*., 07-CV-0990, 2010 WL 1189375, at *4 (N.D.N.Y. Mar. 24, 2010) (Suddaby, J.) (holding that the complaint alleged facts plausibly suggesting that, in addition to causing petroleum contamination, the defendants contaminated the plaintiff's property with "volatile organic compounds dichlorobenzene,

dichloroethene, methylene chloride, trichloroethene, benzene, ethylbenzene, naphthalene, toluene, trimethylbenzene, xylenes, solvents, and petroleum constituents."). Moreover, the Complaint alleges that Defendants' operations included regular "[r]uptures in tanks/corrosion of tank bottoms resulting in spills of product contaminated with rust, metals, and other hazardous substances," (Dkt. No. 1 at ¶ 92(b)) and "[s]pills from tank bottom cleanout and tank bottom sludge, and oil/water separator sludge disposal" (*id*. at ¶ 92(d)). *See Hernandez v. Esso Standard Oil Co.*, 597 F. Supp. 2d 272, 289-90 (D.P.R. 2009) (holding that "an issue of material fact exists as to whether or not the petroleum released from Esso's corroded [underground storage tanks] contained corrosion products from the oxidation of steel in the tank walls.").

In addition, contrary to Defendants' assertions, the Complaint plausibly alleges that Defendants' non-petroleum contaminants migrated to SMU-6 and SYW-12 from Oil City. For example, the Complaint alleges that Defendants' spilled or leaked non-petroleum hazardous substances, which were then located in the soil and/or groundwater at Oil City (Dkt. No. 1 at ¶¶ 203-205), that the groundwater beneath Oil City flows towards the Barge Canal, and the Barge Canal flows into Onondaga Lake (*id*. at ¶¶ 72-77). The Complaint also alleges that the New York State Supreme Court acknowledged that contamination entering Onondaga Lake from groundwater emanating from Oil City contributed to the pollution of Onondaga Lake (*id*. at ¶ 112). Moreover, the Complaint alleges that "[a] portion of Defendants' contaminants that were discharged to the Barge Canal were transported through the sediments of the Barge Canal directly into the Lake," (*id*. ¶ 220), and "[a] portion of Defendants' contaminants that were discharged to the Barge Canal were also dredged from sediments of the Barge Canal and deposited in the Lake or on SYW-12" (*id*. at ¶ 221).

As a result, I recommend that Defendants' motion for judgment on the pleadings of Plaintiff's CERCLA claims be denied.

### 2.    Plaintiff's OPA Claim

After carefully considering the matter, I recommend granting Defendants' motion for judgment on the pleadings with respect to Plaintiff's OPA[13] claims as untimely as set forth in Defendants' memoranda of law.  (Dkt. No. 25, Attach. 3 [Defs.' Mem. of Law]; Dkt. No. 32 [Defs.' Reply Mem. of Law].)  To those reasons, the Court adds the following analysis, which is intended to supplement but not supplant Defendants' arguments.

The Tolling Agreement[14] specifically tolled claims "pursuant to the Comprehensive Environmental Response, Compensation and Liability Act ('CERCLA'), as amended, 42 U.S.C.

---

[13]    Congress passed the Oil Pollution Act of 1990 in response to the disastrous March 1989 oil spill involving the EXXON VALDEZ in Prince William Sound, Alaska.  *In re Complaint of Metlife Capital Corp., Commonwealth of Puerto Rico v. M/V EMILY S.*, 132 F.3d 818, 820 (1st Cir. 1997); *Hornbeck Offshore Transp. v. United States Coast Guard*, 424 F. Supp. 2d 37, 39 (D.D.C. 2006); *Smith Property Holdings, 4411 Connecticut L.L.C. v. United States*, 311 F. Supp. 2d 69, 70 (D.D.C. 2004). OPA imposes strict liability on parties that discharge oil into the navigable waters of the United States. Specifically, OPA states:

> Notwithstanding any other provision or rule of law, and subject to the provisions of this Act, each responsible party for a vessel or a facility from which oil is discharged, or which poses the substantial threat of a discharge of oil, into or upon the navigable waters or adjoining shorelines or the exclusive economic zone is liable for the removal costs and damages specified in subsection (b) of this section that result from such incident.

33 U.S.C. § 2702(a).

[14]    Although the Tolling Agreement and Tolling Extensions were neither attached to the Complaint nor incorporated into it by reference, the Court may consider it in connection with this motion because the Complaint "relies heavily upon [their] terms and effect, thereby rendering the document[s] 'integral' to the complaint."  *Accent Delight Int'l Ltd. V. Sotheby's*, 394 F. Supp. 3d 399, 408 n.3 (S.D.N.Y. 2019) (quoting *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230 (2d Cir. 2016)); (Dkt. No. 1 at ¶¶ 253-262.)  In addition, neither Plaintiff nor Defendants have raised a challenge to the authenticity of the Tolling Agreement or the Tolling Extensions or objected to the Court's consideration of them.  Indeed, both parties have relied on the Tolling Agreement

9601 et seq., and/or New York State law, related to the investigation, remediation and/or restoration of the Site, including for response costs and/or damages (collectively 'Tolled Claims')." (Dkt. No. 25, Attach. 2 at 1; Dkt. No. 29, Attach. 1 at 2.) As a result, I find that the Tolling Agreement did not apply to Plaintiff's OPA claims, which are not pursuant to CERCLA or New York state law claims.

In addition, I reject Plaintiff's argument that the Tolling Extensions amended the Tolling Agreement to clarify the definition of "Tolled Claims" to include claims pursuant to OPA. The Tolling Extensions stated that Plaintiff "contends that it has causes of action against [Defendants] pursuant to, among *other laws*, the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), as amended, 42 U.S.C. §§ 9601 *et seq*, related to the investigation, remediation and/or restoration of the Onondaga Lake Superfund Site ("Site"), including for response costs and/or damages." (Dkt. No. 29, Attach. 1 at 5, 7, 9, 11, 13, 15, 17, 19, 21) (emphasis added). While this statement is slightly more inclusive than that set forth in the Tolling Agreement, it does not change the definition of "Tolled Claims." Instead, the "other laws" referred to in the Tolling Extension coincides with the claims pursuant to "New York State law" that were included in the "Tolled Claims" of the Tolling Agreement.

Moreover, after setting forth the period of time during which the tolling period was extended, each Tolling Extension stated, "[n]o other terms of the Tolling Agreement shall be modified by this Tolling Extension." (Dkt. No. 29, Attach. 1 at 5-22.) Therefore, the Tolling Extensions expressly limited their applicability to extending the tolling period and did not—as

---

and Tolling Extensions in their arguments regarding Defendants' motion for judgment on the pleadings. (*See generally* Dkt. No. 25; Dkt. No. 29; Dkt. No. 32.)

Plaintiff argues—amend the definition of the "Tolled Claims" as set forth in the Tolling Agreement.  (Dkt. No. 29, Attach. 1 at 5-22.)

As a result, I find that the parties' intent was not ambiguous and Plaintiff's OPA claims are untimely and should be dismissed.

After carefully considering Defendants' alternative arguments regarding Plaintiff's OPA claim, I recommend that in the alternative, it be dismissed because the Complaint does not allege facts plausibly suggesting that Plaintiff complied with OPA's presentment requirement.

I find that OPA presentment is a mandatory condition precedent and not a jurisdictional requirement.  *In re Oil Spill by Oil Rig DEEPWATER HORIZON the Gulf of Mexico, on April 20, 2010*, 10-4182, 10-4183, 10-3059, 11-0516, 2011 WL 5520295, *9 (E.D. La. Nov. 14, 2011) (citing *Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 434-442 (2011); *Leboeuf v. Texaco*, 9 F. Supp. 2d 661, 665 (E.D. La. 1998)).  As a result, I reject any arguments made pursuant to Fed. R. Civ. P. 12(b)(1) and (without triggering the standard governing a motion for summary judgment), only considered documents (a) attached as an exhibit to the complaint or answer, (b) incorporated by reference in the complaint, (c) integral to the complaint, or (d) containing any matter of which the court can take judicial notice for the factual background of the case.  Pursuant to Fed. R. Civ. P 9(c), "[i]n pleading conditions precedent, it suffices to allege generally that all conditions precedent have occurred or been performed."

OPA's presentation provision states:

(a)  Presentation

Except as provided in subsection (b) of this section [delineating presentation to the Fund], *all claims for removal costs or damages shall be presented first to the responsible party* or guarantor . . . .

. . . .

(c)  Election

30

> *If a claim is presented in accordance with subsection (a) and --*
>
> (1) each person to whom the claim is presented denies all liability for the claim, or
> (2) the claim is not settled by any person by payment within 90 days after the date upon which (A) the claim was presented, or (B) advertising was begun pursuant to section 2714(b) of this title [delineating the claims clearinghouse procedures], whichever is later,
>
> the claimant may elect to commence an action in court against the responsible party or guarantor or to present the claim to the Fund.

33 U.S.C.A. § 2713 (emphasis added).

"OPA defines a 'claim' as 'a request, made in writing for a sum certain, for compensation for damages or removal costs resulting from an incident.'" *Boca Ciega Hotel, Inc. v. Bouchard Transp. Co., Inc.*, 51 F.3d 235, 237-38 (11th Cir. 1995) (quoting 33 U.S.C. § 2701(3)). "OPA does not define the term 'sum certain.' However, the Seventh Circuit has addressed what is needed to satisfy the requirements for a 'sum certain' in the context of the Federal Tort Claims Act. . . . '[F]acts plus a[] demand for money' if those two things are specified, 'the claim encompasses any cause of action fairly implicit in the facts.' . . . [F]ailure to ask for any damages – any money – is fatal." *Nodine v. Plains All American Pipeline, L.P.*, 17-CV-0163, 2018 WL 4636242, at *4 (S.D. Ill. Sept. 27, 2018) (quoting *Khan v. United States*, 808 F.3d 1169, 1172-73 (7th Cir. 2015).

Here, the Complaint alleges that Plaintiff "presented the full detail of these claims to Defendants . . . in 2013." (Dkt. No. 1 ¶ 261.) In addition, the Complaint alleges that "[d]espite five years of intensive negotiations, Defendants have denied or unreasonably minimized their liability, and the parties have failed to reach a settlement of these claims." (*Id.* at ¶ 262.) However, the Complaint does not plausibly allege that Plaintiff demanded any money (*see generally* Dkt. No. 1) and thus, failed to plausibly allege facts suggesting compliance with

OPA's mandatory presentment condition precedent. As a result, I recommend dismissal of Plaintiff's OPA claim on this alternative basis.

For each of these reasons, I recommend that Plaintiff's claim pursuant to OPA be dismissed.[15]

---

[15]    After carefully considering Defendants' alternative arguments that Plaintiff's OPA claim is not properly pleaded, I reject those arguments. "Courts have held that OPA is to be construed broadly given its remedial purpose." *Power Auth. of New York v. Tug M/V ELLEN S. BOUCHARD*, 377 F. Supp. 3d 230, 236 (S.D.N.Y. 2019) (citing *Smith Prop. Holdings v. United States*, 311 F. Supp. 2d 69 (D.D.C. 2004); *United States v. Boats D'Arc Operating Corp.*, 98-CV-0157, 1999 U.S. Dist. LEXIS 3199 (E.D. La. 1999)). An "incident" is defined under OPA as "any occurrence or series of occurrences having the same origin, involving one or more vessels, facilities, or any combination thereof, resulting in the discharge or substantial threat of discharge of oil[.]" 33 U.S.C. § 2701(14). Beyond this general guidance, because OPA litigants usually agree as to what constitutes an "incident" for a particular case, there is virtually no applicable case law elaborating on this definition. The parties collectively identified four cases that address OPA's definition of incident, all of which do so largely in dicta, and none of which are controlling on this Court. *See Golnay Barge Co., Inc. v. M/T SHINOUSSA*, 3 F.3d 439, 1993 WL 347219, at *1 (5th Cir. 1993) (holding that an oil spill resulting from a collision that occurred on July 28, 1990, between a ship and a tank barge, did not qualify as an "incident" within the meaning of OPA because it occurred before August 18, 1990, and the "daily spread of the oil throughout the bay" did not constitute a series of occurrences); *Evergreen Power, LLC v. United States*, 14-CV-1537, 2015 WL 4603440, at *1-4 (D. Conn. July 30, 2015) (stating in dicta that a person who complies with "orders issued under subsection 311(e)" of the Clean Water Act, "may recover its costs under the Oil Pollution Act . . ., by demonstrating that it is not liable or that liability should be limited."); *Water Quality Ins. Syndicate v. United States*, 522 F. Supp. 2d 220, 229 (D.D.C. 2007) (holding that for purposes of OPA's defense for the willful misconduct of a responsible party, "the incident is what caused the spill" which "may be a 'series of occurrences' resulting in the oil spill."); *United States v. Jones*, 267 F. Supp. 2d 1349, 1360-61 (M.D. Ga. 2003) (finding that there was a discharge pursuant to OPA where pollution was "seen flowing off of the property and into a storm sewer on the street . . . [t]he pollution then flowed into a large drainage ditch that ran beside the road . . . [i]t then flowed into a creek and eventually into the Ocmulgee River."). While most of the case law considering OPA claims relate to oil spills resulting from one large event, like a ship running aground, Defendants failed to identify any controlling law, nor was any located, holding that spills from Defendants' tanks and pipeline are insufficient to establish a claim for OPA. Plaintiff alleges the following spills after 1990: (1) in 1998, while removing product from Defendants' pipeline, product spilled out of the pipeline; (2) a 1994 excavation revealed contaminated groundwater; (3) in 2000, when Defendants removed its pipelines, contaminated soils were discovered; and (4) in 2004, Defendants' pipeline ruptured spilling number 2 fuel oil into the ground. Construing OPA broadly, as courts are instructed to do so, I find that Plaintiff sufficiently pleaded facts plausibly alleging an incident for purposes of an OPA claim.

### 3.    Plaintiff's State Law Claims

#### i.    New York Navigation Law Claim

First, after carefully considering the matter, I reject Defendants' argument that Plaintiff's New York Navigation Law claims are preempted by CERCLA.

Article VI clause 2 of the U.S. Constitution makes federal statutes preemptive, thus displacing a state law or rule after Congress acted expressly to exclude states.  In addition to express preemption, state rules or laws can be preempted indirectly, if there is a conflict or if the entire field has been taken over by the comprehensive federal statute.  James T. O'Reilly, *Federal Preemption of State & Local Laws* (2006).  There is no general express preemption of all state activities and no implied "field" preemption of state law under CERCLA.  *New York v. Ametek, Inc.*, 473 F. Supp. 2d 432, 433 (S.D.N.Y. 2007).

CERCLA contains "savings clauses" suggesting Congress did not intend to completely preempt state laws related to hazardous materials contamination.  *See, e.g.* 42 U.S.C.A. 9614(a) ("[n]othing in this Chapter shall be construed or interpreted as preempting any State from imposing any additional liability . . ."); 42 U.S.C.A. 9652(d) ("Nothing in this Chapter shall affect or modify in any way obligations or liabilities of any person under Federal or State Law, including common law . . .").  However, the doctrine of conflict preemption is an affirmative defense available to parties "notwithstanding the presence of the savings clauses."  1 James T. O'Reilly, *Preemption and state-federal conflicts: Superfund and Brownfields Cleanup*, § 5:1 (2019). Conflict preemption occurs when "compliance with both federal and state regulations is a physical impossibility or when state law is an obstacle to the accomplishment and execution of

---

Further, I reject Defendants' alternative argument that Plaintiff's OPA claim fails because Plaintiff is not a "responsible party" for the reasons set forth *infra* in Part III.A.4. of this Order and Report-Recommendation.

the full purposes and objectives of Congress." *Town of Halfmoon v. Gen. Elec. Co.*, 105 F. Supp. 3d 202, 218 (N.D.N.Y. 2015) (Hurd, J.).

Under New York Navigation Law, anyone who has "discharged petroleum shall be strictly liable, without regard to fault, for all cleanup and removal costs and all direct and indirect damages." N.Y. Nav. L. § 181(1). This includes costs incurred from investigation and remediation of petroleum. *See, e.g., New York v. LVF Realty Co.,* 59 A.D.3d 519, 521 (N.Y. App. Div. 2d Dep't 2009). A party who shoulders the cleanup and removal costs and is not at fault for the petroleum discharge may pursue a claim against the actual polluters. N.Y. Nav. L. §§ 172(3), 181(5). Plaintiff brought a claim pursuant to the Navigation Law against Defendants for their discharge of petroleum.

Here, the Complaint alleged that (a) in complying with the Consent Decrees, Plaintiff incurred costs to clean up the Onondaga Lake Bottom Site and the natural resource damages, (b) Plaintiff has incurred and will incur costs to cleanup SYW-12, and (c) Plaintiff has cleaned up and will clean up a variety of materials, some of which contained petroleum and petroleum products.

"CERCLA specifically excludes from coverage damages related to petroleum contamination. 42 U.S.C. § 9601(33). Therefore [P]laintiff['s] Navigation Law claims related to [Defendants'] alleged release of petroleum are not preempted by CERCLA." *Town of Halfmoon*, 105 F. Supp. 3d at 221 (citing *Coastline Terminals of Connecticut, Inc. v. USX Corp.*, 156 F. Supp. 2d 203, 209 (D. Conn. 2001)).

Second, after carefully considering the matter, I reject Defendants' argument that Plaintiff's New York Navigation Law claim with respect to SYW-12, cannot be premised on a voluntary clean-up.

Section 172(5) defines "cleanup and removal costs" to mean "all costs associated with the cleanup and removal of a discharge . . . incurred by the state or its political subdivisions or their agents or any person *with the approval of the department [DEC]*."  N.Y. Nav. Law § 172(5) (emphasis added).  However, Defendants fail to cite any authority, nor was any located, to support the proposition that a "voluntary" clean-up could not be conducted with the approval of the DEC.

As a result, I recommend denying Defendants' motion for judgment on the pleadings with respect to Plaintiff's Navigation Law claim.

### ii.    Contribution Claim

In contrast with Plaintiff's Navigation Law claim, CERCLA preempts common-law contribution claims arising under state law.  42 U.S.C. §§ 9601 et seq.; *Niagara Mohawk Power Corp. v. Chevron U.S.A., Inc.*, 596 F.3d 112, 138-39 (2d Cir. 2010); *see Booth Oil Site Admin. Grp. v. Safety-Kleen Corp*., 98-CV-0696A, 2012 WL 6209963, at *3 (W.D.N.Y. Nov. 27, 2012) (citing *Niagara Mohawk Power Corp.*, 596 F.3d at 139; *Bedford Affiliates v. Sills*, 156 F.3d 416, 427 (2d Cir. 1998), *overruled on other grounds by W.R. Grace & Co.-Conn. v. Zotos Int'l, Inc.*, 559 F.3d 85 (2d Cir. 2009); *New York v. Next Millennium Realty, LLC*, 03-CV-5985, 2008 WL 1958002, at *8-9 (E.D.N.Y. May 2, 2008) (granting motion to dismiss state law indemnification claims asserted between potentially responsible parties to a CERCLA action based upon conflict preemption)) ("CERCLA preempts common law indemnification claims.").

As a result, I recommend that Plaintiff's common law contribution claim be dismissed.

### 4.    Defendants' Adoption of Sunoco's Arguments

To the extent that Defendants "adopt" and join Sunoco's arguments in *Honeywell II*, I find no reason to depart from the general rule here, that litigants are not permitted to "join in"

one another's motions.  *Nissan Motor Acceptance Corp.*, 2012 WL 2522651, at *2.  Under the

circumstances, barring some extraordinary circumstance of which the undersigned is not aware,

Defendants must file their own motion to dismiss, which does not incorporate by reference any

other motion (due to the risk of confusion and potential violation of the applicable page

limitations).

### 5.    Consolidation

Defendants also moved to consolidate this action with *Honeywell II*, which has not been

opposed by Plaintiff.  (*Compare* Dkt. No. 25, Attach. 3 *and* Dkt. No. 32, *with* Dkt. No. 29.)

After carefully considering the matter, the Court grants Defendants' first motion to

consolidate for the reasons stated in Defendants' memorandum of law (Dkt. No. 25, Attach. 3

[Defs.' Mem. of Law]), with this case being designated as the lead case, and all future filings to

be made in the lead case only.

### B.    First Third-Party Defendants' Motion to Dismiss

After carefully considering the matter, I recommend denying First Third-Party

Defendants' motion to dismiss Defendants' First Third-Party Complaint for the reasons stated in

Defendants' opposition memorandum of law.  (Dkt. No. 86, Attach. 2 [Defs.' Opp'n Mem. of

Law].)  To those reasons, the Court adds the following analysis, which is intended to supplement

but not supplant Defendants' arguments.

### 1.    Whether Defendants' Claims Are Ripe

Although "[c]laims for indemnification do not generally ripen until a judgment in the

underlying action is paid," third-party indemnification claims may be brought "before they are

technically ripe, so that all parties may establish their rights and liabilities in one action."  *Harris*

*v. Rivera*, 921 F. Supp. 1058, 1062 (S.D.N.Y. 1995) (quoting *Mars Assocs. v. N.Y.C. Educ.*

*Constr. Fund*, 126 A.D.2d 178, 191 (N.Y. App. Div. 1st Dep't 1987)); *accord Wallace v. Nat'l R.R. Passenger Corp.*, 5 F. Supp. 3d 452, 479 (S.D.N.Y. 2014); *see also Cevasco v. Nat'l R.R. Passenger Corp.*, 606 F. Supp. 2d 401, 410 (S.D.N.Y. 2009) (holding that "[i]n the absence of the citation of a single case . . . stating otherwise, Amtrak's [third-party] claim cannot be dismissed" where the indemnity obligation "is a broad indemnification clause that includes a duty to defend, a lawsuit has actually been filed against the indemnitee, and the indemnitee's claim is being brought as a third party action.").

As a result, I find that Defendants' first third-party action should proceed so that the Court may determine the liabilities of all parties in a single action.

### 2.    Scope of the Environmental Indemnity Clause

After carefully considering the matter, I reject First Third-Party Defendants' alternative argument that the Environmental Indemnity Clause does not require First Third-Party Defendants to indemnify Defendants, for the reasons stated in Defendants' opposition memorandum of law.  (Dkt. No. 68, Attach. 2 [Defs.' Opp'n Mem. of Law].)  To those reasons, I add the following two points.

First, it is axiomatic that when reviewing contracts, the relevant provisions must be read and interpreted in their entirety.  *Lawyers' Fund for Client Prot. of State of N.Y. v. Bank Leumi Tr. Co. of New York*, 94 N.Y.2d 398, 404 (2000).  Here, the Environmental Indemnity Clause states, "Buyer acknowledges that the Property has been utilized for storage, sale and transfer of petroleum products.  Discharge of such products onto the Property may have occurred from time to time in the past, and Buyer, having conducted whatever investigations, examinations, and/or tests that Buyer shall have deemed necessary prior to Closing, shall, upon acquiring title to the Property at Closing, indemnify, defend and hold Seller . . . from and against any and all claims . .

. of whatever nature occasioned by, arising out of or from, caused by, or in any manner relating to the presence of petroleum products and/or constituents, and/or byproducts and/or derivatives thereof on, at, in or from the Property . . . ."  (Dkt. No. 38 at 6.)  The fact that First Third-Party Defendants acknowledged that spills may have previously occurred, puts in context the indemnity provision whereby First Third-Party Defendants contractually agreed to defend and hold Defendants from all claims and damages related to petroleum products on or from the Property, which was spilled before, during, or after the closing.

Second, in the alternative, assuming *arguendo* that the Environmental Indemnity Clause is ambiguous (which I do not find that it is), "'at the motion to dismiss stage, the Court 'should resolve any contractual ambiguities in favor of the [non-movant].'"  *Lankau v. Luxoft Holding, Inc.*, 266 F. Supp. 3d 666, 681 (S.D.N.Y. 2017) (quoting *Subaur Distribs Corp. v. Subaru of Am., Inc.*, 425 F.3d 119, 122 (2d Cir. 2005)).

As a result, I recommend that First Third-Party Defendants' motion to dismiss be denied.

### 3.    Stay of Proceedings

First Third-Party Defendants requested in the alternative, that the Court stay the proceedings against them.  This request is denied without prejudice because it was improperly made for the first time in First Third-Party Defendants' reply brief.  *ABN AMRO VERZEKERINGEN BV v. Geologistics Ams., Inc.*, 485 F.3d 85, 97, n.12 (2d Cir. 2007) ("We decline to consider an argument raised for the first time in a reply brief"); *Clubside, Inc. v. Valentin*, 468 F.3d 144, 160 (2d Cir. 2006) ("we generally do not consider arguments that are raised for the first time in a reply brief"); *Patterson v. Balsamico*, 440 F.3d 104, 114 (2d Cir. 2006) ("He did not, however, raise this issue in his initial brief. This Court generally will not consider arguments raised for the first time in a reply brief"); *Duryea v. Cnty. of Livingston*, 06-

CV-6436T, 2007 WL 1232228, at *6 (W.D.N.Y. Apr. 26, 2007) ("the fact that defendants raised a new issue in their reply brief is improper practice").

      **C.**    **Defendants' Second Motion to Consolidate**

      After carefully considering the matter, the Court grants Defendants' second motion to consolidate for the reasons stated in Defendants' memorandum of law (Dkt. No. 107, Attach. 3 [Defs.' Mem. of Law]), with this case being designated as the lead case, and all future filings to be made in the lead case only.

      **ACCORDINGLY**, it is

      **ORDERED** that the Clerk of the Court amend the docket such that First Third-Party Defendant "Bruce Keenan" is changed to First Third-Party Defendant "Bruce Kenan"; and it is further

      **ORDERED** Defendants' first motion to consolidate (Dkt. No. 25) this action with *Honeywell Int'l Inc v. Sunoco (R&M), LLC*, 5:18-CV-1176 (FJS/ML), is **<u>GRANTED</u>** with this case being designated as the lead case, and all future filings to be made in the lead case only; and it is further

      **ORDERED** Defendants' second motion to consolidate (Dkt. No. 107) this action with *Honeywell Int'l Inc v. Citgo Petroleum Corp.*, 5:19-CV-1219 (FJS/ML), is **<u>GRANTED</u>** with this case being designated as the lead case, and all future filings to be made in the lead case only; and it is further

      **ORDERED** that First Third-Party Defendants' request to stay further proceedings against them (Dkt. No. 73) is **<u>DENIED</u> without prejudice**; and it is further

      **RECOMMENDED** that Defendants' motion for judgment on the pleadings (Dkt. No. 25) is **<u>GRANTED</u> in part** and **<u>DENIED</u> in part** such that Plaintiff's claims pursuant to OPA

and common law contribution be **<u>DISMISSED</u>**, and Plaintiff's claims pursuant to CERCLA and the New York Navigation Law **<u>SURVIVE</u>**; and it is further

**RECOMMENDED** that First Third-Party Defendants' motion to dismiss the First Third-Party Complaint (Dkt. No. 55) be **<u>DENIED</u>**.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec. of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

It is hereby respectfully **ORDERED** that the Clerk of the Court shall file a copy of this Order and Report-Recommendation on the docket of this case and serve a copy upon the parties in accordance with the local rules.

Dated: April 24, 2020
       Binghamton, New York

Miroslav Lovric
U.S. Magistrate Judge