**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**HONEYWELL INTERNATIONAL INC.,**

                          **Plaintiff,**

              **v.**                                       **5:18-CV-646**
                                                          **(FJS/ML)**

**BUCKEYE PARTNERS, L.P.; BUCKEYE**
**GP, LLC; BUCKEYE PIPE LINE**
**COMPANY, L.P.; BUCKEYE PIPE LINE**
**HOLDINGS, L.P.;**

                         **Defendants-**
                    **Third-Party Plaintiffs,**

**YAD ASSOCIATES, INC.; PYRAMID**
**COMPANY OF ONONDAGA; ROBERT**
**CONGEL; AND BRUCE A. KENAN,**

                  **First Third-Party Defendants.**
_____

| **APPEARANCES** | **OF COUNSEL** |
|---|---|
| **ARNOLD & PORTER KAYE** | **BRIAN D. ISRAEL, ESQ.** |
| **SCHOLER LLP** | **LAUREN COLE DANIEL, ESQ.** |
| 601 Massachusetts Avenue N.W. | |
| Washington, D.C. 20001 | |
| Attorneys for Plaintiff | |
| | |
| **HANCOCK ESTABROOK, LLP** | **JOHN G. POWERS, ESQ.** |
| 1800 AXA Tower I | **WENDY ANN MARSH, ESQ.** |
| 100 Madison Street | **JAMES J. O'SHEA, ESQ.** |
| Syracuse, New York 13202 | |
| Attorneys for Defendants and | |
| Third-Party Plaintiffs | |
| | |
| **THE WLADIS LAW FIRM, PC** | **KEVIN C. MURPHY, ESQ.** |
| 6312 Fly Road | **TIMOTHY J. LAMBRECHT, ESQ.** |
| East Syracuse, New York 13057 | |
| Attorneys for First Third-Party Defendants | |

**SCULLIN, Senior Judge**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

Pending before the Court are Magistrate Judge Lovric's ("MJ Lovric") April 24, 2020

Order and Report-Recommendation ("R&R"), *see* Dkt. No. 201, and Plaintiff's and First Third-

Party Defendants' objections thereto.  *See* Dkt. Nos. 201, 205, 206.


### II. BACKGROUND

On June 1, 2018, Plaintiff Honeywell International Inc. ("Plaintiff" or "Honeywell") filed

a complaint against Defendants Buckeye Partners, L.P.; Buckeye GP LLC; Buckeye Pipe Line

Company, L.P.; and Buckeye Pipe Line Holdings, L.P. (collectively referred to as "Defendants"

or "Buckeye").  *See generally* Dkt. No. 1.  In its complaint, Plaintiff asserted the following six

causes of action claiming that (1) Buckeye was liable under the Comprehensive Environmental

Response, Compensation, and Liability Act of 1980 ("CERCLA") § 107(a), 42 U.S.C. § 9607(a)

for the necessary costs of response that Plaintiff incurred by investigating and remediating SYW-

12; (2) Buckeye was liable under CERCLA §§ 107(a), 113(f), 42 U.S.C. §§ 9607(a), 9613(f) for

an equitable share of the necessary costs of response that Plaintiff incurred, consistent with the

National Contingency Plan ("NCP"), by investigating and remediating the Onondaga Lake

Bottom Subsite and investigating SYW-12; (3) Buckeye was liable under CERCLA §§ 107,

113(f) for an equitable share of the costs Plaintiff incurred, pursuant to the 2018 NRD Consent

Decree, for injury to, destruction of, or loss of natural resources resulting from hazardous

substances being released at or from its facilities at the Onondaga Lake Superfund Site; (4)

Buckeye was liable in contribution to Plaintiff under the Oil Pollution Act of 1990 ("OPA")

§§ 1009, 1017, 33 U.S.C. §§ 2709, 2717 for (a) oil-related removal costs that were incurred

consistent with, and not inconsistent with, the NCP at both the Onondaga Lake Bottom Subsite and SYW-12, and (b) damages for injury to, or economic losses resulting from destruction of, loss of, and/or loss of use of, natural resources; (5) Buckeye was liable to Plaintiff (a) under New York Navigation Law for contribution of petroleum discharge cleanup and removal costs that Plaintiff has incurred, and will continue to incur, with regard to investigating and remediating the Onondaga Lake Bottom Subsite and investigating SYW-12, and (b) for contribution of natural resource costs incurred pursuant to the 2018 NRD Consent Decree; and (6) Buckeye was liable under New York Civil Practice Law and Rules ("NYCPLR") § 1401 and New York common law for costs that Plaintiff has incurred, and will continue to incur, in excess of its equitable share under the 2007 Consent Decree, the 2018 Response Costs Consent Decree, the 2018 NRD Consent Decree, and the SYW-12 investigation as a result of contamination at Onondaga Lake. *See id.* at ¶¶ 263-327.  Accordingly, Plaintiff seeks, among other things, declaratory judgment and contribution by Defendants of their equitable share of response, removal and/or cleanup costs and natural resource development costs that Plaintiff has incurred or will incur.  *See id.* at ¶¶ 328-32.

On February 25, 2019, Defendants filed their First Third-Party Complaint against First Third-Party Defendants YAD Associates, Inc. ("YAD"), Pyramid Company of Onondaga ("Pyramid"), Robert J. Congel, and Bruce A. Kenan (collectively "FTP Defendants").  *See* Dkt. No. 38.  In their First Third-Party Complaint, Defendants assert the following three causes of action: (1) a declaratory judgment claim that FTP Defendants have a duty to indemnify and defend Defendants relative to the Sale Agreement they entered with YAD (the "Agreement"); (2) a declaratory judgment claim that FTP Defendants have a duty to indemnify and defend Defendants relative to the Guaranty and Surety Agreement that Pyramid executed (the

"Guaranty"); and (3) a breach of contract claim based on FTP Defendants' breach of their duty to defend Defendants. *See id.* at ¶¶ 41-58. Accordingly, Defendants seek, among other things, a declaratory judgment and a money judgment against FTP Defendants jointly and severally, in the amount of the attorney's fees, litigation costs, and court costs that Defendants previously expended in defense of Plaintiff's action. *See id.* at pp. 12-14.

The Court referred several motions to MJ Lovric for a report-recommendation. In his April 24, 2020 Order and Report-Recommendation, MJ Lovric considered the following motions: (1) Defendants' motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure and first motion to consolidate pursuant to Rule 42 of the Federal Rules of Civil Procedure, *see* Dkt. No. 25; (2) FTP Defendants' motion to dismiss Defendants' First Third-Party Complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, *see* Dkt. No. 55; and (3) Defendants' second motion to consolidate pursuant to Rule 42 of the Federal Rules of Civil Procedure, *see* Dkt. No. 107.

After reviewing the parties' arguments, MJ Lovric ruled as follows: (1) granted Defendants' first motion to consolidate this action with *Honeywell Int'l Inc. v. Sunoco (R&M), LLC*, No. 5:18-CV-1176 (FJS/ML) ("*Honeywell II*"); (2) granted Defendants' second motion to consolidate this action with *Honeywell Int'l Inc. v. Citgo Petroleum Corp.*, No. 5:19-CV-1219 (FJS/ML) ("*Honeywell III*"); (3) denied without prejudice FTP Defendants' request to stay further proceedings against them; (4) recommended that this Court grant in part and deny in part Defendants' motion for judgment on the pleadings, specifically recommending that this Court dismiss Plaintiff's OPA and common law contribution claims and allow Plaintiff's claims pursuant to CERCLA and New York Navigation Law to go forward; and (5) recommended that

this Court deny FTP Defendants' motion to dismiss Defendants' First Third-Party Complaint.
*See* Dkt. No. 201 at 45-46.

Plaintiff filed objections to MJ Lovric's recommendation that the Court grant Defendants'
motion for judgment on the pleadings with regard to its common law contribution claims.  *See
generally* Dkt. No. 206.  FTP Defendants filed objections to MJ Lovric's recommendation that
the Court deny their motion to dismiss Defendants' First Third-Party Complaint.  *See generally*
Dkt. No. 205.  None of the parties filed objections to MJ Lovric's recommendations that the
Court grant Defendants' motion for judgment on the pleadings as to Plaintiff's OPA claim and
deny that motion as to (1) Plaintiff's CERCLA claims, (2) Plaintiff's New York Navigation Law
claim, and (3) to the extent that Defendants "adopt" and join Sunoco's arguments from
*Honeywell II*.[1]  The Court will address each of the objections in turn.

## III. DISCUSSION

### A.  Standard of review

"When a court reviews a magistrate judge's recommendations, its review is *de novo* as to
those recommendations to which a party objects . . . and for clear error or manifest injustice as to
those recommendations to which a party does not object or makes only conclusory or general
objections. . . ."  *Widi v. Hudson*, No. 9:16-CV-1042 (FJS/DJS), 2019 WL 3491250, *1
(N.D.N.Y. Aug 1, 2019) (internal citations omitted).  Likewise, the court reviews for clear error
objections that merely reiterate the same arguments that were presented to the magistrate judge.
*See Praileau v. Cnty. of Schenectady*, No. 7:09-CV-0924 (TJM/GHL), 2010 WL 3761902, *1
(N.D.N.Y. Sept. 20, 2010) (citation and footnote omitted).  "After conducting its review, 'the

---

[1] The parties also did not appeal MJ Lovric's orders granting Defendants' first and second
motions to consolidate this action with *Honeywell II* and *Honeywell III*.

Court may "accept, reject, or modify, in whole or in part, the . . . recommendations made by the magistrate judge."'" *Widi*, 2019 WL 3491250, at *1 (citation omitted).

### B.  Recommendations to which the parties have filed no objections

As noted, the parties filed no objections to MJ Lovric's recommendations that the Court grant Defendants' motion for judgment on the pleadings as to Plaintiffs OPA claim and deny that motion (1) as to Plaintiff's CERCLA claims, (2) as to Plaintiff's New York Navigation Law claim, and (3) to the extent that Defendants "adopt" and join Sunoco's arguments from *Honeywell II*.

The Court has reviewed these recommendations for clear error and manifest injustice and finding none, the Court accepts these recommendations for the reasons stated in MJ Lovric's April 24, 2020 Order and Report-Recommendation.

### C.  Defendants' motion for judgment on the pleadings

#### 1. *Plaintiff's objections to MJ Lovric's recommendations*

Plaintiff's only objection is to MJ Lovric's recommendation that this Court grant Defendants' motion for judgment on the pleadings and dismiss its common law contribution claim.  *See* Dkt. No. 206 at 3-5.  Plaintiff argues that the Second Circuit has held that CERCLA does not expressly preempt applicable state law, nor is CERCLA such a comprehensive scheme that state law cannot supplement it.  *See id.* at 3 (quoting *Niagara Mohawk Power Corp.*, 596 F.3d at 138).  As such, Plaintiff argues that conflict preemption is the only way that CERCLA can preempt its state law contribution claims, which is not the case as to its claims for costs that are not recoverable under CERCLA.  *See id.* at 3-4.  Plaintiff contends that not only is it possible

for it to pursue both a CERCLA contribution claim for costs covered by CERCLA and a state law claim for costs that are not covered by CERCLA, but it also would further CERCLA's remedial purpose of encouraging cleanup of hazardous waste.  *See id.* at 4 (quoting *MPM Silicones, LLC v. Union Carbide Corp.*, 931 F. Supp. 2d 387, 406 (N.D.N.Y. 2013)).  Moreover, Plaintiff argues that allowing its state-law contribution claim to proceed as to costs that are not recoverable under CERCLA would not "stand as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress" because CERCLA's language does not evince Congressional intent to deprive plaintiffs from recovering costs under state contribution law that are not covered by CERCLA.  *See id.* (citing *Pac. Capital Bank, N.A. v. Connecticut*, 542 F.3d 341, 351 (2d Cir. 2008)).

Plaintiff takes issue with MJ Lovric's reliance on *Niagara Mohawk* to support his conclusion that CERCLA preempts its state-law contribution claims.  *See id.*  According to Plaintiff, the *Niagara Mohawk* court only held that CERCLA preempts state-law contribution claims for costs that are recoverable under CERCLA, not state-law contribution claims for costs that are not recoverable under CERCLA.  *See id.* (citing *Niagara Mohawk Power Corp.*, 596 F.3d at 138).  Thus, Plaintiff argues that, because the Court has not yet determined if all of the costs it seeks are recoverable under CERCLA, it is premature to dismiss its common law contribution claims on preemption grounds.  *See id.* at 5 (citing *MPM Silicones*, 931 F. Supp. 2d at 406).[2]

---

[2] Plaintiff states in a footnote that *Booth Oil Site Admin. Grp. v. Safety-Kleen Corp.*, No. 98-CV-0696A, 2012 WL 6209963 (W.D.N.Y. Nov. 27, 2012), on which MJ Lovric also relies to support his finding is also distinguishable because it did not address whether a plaintiff could pursue a state-law contribution claim for costs that are not recoverable under CERCLA.  *See* Dkt. No. 206 at 5.

*2. Analysis*

Rule 12(c) of the Federal Rules of Civil Procedure provides that, "after the pleadings are closed -- but early enough not to delay trial -- a party may move for judgment on the pleadings. Fed. R. Civ. P. 12(c).  When reviewing motions for judgment on the pleadings, courts apply the same standard of review as a motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  *See Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006) (citing [*Karedes v. Ackerley Grp., Inc.,* 423 F.3d 107, 113 (2d Cir. 2005)]).  Accordingly, the court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff.  *See Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (quotation omitted).  However, the court need not accept "legal conclusions, bare assertions, or conclusory allegations."  *Deutsche Bank Sec. Inc. v. Kingate Global Fund Ltd.*, No. 19 Civ. 10823 (ER), 2021 WL 1163715, *5 (S.D.N.Y. Mar. 26, 2021) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 681 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007))).  Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting [*Twombly*, 550 U.S.], at 570, 127 S. Ct. 1955).  A claim is considered facially plausible where "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing [*Twombly*, 550 U.S.], at 556, 127 S. Ct. 1955).  Therefore, under this standard, a plaintiff must support its claims with sufficient factual allegations to show "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citation omitted).  As such, if the plaintiff has not "'nudged [its] claims' . . . 'across the line from conceivable to plausible,'" the court must dismiss the complaint. *Id.* at 680 (quoting [*Twombly*, 550 U.S. at 570]).

Plaintiff has raised objections to MJ Lovric's recommendation that the Court grant Defendants' motion for judgment on the pleadings as to Plaintiff's common law contribution claim based on a finding that CERCLA preempts common-law contribution claims arising under state law.

The Second Circuit has stated that "CERCLA could preempt state law in one of three ways: (1) Congress expressly indicated that CERCLA preempts state law; (2) CERCLA is a comprehensive regulatory scheme such that it creates a reasonable inference that the state cannot supplement it; or (3) state law directly conflicts with CERCLA." *Niagara Mohawk Power Corp. v. Chevron U.S.A., Inc.*, 596 F.3d 112, 138 (2d Cir. 2010) (citing *Cal. Fed. Sav. & Loan Ass'n v. Guerra*, 49 U.S. 272, 280-81, 107 S. Ct. 683, 93 L. Ed. 2d 613 (1987)). The Second Circuit has also stated that CERCLA does not expressly preempt state law and is not so comprehensive as to prevent state law from supplementing it, which leaves direct conflict between state law and CERCLA as the only route available for preemption. *See id.* (citations omitted).

Preemption by conflict occurs either (1) when simultaneous compliance with state and federal law is impossible or (2) when the state law interferes with the federal law's ability to carry out Congress' full purposes and objectives. *See id.* (quoting *Pac. Capital Bank, N.A. v. Connecticut*, 542 F.3d 341, 351 (2d Cir. 2008) (quoting *United States v. Locke*, 529 U.S. 89, 109, 120 S. Ct. 1135, 146 L. Ed. 2d 69 (2000)) (internal quotation marks omitted)). In *Niagara Mohawk Power Corp.*, the Second Circuit concluded that "state law contribution claims for CERCLA response costs conflict with CERCLA contribution claims and therefore are preempted." *Id.* (footnote omitted). However, state law contribution claims for non-CERCLA response costs do not inherently conflict with CERCLA contribution claims; and, therefore, various courts in this Circuit have found that CERCLA does not preempt state common law

- 9 -

contribution claims to the extent that they seek to recover costs which CERCLA does not cover. *See ELG Utica Alloys, Inc. v. Niagara Mohawk Power Corp.*, No. 6:16-cv-01523 (BKS/ATB), 2020 WL 2616180, *4 (N.D.N.Y. May 22, 2020) (stating that "[w]hile state law contribution claims for CERCLA response costs are preempted, to the extent [defendant] is found liable for and seeking contribution for costs incurred outside of CERCLA, it may have a basis for contribution under New York Law" (citing *Niagara Mohawk*, 596 F.3d at 138-139; *MPM Silicones, LLC v. Union Carbide Corp.*, 931 F. Supp. 2d 387, 404 (N.D.N.Y. 2013) (finding that Second Circuit in [*Niagara Mohawk*] "clearly implied" that "there are grounds for state-law contribution when the PRP has incurred costs outside of CERCLA")) (footnote omitted); *MPM Silicones, LLC v. Union Carbide Corp.*, 931 F. Supp. 2d 387, 404 (N.D.N.Y. 2013) (finding that CERCLA does not preempt state law contribution claims for non-CERCLA costs and denying defendant's motion to dismiss plaintiff's claim as preempted under CERCLA); *HLP Properties, LLC v. Consol. Edison Co. of N.Y., Inc.*, No. 14 Civ. 01383 (LGS), 2014 WL 6604741, *8 (S.D.N.Y. Nov. 21, 2014) (stating that "*Niagara* thus appears to establish a rule that state law claims are not preempted by CERCLA insofar as they seek recovery of costs that do not fall within the ambit of CERCLA" (citation omitted)); *New York v. Next Millennium Realty, LLC*, No. CV-03-5985 (SJF) (MLO), 2008 WL 1958002, *10 (E.D.N.Y. May 2, 2008) (stating that § 107 would not preempt defendants' state law contribution claims in a scenario where the claims are "neither duplicative of, nor in conflict with § 107 of CERCLA" (citation omitted)). Therefore, the question is whether Plaintiff's "contribution claim plausibly alleges a theory of recovery apart from 'CERCLA response costs.'" *ELG Utica Alloys, Inc.*, 2020 WL 2616180, at *3 (quoting *Niagara Mohawk*, 596 F.3d at 138).

Here, Plaintiff's contribution claim plausibly alleges costs separate from CERCLA response costs.  As the parties extensively briefed, and MJ Lovric discussed, CERCLA includes a "petroleum exclusion," which excludes parties from recovering costs related to cleanup of petroleum and petroleum constituents.  *See* 42 U.S.C. § 9601(33); *Booth Oil Site Admin. Grp. v. Safety-Kleen Corp.*, 532 F. Supp. 2d 477, 510 (W.D.N.Y. 2007).  Plaintiff's claims under both state contribution law and CERCLA seek to recover costs that Plaintiff incurred in relation to the contamination at the Lake, 2007 Consent Decree, 2018 NRD Consent Decree, 2018 Response Costs Consent Decree, and SYW-12 investigation.  *See* Dkt. No. 40 at ¶¶ 263-97, 323-27.

One of Defendants' main arguments for sustaining MJ Lovric's recommendation is that Plaintiff based its contribution claim on the same sources of liability as its CERCLA claims; however, Defendants have not cited any authority indicating that this is improper.  It is entirely possible that, in relation to its duties under the decrees, the SYW-12 investigation, or more generally the Lake contamination, Plaintiff incurred costs for cleaning up and/or investigating hazardous substances covered by CERCLA, as well as petroleum and petroleum constituents that are not covered by CERCLA.  Indeed, Defendants now argue the exact opposite of what they argued in their original memorandum of law, in which they asserted that Plaintiff's CERCLA claims should be dismissed because Plaintiff does not plausibly allege that Defendants released any non-petroleum contaminants that migrated to SMU-6 or SYW-12.  *Compare* Dkt. No. 25-3 at 15-19, *with* Dkt. No. 209 at 8 (arguing that "every avenue of contribution which Honeywell claims exists for recovery of its alleged costs has a path through CERCLA").

Moreover, MJ Lovric rejected Defendants' petroleum exclusion argument and found that Plaintiff plausibly alleged facts that suggest Defendants' pipeline and tank terminal contaminated Oil City with both petroleum and non-petroleum substances, which then migrated to SMU-6 and

SYW-12 and contaminated the Lake.  *See* Dkt. No. 201 at 32-33, 40.  In other words, MJ Lovric found that Plaintiff plausibly alleged that Defendants were responsible for discharging both substances that CERCLA covers and substances that it does not cover.  Therefore, Defendants' argument that Plaintiff's complaint belies its claim seeking contribution for non-CERCLA costs is unavailing.

Additionally, Defendants' argument that the current action presents the same situation as in *Niagara Mohawk* fails.  Although the *Niagara Mohawk* court held that CERCLA preempts state-law contribution claims for CERCLA response costs because they conflict with CERCLA contribution claims, the court clearly explained that its holding was based on the fact that the plaintiff "did not incur costs outside of CERCLA" so it had "no grounds for contribution under New York law[.]"  *Niagara Mohawk Power Corp.*, 596 F.3d at 138-39.  Therefore, as Plaintiff argues in its objections, the *Niagara Mohawk* decision does not suggest that state-law contribution claims are preempted when the plaintiff seeks response costs that CERCLA does not cover.

Furthermore, since this Court has not determined whether CERCLA covers all of the costs that Plaintiff seeks to recover, and Plaintiff has plausibly alleged that Defendants discharged both petroleum and non-petroleum contaminants, it is premature at this stage of the case to dismiss Plaintiff's common law contribution claim on preemption grounds.  *See ELG Utica Alloys, Inc.*, 2020 WL 2616180, at *5 (stating that that "the Court cannot say, at this early stage of the case that [defendant]'s sole basis for recovery is response costs under CERCLA" where defendant alleged discharge and contamination from both petroleum and non-petroleum contaminants (citations omitted)).

Defendants' reliance on *Next Millenium Realty* does not change this conclusion. *Next Millennium Realty* does not refute Plaintiff's argument that its common law contribution claims are not preempted; it merely holds that CERCLA preempts a party's state law contribution claims to the extent that they are premised on a defendant's CERCLA liability. *See Next Millenium Realty,* 2008 WL 1958002, at *9-*10. In fact, the *Next Millenium Realty* court explicitly recognized that the defendants' state-law contribution claims would not be preempted as long as they were not duplicative of or in conflict with CERCLA. *See id.* at *10.

Finally, Defendants' attempt to distinguish the current case from *MPM Silicones* is unavailing. Defendants' only argument that *MPM Silicones* is distinguishable is that the court in that case was only considering the plaintiff's CERCLA § 107 and state-law contribution claims since it dismissed the plaintiff's § 113(f) contribution claim, whereas, here, because Plaintiff's § 113(f) contribution claim is still live, it can supplant Plaintiff's common law contribution claim. *See* Dkt. No. 209 at 8. Although this distinction is true, Defendants' argument ignores MJ Lovric's finding that Plaintiff has plausibly alleged that it has incurred cleanup costs related to Defendants' discharge of contaminants falling both inside and outside of CERCLA's scope. Defendants' argument also ignores legal authority from courts within this Circuit, including the *Next Millennium Realty* case on which they rely, which explicitly states that a party may maintain both CERCLA and common law contribution claims where the common law contribution claim is for costs related to contaminants that CERCLA does not cover. *See ELG Utica Alloys, Inc.*, 2020 WL 2616180, at *4; *HLP Properties, LLC*, 2014 WL 6604741, at *8; *MPM Silicones, LLC*, 931 F. Supp. 2d at 404, 406.

Additionally, Defendant has not established that the presence of Plaintiff's § 113(f) contribution claim is a meaningful ground on which to distinguish *MPM Silicones* from the

present case because, whether a court is addressing a common law contribution claim as it relates to a § 113(f) claim, a § 107 claim, or both, a court's preemption determination still depends on whether the plaintiff is exclusively seeking to recover CERCLA costs.  *See Niagara Mohawk Power Corp.*, 596 F.3d at 138-39 (clarifying that defendant's state-law contribution claim was preempted under § 113(f) because it did not incur costs outside of CERCLA); *Next Millennium Realty, LLC*, 2008 WL 1958002, at *10 (stating that § 107 would not preempt defendants' state law contribution claims in the scenario where the claims are "neither duplicative of, nor in conflict with § 107 of CERCLA").  Thus, the fact that Plaintiff has simultaneously brought a CERCLA contribution claim and a common law contribution claim does not mean that the common law contribution claim is automatically preempted.

Accordingly, the Court rejects MJ Lovric's recommendation with regard to the disposition of Plaintiff's common law contribution claim and denies Defendants' motion for judgment on the pleadings as to Plaintiffs common law contribution claim.

### D.  FTP Defendants' motion to dismiss Defendants' First Third-Party Complaint

#### 1.  *MJ Lovric's recommendation as to FTP Defendants' motion to dismiss*

MJ Lovric recommended that the Court deny FTP Defendants' motion to dismiss Defendants' First Third-Party Complaint for the following reasons.  *See generally* Dkt. No. 201 at 42-46.

First, MJ Lovric concluded that Defendants' action against FTP Defendants should not be dismissed because "third-party indemnification claims may be brought 'before they are technically ripe, so that all parties may establish their rights and liabilities in one action.'"  *See id.* at 42 (quoting *Harris v. Rivera*, 921 F. Supp. 1058, 1062 (S.D.N.Y. 1995)).

- 14 -

Next, MJ Lovric rejected FTP Defendants' alternative argument that they were not required to indemnify Defendants under the Environmental Indemnity Clause because the indemnity provision explicitly stated that FTP Defendants acknowledged that spills may have previously occurred, thereby giving context to the portion of the provision that states that FTP Defendants will defend and hold Defendants from all claims and damages stemming from petroleum products "on, at, in, or from the Property," which were spilled before, during, or after the closing.  *See id.* at 43-44 (citing *Lawyer's Fund for Client Prot. of State of N.Y. v. Bank Leumi Tr. Co. of New York*, 94 N.Y.2d 398, 404 (2000)).  In the alternative, MJ Lovric found that the Environmental Indemnity Clause was not ambiguous, but, even assuming that it was, he still recommended denying FTP Defendants' motion to dismiss because all contractual ambiguities should be resolved in favor of the non-moving party at the motion to dismiss stage. *See id.* at 44 (citing *Lankau v. Luxoft Holding, Inc.*, 266 F. Supp. 3d 666, 681 (S.D.N.Y. 2017)).

Third, MJ Lovric denied, without prejudice, FTP Defendants alternative request to stay proceedings against them because they improperly made that request for the first time in their reply brief.  *See id.* at 44.

### 2.  *FTP Defendants' objections to MJ Lovric's recommendation*

FTP Defendants object to MJ Lovric's recommendation on the following grounds. *See generally* Dkt. No. 205.  FTP Defendants first argue that, as a matter of law, the Environmental Indemnity Clause does not require them to indemnify or defend Buckeye.  *See id.* at 13. Specifically, FTP Defendants argue that MJ Lovric rejected this argument, which they put forth in their motion papers, without specifically explaining how he reached his finding and only

briefly summarizing the argument, therefore rendering his finding "vague and ultimately incorrect."  *See id.*

FTP Defendants further contend that, as a matter of law, the Environmental Indemnity Clause does not trigger a duty to indemnify or defend in the circumstances of this action.  *See id.* at 13.  In support of this point, FTP Defendants recite the arguments they raised in their previous memorandum of law so that the Court might review them *de novo*.  *See id.*  Initially, FTP Defendants reiterate their argument that the Environmental Indemnity Clause does not clearly and unequivocally state that they must defend and indemnify Defendants for all past releases on the Property because if the parties had agreed that YAD would be liable for all past, historical releases on or from the property, language indicating that was the parties' intent would be present.  *See id.* at 15-16.  Next, FTP Defendants recite their previous argument that MJ Lovric misapplied the legal principle that relevant contractual provisions must be interpreted in their entirety and within the context of the full Agreement.  *See id.* at 17.  Accordingly, FTP Defendants contend that (1) the Environmental Indemnity Clause contains nothing indicating that YAD agreed to indemnify for spills "before, during or after closing," and MJ Lovric read the word "migrated" into the clause; (2) MJ Lovric overlooked the fact that the word "presence" was in the indemnity language and that this word limits indemnification to "the future migration of releases from the Property" because, based on the dictionary definition of presence, YAD only agreed to indemnify Defendants for any claims relating to petroleum present at or in the Property at the time the parties entered into the Agreement; (3) CERCLA reinforces their argument regarding the word "presence" because the statutory scheme only imposes liability on current owners for contamination present on their property that migrates off the property during the time

of their ownership; and (4) the Agreement was entered into between sophisticated parties and no sophisticated buyer would open itself up to such an extensive liability risk.  *See id.* at 17-21.

FTP Defendants then re-assert their argument that they should not be responsible for the entirety of Defendants' costs for defending against Plaintiff's complaint.  *See id.* at 21. Specifically, FTP Defendants argue that, to the extent that Defendants are seeking to have them pay costs to defend against Plaintiff's claims for releases and discharges that are unrelated to the Property or Environmental Indemnity Clause, Defendants' claim should be dismissed.  *See id.* FTP Defendants assert that, if the Court does not dismiss Defendants' First Third-Party Complaint, the Court should at least dismiss the portion of the complaint requesting that they pay the cost of the entire litigation.  *See id.* at 22.  FTP Defendants further break their argument into two points: (1) the Environmental Indemnity Clause only relates to the Property so it does not require indemnification or defense of Defendants as to CERCLA releases and petroleum discharges from the Oil City pipeline, and (2) since those releases and discharges are beyond the scope of the Environmental Indemnity Clause, FTP Defendants are not obligated to pay defense costs for them.  *See id.* at 23.  According to FTP Defendants, MJ Lovric acknowledged their first point, but missed their second point, which is why they are objecting.  *See id.*  Furthermore, FTP Defendants contend that MJ Lovric's recommendation that the Court find that they would have to defend Defendants from all claims and damages arising from "petroleum products on or from the Property that was spilled before, during, or after the closing" excludes indemnification and defense costs for CERCLA or other Oil City petroleum releases but could still be read to require FTP Defendants to pay part of Defendants' costs.  *See id.* at 23-24.  Thus, FTP Defendants object to this finding because they claim that Defendants do not request this, but instead request payment of all costs.  *See id.* at 24.

Third, FTP Defendants argue, in the alternative, that the Environmental Indemnity Clause is ambiguous and should be interpreted by a finder of fact.  *See id.*  FTP Defendants contend that the only supportable conclusion MJ Lovric could have reached is that there are competing interpretations of the indemnity provision.  *See id.* at 25.  Moreover, FTP Defendants assert that assuming *arguendo* that Defendants' interpretation of the Environmental Indemnity Clause is reasonable, MJ Lovric should not have found it definitive at the motion to dismiss stage.  *See id.* (citing *NFL Enters. LLC v. Comcast Cable Communications, LLC*, 51 A.D.3d 52, 61 (1st Dep't 2008)).  FTP Defendants then shift gears and reiterate that the interpretation Defendants are seeking would lead to extraordinary results; and, if the parties intended that, language to that effect would be in the provision.  *See id.*  Additionally, FTP Defendants contend that, on November 29, 1983, Defendants entered a similar agreement with ExxonMobil relating to the Property and containing an environmental indemnification clause that clearly and unambiguously allocated risk for past, historic releases.  *See id.* at 26.  As such, FTP Defendants contend that the difference in clarity between the indemnity provision with ExxonMobil and the Environmental Indemnity Clause illustrates that MJ Lovric should have left it up to a trier of fact to interpret the Environmental Indemnity Clause.  *See id.* at 27-28.

Finally, FTP Defendants repeat their argument that they do not have an obligation to indemnify or pay Defendants' costs of defending Plaintiff's action unless and until Defendants are found liable to, and actually pay, Plaintiff.  *See id.* at 28.  FTP Defendants state that they do not object to MJ Lovric's finding that Defendants' claim is ripe for review.  *See id.*  Nonetheless, FTP Defendants request that the Court clarify that they have no obligation to indemnify or pay any defense costs to Defendants unless and until Defendants are found liable to, and actually

pay, Plaintiff.[3]  *See id.* at 28-29 (citing *Lehman XS Trust, Series 2006-GP2 by U.S. Bank Nat'l*

*Ass'n v. GreenPoint Mortgage Funding, Inc.*, 916 F.3d 116, 126 (2d Cir. 2019); *Bermudez v.*

*New York City Hous. Auth.*, 199 A.D.2d 356 (2d Dep't 1993)).


### 3.  Analysis

#### a.  The scope of the Environmental Indemnity Clause

##### (i)    FTP Defendants' objection that the Environmental Indemnity Clause does not require them to indemnify or defend Defendants

As Defendants argue, most of FTP Defendants' objections are identical to, or slightly

expand upon, arguments that they made to MJ Lovric.  Indeed, with regard to FTP Defendants'

first objection, which argues that the Environmental Indemnity Clause does not require them to

indemnify or defend Defendants, they explicitly stated that they "raised these arguments below

in their prior memorandum, but . . . they raise them again here to allow this Court to review them

*de novo.*"  *See* Dkt. No. 205 at 13.  Upon reviewing FTP Defendants' first objection, it is clear

that (1) their legal rules section is entirely copied from their original memorandum of law; (2)

their section arguing that Defendants' interpretation of the Environmental Indemnity Clause is

"not clearly and unequivocally stated in the Environmental Indemnity Clause" is almost identical

to the argument in their original memorandum of law; and (3) a large portion of the section about

interpreting the Environmental Indemnity Clause within the context of the entire clause and

Agreement relies on rule statements that are taken verbatim from their memorandum of law,

reformulates the same arguments about the importance of the word "presence," and claims that

MJ Lovric "overlooked" the word "presence."  *See id.* at 13-21.  The only portion of FTP

---

[3] FTP Defendants assert that this is not an objection, but that, to the extent it needs to be treated as such, the Court should treat it as an objection. *See id.*

Defendants' first objection arguments that is slightly different from those they made in their prior memorandum of law is the portion arguing that MJ Lovric read language into the Environmental Indemnity Clause and "overlooked" the word "presence."  However, even that portion appears to be a "rehashing of the same arguments and positions taken in the original papers submitted to [MJ Lovric]," as FTP Defendants are merely taking the arguments they made in opposition to Defendants' interpretation of the Environmental Indemnity Clause and rewording them to oppose MJ Lovric's adoption of Defendants' interpretation of the clause.  *See Camardo v. Gen. Motors Hourly-Rate Employees Pension Plan*, 806 F. Supp. 380, 382 (W.D.N.Y. 1992).  As such, FTP Defendants' first objection is subject to the clear error standard of review.  *See Praileau*, 2010 WL 3761902, at *1.

Having reviewed the portion of MJ Lovric's discussion to which FTP Defendants direct their first objection, the Court finds no clear error or manifest injustice in MJ Lovric's conclusion.

### (ii)   *FTP Defendants' objection that they are not obligated to pay Defendants' costs for the entire Honeywell litigation*

As to FTP Defendants' second objection, in which they argue that they should not have to pay Defendants' defense costs for the entire Honeywell litigation, they again largely rely on reworked arguments that they raised in their original memorandum of law.  FTP Defendants repeat their argument that Defendants seek an order requiring FTP Defendants to pay their defense costs for the entire litigation even though the Environmental Indemnity Clause limits their indemnification and defense liability to petroleum released from the Property.  *See* Dkt. No. 205 at 21-22.  FTP Defendants then quote a large portion of their analysis from their original memorandum of law to this effect under the guise that MJ Lovric failed to address it or understand it.  *See id.* at 22-23.  FTP Defendants then re-explain this part of their analysis from

their original memorandum of law, which is largely duplicative of the argument that they repeated at the beginning of their second objection section, and assert that MJ Lovric failed to understand that they have no obligation to pay Defendants' defense costs.  Finally, FTP Defendants conclude that they object to MJ Lovric's recommended finding that they must defend and hold Defendants' from all claims and damages arising from petroleum products on or from the Property at any time because it could be read to require them to pay some of Defendants' defense costs, but Defendants do not request that; Defendants request that FTP Defendants pay all of their costs.  *See id.* at 24.  All of these arguments are subject to clear error review because they are almost entirely reiterations of arguments and analysis FTP Defendants previously made in their original memorandum of law.

MJ Lovric provides several reasons for reaching his determination about how the Environmental Indemnity Clause should be interpreted.  Specifically, MJ Lovric reached his recommendation based on (1) the reasons stated in Defendants' memorandum of law in opposition; (2) his reading of the Environmental Indemnity Clause as a whole, as New York law requires, provides the context necessary to show that FTP Defendants agreed to indemnify and defend Defendants from all claims arising from petroleum products spilled on the Property at any time; and (3) the principle that, even if the Environmental Indemnity Clause is ambiguous, which it is not, contractual ambiguities should be resolved in favor of the non-moving party at the motion to dismiss stage.  *See* Dkt. No. 201 at 43-44.  After carefully reviewing these reasons on which MJ Lovric relied to reach his recommendation, the Court finds no clear error or manifest injustice in MJ Lovric's recommendation in this regard.

### (iii)   *FTP Defendants' alternative objection that the Environmental Indemnity Clause is ambiguous and must be interpreted by a fact finder*

As Defendants argue, FTP Defendants' third objection, wherein they contend, in the alternative, that the Environmental Indemnity Clause is ambiguous and that such ambiguity must be resolved by a trier of fact, is impermissibly asserted for the first time as an objection and, therefore, the Court should reject it.  "[A] district court will ordinarily refuse to consider argument that could have been, but was not, presented to the magistrate judge in the first instance."  *Kotler v. Bosco*, No. 9:17-CV-0394 (GTS/ML), 2020 WL 6128168, *1 (N.D.N.Y. Oct. 19, 2020) (citing *Zhao v. State Univ. of N.Y.*, No. 04-CV-0210 (KAM/RML), 2011 WL 3610717, at *1 (E.D.N.Y. Aug. 15, 2011) ("[I]t is established law that a district judge will not consider new arguments raised in objections to a magistrate judge's report and recommendation that could have been raised before the magistrate but was not.") (internal quotation marks and citation omitted); *Hubbard v. Kelley*, 752 F. Supp. 2d 311, 312-13 (W.D.N.Y. 2009) ("In this circuit, it is established law that a district judge will not consider new arguments raised in objections to a magistrate judge's report and recommendation that could have been raised before the magistrate but were not.") (internal quotation marks omitted)); *Fox v. Lee*, No. 9:15-CV-0390 (TJM/CFH), 2019 WL 1323845, *1 (N.D.N.Y. Mar. 25, 2019) (collecting cases).  This is because "'[f]or the district judge to review new evidence or arguments would reduce the magistrate's work to something akin to a meaningless dress rehearsal,' . . . and would frustrate the congressional objective behind [28 U.S.C.] § 636(b)(1) which is intended to alleviate the congestion of litigation in the district courts. . . ."  *Fox*, 2019 WL 1323845, at *1 (internal citations omitted).

Here, FTP Defendants take issue with MJ Lovric's interpretation of the Environmental Indemnity Clause by generally arguing that it is not supported by the record and that, even assuming *arguendo* that MJ Lovric's interpretation is reasonable, the Court should find that the clause is ambiguous and let a fact finder resolve the ambiguity.  *See* Dkt. No. 205 at 24-28. Since FTP Defendants did not argue in either their original memorandum of law or their reply to Defendants' memorandum of law in opposition that the Environmental Indemnity Clause was ambiguous, FTP Defendants are raising this argument for the first time under the guise of an objection when they could have raised it before MJ Lovric.  As such, the Court rejects FTP Defendants' third objection and finds no clear error or manifest injustice with regard to MJ Lovric's recommendation regarding the scope of the Environmental Indemnity Clause.

## IV. CONCLUSION

Having reviewed the entire file in this matter, Magistrate Judge Lovric's recommendations, the parties' objections, and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Magistrate Judge Lovric's April 24, 2020 Report-Recommendation, *see* Dkt. No. 201, is **accepted in part and rejected in part**; and the Court further

**ORDERS** that Defendants' motion for judgment on the pleadings, *see* Dkt. No 25, with regard to Plaintiff's OPA claim is **GRANTED** and Plaintiff's OPA claim is **DISMISSED**; and the Court further

**ORDERS** that Defendants' motion for judgment on the pleadings, *see* Dkt. No. 25, with regard to Plaintiff's CERCLA, New York Navigation Law, and common law contribution claims is **DENIED**; and the Court further

**ORDERS** that FTP Defendants' motion to dismiss Defendants' First Third-Party Complaint, *see* Dkt. No. 55, is **DENIED**.

**IT IS SO ORDERED.**

Dated: March 31, 2021
　　　　Syracuse, New York

　　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　Frederick J. Scullin, Jr.
　　　　　　　　　　　　　　　　　　　　Senior United States District Judge