U.S. DISTRICT COURT – N.D. OF N.Y.

FILED

**Dec 07 - 2021**

John M. Domurad, Clerk

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

**HONEYWELL INTERNATIONAL INC.,**

                                    **Plaintiff,**

           **v.**                                                    **5:18-CV-646
                                                                          (FJS/ML)
                                                                      (Lead Case)
                                                                      5:19-CV-1219
                                                                          (FJS/ML)
                                                                      (Member Case)**

**CITGO PETROLEUM CORPORATION,**

                                    **Defendant.[1]**
_____

**APPEARANCES**                                    **OF COUNSEL**

**ARNOLD & PORTER KAYE SCHOLER LLP**      **BRIAN D. ISRAEL, ESQ.**
601 Massachusetts Avenue N.W.                      **GEOFFREY J. MICHAEL, ESQ.**
Washington, D.C. 20001                             **LAUREN C. DANIEL, ESQ.**
Attorneys for Plaintiff

**ALLEN & DESNOYERS LLP**                          **DALE A. DESNOYERS, ESQ.**
90 State Street, Suite 1009
Albany, New York 12207
Attorneys for Plaintiff

**KAREN LEE PRENA P.C.**                           **KAREN LEE PRENA, ESQ.**
3100 North Sheridan Road, Suite 4d
Chicago, Illinois 60657
Attorneys for Defendant

**SCULLIN, Senior Judge**

### MEMORANDUM-DECISION AND ORDER

_____

[1] By Order and Report-Recommendation dated April 24, 2020, in _Honeywell Int'l Inc. v. Buckeye Partners, L.P._, No. 5:18-CV-646 ("_Buckeye Partners_"), Magistrate Judge Lovric granted Defendants' second motion to consolidate _Buckeye Partners_ with _Honeywell Int'l Inc. v. Citgo Petroleum Corp._, 5:19-CV-1219 (FJS/ML) ("_Citgo_"), with _Buckeye Partners_ being designated as the lead case and with all future filings to be made in _Buckeye Partners_ only.  _See Buckeye Partners_, Dkt. No. 201.

# I. INTRODUCTION

Pending before the Court is Defendant's motion to dismiss the complaint pursuant to

Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.  *See* Dkt. No. 15.

# II. BACKGROUND

In its 53-page, 360-paragraph complaint, Plaintiff asserts claims against Defendant

"pursuant to CERCLA, the Oil Pollution Act of 1990 ("OPA"), 33 U.S.C. §§ 2701 *et seq.*, and

New York State law for costs incurred and to be incurred as a result of releases of petroleum,

petroleum-related hazardous substances, and non-petroleum-related hazardous substances by

[Defendant] and/or its predecessors into Onondaga Lake, its tributaries, and onto land areas

which drain into Onondaga Lake."  *See* Dkt. No. 1, Complaint, at ¶ 1.

Specifically, Plaintiff asserts the following six causes of action in its complaint:

> (1) a CERCLA cost recovery claim for SYW-12 response costs
> pursuant to § 107(a) of CERCLA, 42 U.S.C. § 9607(a);
>
> (2) a claim for contribution related to response costs at the
> Onondaga Lake Bottom Site, pursuant to § 113(f) of CERCLA, 42
> U.S.C. § 9613(f);
>
> (3) a claim for contribution related to natural resource development
> ("NRD") costs pursuant to § 113(f) of CERCLA, 42 U.S.C.
> § 9613(f);
>
> (4) a claim for contribution related to oil-related removal costs
> incurred at the Onondaga Lake Bottom Site and SYW-12, pursuant
> to OPA, 33 U.S.C. § 2702;
>
> (5) a contribution claim related to petroleum discharges at the
> Onondaga Lake Bottom Site and SYW-12 pursuant to New York
> Navigation Law, N.Y. Nav. Law §§ 176(8), 181; and
>
> (6) a claim for contribution for contamination of Onondaga Lake
> that resulted in and will result in Plaintiff's incurrence of costs

> pursuant to New York State common law and N.Y. C.P.L.R.
> § 1401.

*See, generally,* Complaint.

Among other things, Plaintiff seeks declaratory judgment defining Defendant jointly and severally liable for response, removal and/or cleanup costs and NRD costs that Plaintiff has incurred or will incur. *See id.*

## III. DISCUSSION

### A.  Standard of review

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the plaintiff's claim for relief. *See Patane v. Clark*, 508 F.3d 106, 111-12 (2d Cir. 2007). When considering the legal sufficiency of a claim, the court must accept as true all well-pleaded facts in the complaint and draw all reasonable inferences in the plaintiff's favor. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (citation omitted). This presumption, however, does not apply to legal conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Generally, when considering dismissal pursuant to Rule 12(b)(6), the court only considers matters within the four corners of the complaint; however, it may, in addition, consider matters outside the complaint if those matters consist of (1) documents attached to the complaint or answer; (2) documents incorporated by reference in the complaint, and provided by the parties; (3) documents that, although not incorporated by reference, are "integral" to the complaint; or (4) any matter of which the court can take judicial notice for the factual background of the case. *See L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011) (quotations omitted). Moreover, even if a document is not incorporated by reference in the complaint, the court may still consider it when

the complaint "'relies heavily upon its terms and effect,' thereby rendering the document 'integral' to the complaint. . . . However, 'even if a document is "integral" to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document.' . . . 'It must also be clear that there exist no material disputed issues of fact regarding the relevance of the document.'. . ." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (internal quotations omitted).

To survive a motion to dismiss, a plaintiff need only plead "a short and plain statement of the claim[,]" Fed. R. Civ. P. 8(a)(2), with sufficient factual "heft to 'sho[w] that the [plaintiff] is entitled to relief[.]'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (quotation omitted). Under this standard, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level," *id.* at 555 (citation omitted), and present claims that are "plausible on [their] face," *id.* at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citation omitted). Furthermore, "[t]he *Twombly* plausibility standard, . . . does not prevent a plaintiff from 'pleading facts alleged "upon information and belief"' where the facts are peculiarly within the possession and control of the defendant, *see, e.g., Boykin v. KeyCorp*, 521 F.3d 202, 215 (2d Cir. 2008), or where the belief is based on factual information that makes the inference of culpability plausible, *see Iqbal*, 129 S. Ct. at 1949 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.")." *Arista Records LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (internal citation omitted). Finally, this plausibility standard

"'simply calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of illegal[ity].'"  *Id.* (quoting [*Twombly*], 550 U.S. at 556, 127 S. Ct. 1955).[2]

## B.    Plaintiff's OPA claim

Defendant moves to dismiss Plaintiff's OPA claim for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure because Plaintiff did not present that claim to Defendant prior to filing this action.  However, because the Court finds, as did Magistrate Judge Lovric in *Honeywell Int'l Inc. v. Buckeye Partners, L.P.*, 18-CV-646, that "OPA presentment is a mandatory condition precedent and not a jurisdictional requirement[,]" *Buckeye Partners, L.P.,* 18-CV-646, Dkt. No. 201 at 35 (citing *In re Oil Spill by Oil Rig DEEPWATER HORIZON the Gulf of Mexico, on April 20, 2010*, 10-4182, 10-4183, 10-3059, 11-0516, 2011 WL 5520295, *9 (E.D. La. Nov. 14, 2011) (citing *Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 434-442 (2011); *Leboeuf v. Texaco*, 9 F. Supp. 2d 661, 665 (E.D. La. 1998))), the Court will treat Defendant's motion as one to dismiss for failure to state a claim pursuant to Rule 12(b)(6).

Pursuant to Rule 9(c) of the Federal Rules of Civil Procedure, "[i]n pleading conditions precedent, it suffices to allege generally that all conditions precedent have occurred or been

---

[2] In support of its motion, Defendant several times attempts to incorporate by reference the arguments of the defendants in cases that have been consolidated together with this case as members cases in which *Buckeye Partners* has been designated as the lead case.  As a general matter, litigants are not permitted to "join in" or "incorporate by reference" the arguments of other litigants.  *Cf. Nissan Motor Acceptance Corp. v. Dealmaker Nissan, LLC*, No. 09-CV-196, 2012 WL 2522651, *2 (N.D.N.Y. June 27, 2012) (Suddaby, J.) (noting that, "[s]etting aside the risk that such reference could cause the referring document to violate the District's rule on page limitations (once it is incorporated into the referred document), such practice also risks causing the opposing party to inadvertently overlook the attempted incorporation, and risks confusing the Court as to which 'incorporated' arguments are not actually being relied upon").  The Court will follow this "general rule" and will not consider any such arguments.

performed."  Fed. R. Civ. P. 9(c).  OPA's presentation provision provides, in pertinent part, as follows:

> (a) Presentation
>
> Except as provided in subsection (b) [delineating presentation to the Fund], all claims for removal costs or damages shall be presented first to the responsible party or guarantor . . . .
>
> (c) Election
>
> If a claim is presented in accordance with subsection (a) and –
>
> (1) each person to whom the claim is presented denies all liability for the claim, or
>
> (2) the claim is not settled by any person by payment within 90 days after the date upon which (A) the claim was presented, or (B) advertising was begun pursuant to section 2714(b) of this title [delineating the claims clearing house procedures], whichever is later,
>
> the claimant may elect to commence an action in court against the responsible party or guarantor or to present the claim to the Fund. . . .

33 U.S.C. § 2713.

"OPA defines a 'claim' as 'a request, made in writing for a sum certain, for compensation for damages or removal costs resulting from an incident.'"  *Boca Ciega Hotel, Inc. v. Bouchard Transp. Co., Inc.*, 51 F.3d 235, 237-38 (11th Cir. 1995) (quoting 33 U.S.C.A. § 2701(3)).  "The OPA does not define the term 'sum certain.'  However, the Seventh Circuit has addressed what is needed to satisfy the requirements for a 'sum certain' in the context of the Federal Tort Claims Act."  *Nodine v. Plains All Am. Pipeline, L.P.*, No. 17-CV-163-SMY-DGW, 2018 WL 4636242, *3 (S.D. Ill. Sept. 27, 2019).  "In *Khan v. U.S.*, 808 F.3d 1169, 1172-73 (7th Cir. 2015), the Court noted, '[a]ll that must be specified . . . is 'facts plus a[] demand for money;' if those two things are specified, "the claim encompasses any cause of action fairly implicit in the facts.'"'

*Nodine*, 2018 WL 4636242, at *3 (quoting [*Kahn*, 808 F.3d] at 1172-73 (quoting *Murrey v. United States*, 73 F.3d 1448, 1452 (7th Cir. 1996))).  "'But as "facts plus a demand for money" must be specified, failure to ask for any damages – any money – is fatal'" *Id.* (quoting [*Kahn*, 808 F.3d] at 1173 (quoting *Smoke Shop, LLC v. United States*, 761 F.3d 779, 787-88 (7th Cir. 2014))).

In response to Defendant's argument that it had not met OPA's presentation requirement, Plaintiff filed under seal its 2013 presentation to Defendant, which it referenced in its complaint. Defendant does not question the authenticity of this document and because Plaintiff relies on this document in its complaint to argue that it has met OPA's presentation requirement, the Court may consider the 2013 presentation in deciding Defendant's motion to dismiss.  Having thoroughly reviewed the 2013 presentation, the Court finds that there is no mention of OPA anywhere in the document.  Moreover, although the 2013 presentation provides a sum, which if accepted, would settle all of Plaintiff's claims against Defendant, it does not indicate how that sum would be allocated between the various types of claims – CERCLA, OPA, state-law – that Plaintiff asserts against Defendant.  For these reasons, the Court finds that Plaintiff has not met OPA's presentation requirement and, therefore, grants Defendant's motion to dismiss Plaintiff's OPA claim on this ground.

Alternatively, the Court finds that Plaintiff's OPA claim is untimely.  The parties' Tolling Agreement specifically tolled claims "pursuant to the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), as amended, 42 U.S.C. 9601 et seq., and New York State law, related to the investigation, remediation and/or restoration of the Site, including

for response costs and/or damages (collectively "Tolled Claims")."  *See* Dkt. No. 15-3 at 2.[3]

Thus, as Defendant argues, the Tolling Agreement does not apply to Plaintiff's OPA claims,

which are not pursuant to CERCLA or New York state law.

In addition, the Court rejects Plaintiff's argument that the Tolling Extensions amended the

Tolling Agreement to clarify the definition of "Tolled Claims" to include OPA claims.  Each of

the Tolling Extensions provided that Plaintiff "contends that it has causes of action against

[Defendant] pursuant to, among *other laws*, the Comprehensive Environmental Response,

Compensation, and Liability Act ("CERCLA"), as amended 42 U.S.C. §§ 9601 *et seq.*, related to

the investigation, remediation and/or restoration of the Onondaga Lake Superfund Site ("Site"),

including for response costs and/or damages. ("Claims")."  *See* Dkt. No. 15-3 at 5, 7, 9, 11, 13,

15 (emphasis added).  Although this statement is slightly more inclusive than that set forth in the

original Tolling Agreement, it does not change the definition of "Tolled Claims."  Rather, the

"other laws" to which the Tolling Extensions refer coincides with the claims pursuant to "New

York State law" that are included in the "Tolled Claims" of the Tolling Agreement.  Moreover,

after indicating the period of time during which the tolling period was extended, each Tolling

Extension provides that "[n]o other terms of the Tolling Agreement shall be modified by this

Tolling Extension."  *See* Dkt. No. 15-3 at 6, 8, 10, 12, 14, 16.  Therefore, the Court finds that the

---

[3] Although Plaintiff did not attach the Tolling Agreement or any of the Tolling Extensions to its complaint nor incorporate them by reference therein, the Court may nonetheless consider them in connection with this motion because Plaintiff's complaint "'relies heavily upon [their] terms and effect, thereby rendering the document[s] "integral" to the complaint.'"  *Accent Delight Int'l Ltd. v. Sotheby's*, 394 F. Supp. 3d 399, 408 n.3 (S.D.N.Y. 2019) (quoting *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230 (2d Cir. 2016) (internal quotation marks omitted)) (other citation omitted).  Moreover, neither party has raised a challenge to the authenticity of the Tolling Agreement or the Tolling Extensions nor have they objected to the Court's consideration of them. In fact, both parties relied on these documents to support their respective arguments with regard to Defendant's motion to dismiss.

Tolling Extensions expressly limited their applicability to extending the tolling period and did

not amend the definition of the "Tolled Claims" as set forth in the original Tolling Agreement.

For these reasons, the Court concludes that the parties' intent was unambiguous and that

Plaintiff's claims are untimely and, therefore, grants Defendant's motion to dismiss Plaintiff's

OPA claim on this ground as well.


C.      **Plaintiff's state-law claims**

        *1. Plaintiff's New York Navigation Law claim*

        There is no general express preemption of all state activities and no implied "field"

preemption of state law under CERCLA.  *See New York v. Ametek, Inc.*, 473 F. Supp. 2d 432,

433 (S.D.N.Y. 2007) (citations omitted).  Moreover, CERCLA contains "savings clauses" that

suggest that Congress did not intend a complete preemption of state laws related to hazardous

materials contamination.  *See, e.g.,* 42 U.S.C. § 9614(a) (providing that "[n]othing in this

Chapter shall be construed or interpreted as preempting any State from imposing any additional

liability or requirements with respect to the release of hazardous substances within such State");

42 U.S.C. § 9652(d) (providing that "[n]othing in this chapter shall affect or modify in any way

obligations or liabilities of any person under other Federal or State Law, including common law,

with respect to releases of hazardous substances or other pollutants or contaminants . . .").

However, the doctrine of conflict preemption is an affirmative defense available to parties

"notwithstanding the presence of the savings clauses."  1 James T. O'Reilly, *Preemption and*

*state-federal Conflicts: Superfund and Brownfields Cleanup*, § 5:1 (2019).  "Conflict preemption

occurs when 'compliance with both federal and state regulations is a physical impossibility or

when state law is an obstacle to the accomplishment and execution of the full purposes and

objectives of Congress.'" *Town of Halfmoon v. Gen. Electric Co.*, 105 F. Supp. 3d 202, 217 (N.D.N.Y. 2015) (Hurd, J.) (quoting *Marsh v. Rosenbloom*, 499 F.3d 165, 177 (2d Cir. 2007) (internal quotation marks and citation omitted)).

Under New York Navigation Law, "[a]ny person who has discharged petroleum shall be strictly liable, without regard to fault, for all cleanup and removal costs and all direct and indirect damages . . ." N.Y. Nav. L. § 181(1). This includes costs incurred from investigation and remediation of petroleum. *See, e.g., New York v. LVF Realty Co., Inc.*, 59 A.D.3d 519, 521 (2d Dep't 2009). A party who shoulders the cleanup and removal costs and is not at fault for the petroleum discharge may pursue a claim against the actual polluters. *See* N.Y. Nav. L. §§ 172(3), 181(5).

With regard to its New York Navigation Law claim, Plaintiff alleges in its complaint, among other things, that (1) it "is a 'person' that has incurred and will continue to incur, 'cleanup and removal' costs, as that phrase is defined by N.Y. Nav. Law § 172(5), at the Onondaga Lake Bottom Subsite and SYW-12," *see* Complaint at ¶ 344; (2) its "cleanup and removal at the Onondaga Lake Bottom Subsite and SYW-12 were undertaken with the approval of DEC," *see id.* at ¶ 345; (3) its "actions related to the 'cleanup and removal' of 'petroleum' at the Onondaga Lake Bottom Subsite and SYW-12 have been in accordance with the NCP, codified at 40 C.F.R. Part 300, and as required by N.Y. Nav. Law § 176(4)," *see id.* at ¶ 346; (4) Defendant "is a 'person' who 'discharged' 'petroleum,' as those terms are defined by N.Y. Nav. Law §§ 172(14), (8), and (15), at the Onondaga Lake Bottom Subsite and SYW-12," *see id.* at ¶ 337; (5) Defendant's "'petroleum' 'discharges' into Onondaga Lake and SYW-12 were into the waters of the State of New York and/or onto lands from which the discharges might flow or drain into those waters," *see id* at ¶ 338; (6) Defendant's "petroleum discharges caused direct and indirect

damages to the natural resources of Onondaga Lake," *see id.* at ¶ 339; and (7) "[a] portion of the costs [Plaintiff] has incurred and will incur pursuant to the 2018 NRD Consent Decree are direct or indirect damages caused by [Defendant's] petroleum discharges," *see id.* at ¶ 340.

Furthermore, CERCLA specifically excludes from the definition of the term "pollutant or contaminant" "petroleum, including crude oil or any fraction thereof which is not otherwise specifically listed or designated as a hazardous substance under subparagraphs (A) through (F) of paragraph (14) . . .".  42 U.S.C. § 9601(33).  "Therefore, [Plaintiff's] Navigation Law claim[] related to [Defendant's] alleged release of petroleum are not preempted by CERCLA."  *Town of Halfmoon*, 105 F. Supp. 3d at 221 (citing *Coastline Terminals [of Connecticut, Inc. v. USX Corp.]*, 156 F. Supp. 2d [203,] 209 [(D. Conn. 2001)]).  Finally, Defendant cites no authority, and the Court could find none, for the principle that Plaintiff cannot state a New York Navigation Law claim because its cleanup with regard to SYW-12 was voluntary, especially when Plaintiff has alleged that it undertook such cleanup and removal with DEC's approval.  *See* Complaint at ¶ 345.

For all these reasons, the Court finds that Plaintiff has stated a plausible claim against Defendant under New York Navigation Law and, therefore, denies Defendant's motion to dismiss this claim.

### 2. Plaintiff's state common law contribution claim

Unlike Plaintiff's New York Navigation Law claim, "CERCLA preempts common law indemnification claims."  *Booth Oil Site Admin. Grp. v. Safety-Kleen Corp.*, No. 98-CV-0696A (Sr), 2012 WL 6209963, *3 (W.D.N.Y. Nov. 27, 2012) (citing *Niagara Mohawk Power Corp. v. Chevron U.S.A., Inc.*, 596 F.3d 112, 139 (2d Cir. 2010); *Bedford Affiliates v. Sills*, 156 F.3d 416,

427 (2d Cir. 1998), *overruled on other grounds by W.R. Grace & Co. – Conn. v. Zotos Int'l, Inc.*, 559 F.3d 85 (2d Cir. 2009); *New York v. Next Millennium Realty, LLC*, No. CV-0305985, 2008 WL 1958002, at *8-9 (E.D.N.Y. May 2, 2008) (granting motion to dismiss state law indemnification claims asserted between potentially responsible parties to a CERCLA action based upon conflict preemption)).  Therefore, the Court grants Defendant's motion to dismiss Plaintiff's state common law contribution claim.

**D.     Plaintiff's CERCLA claims**

CERCLA's primary purposes are (1) to encourage "'the timely cleanup of hazardous waste sites'" and (2) to "'plac[e] the cost of that [cleanup] on those responsible for creating or maintaining the hazardous condition.'"  *Consol. Edison Co. of New York, Inc. v. UGI Utils., Inc.*, 423 F.3d 90, 94 (2d Cir. 2005) (quoting *Control Data Corp. v. S.C.S.C. Corp.*, 53 F.3d 930, 935-36 (8th Cir. 1995) (internal quotation marks and citations omitted)) (other citations omitted).  Thus, the court is required to "construe the statute liberally in order to effect these congressional concerns."  *Schiavone v. Pearce*, 79 F.3d 248, 253 (2d Cir. 1996) (citations omitted).  However, "CERCLA's scope of coverage is not limitless."  *Town of Halfmoon v. Gen. Electric Co.*, Nos. 1:09-CV-0228, 1:11-CV-6, 2015 WL 6872308, *1 (N.D.N.Y. Nov. 9, 2015) (Hurd, J.). "CERCLA's definition of hazardous substance does not include petroleum, or the hazardous substances normally found in refined petroleum, including unadulterated waste oil."  *Booth Oil Site Admin. Grp. v. Safety-Kleen Corp.*, 532 F. Supp. 2d 477, 510 (W.D.N.Y. 2007) (citing 42 U.S.C. § 9901(14); *City of New York v. Exxon Corp.*, 766 F. Supp. 177, 186 (S.D.N.Y. 1991); *Aces & Eights Realty, LLC v. Hartman*, No. 02-CV-6032, 2002 WL 31663515, at *6 (W.D.N.Y.

Nov. 4, 2002)); *see also* 42 U.S.C. § 9601(33) (excluding "petroleum" from the definition of a hazardous substance).

Defendant seeks to dismiss Plaintiff's CERCLA claims, arguing that Plaintiff has pled no facts that establish onsite non-petroleum hazardous substance contamination at the CITGO Terminal Operations.  *See* Dkt. No. 15-1 at 18.  The Court finds this argument unpersuasive.

Plaintiff's complaint alleges facts plausibly suggesting that, in addition to petroleum contamination, Defendant's operations at the CITGO Terminal in Oil City caused SYW-12, the Barge Canal and the Onondaga Lake Bottom Subsite to be contaminated with hazardous substances.  *See T & K Realty, LLC v. Teeter Envtl. Servs., Inc.*, No. 5:07-CV-0990 (GTS/GHL), 2010 WL 1189375, *4 (N.D.N.Y. Mar. 24, 2010) (Suddaby, J.) (holding that the complaint alleged facts plausibly suggesting that, "in addition to causing petroleum contamination, the [defendant's] removal of the underground storage tank ("UST") caused Plaintiff's property to be contaminated with the volatile organic compounds dichlorobenzene, dichloroethene, methylene chloride, trichloroethene, benzene, ethylbenzene, naphthalene, toluene, trimethylbenzene, xylenes, solvents, and petroleum constituents" (citation omitted)).  For example, in its complaint, Plaintiff alleges that Defendant "regularly spilled and leaked non-petroleum-related hazardous substances during its operations at the Oil City; . . . [those] spills and leaks of petroleum-related hazardous substances included (but were not limited to) the following:

> (a) Spills and leaks from tanks and pipelines storing fuel additives (such as ethanol, xylene, and MBTE);
>
> (b) spills and leaks of solvents used to clean equipment;
>
> (c) Corrosion of tanks and tank bottoms resulting in spills and leaks of product contaminated with rust, metals (including heavy metals), and other hazardous substances;

(d) Spills of contaminated tank bottom sludge during tank cleanout;

(e) Disposal and discharge of oil/water separator sludge contaminated with rust, heavy metals, solvents, and other hazardous substances[; and]

(f) Spills and leaks of sludge from slop tanks and oil/water separators."

*See* Complaint at ¶ 164.

In addition, Plaintiff plausibly alleges that Defendant's non-petroleum contaminants migrated to SYW-12 from Oil City.  For example, the complaint alleges that Defendant "spilled, leaked, and (in some instances, intentionally) released . . . non-petroleum-related hazardous substances directly into the Barge Canal and Onondaga Lake."  *See* Complaint at ¶ 169.  In addition, Plaintiff contends that Defendant "discharged other process and chemical wastes, including (without limitation) loading rack wash water, storage tank water drawoff, and spill wash water" and that, "[u]pon information and belief, these process and chemical wastes were contaminated with hazardous substances, including cleaning solvents."  *See id.* at ¶¶ 177-178.  Furthermore, Plaintiff contends that, "[i]n the ordinary course of its operations at and around Oil City, [Defendant] released a variety of contaminants onto the Oil City parcels, into the Barge Canal and directly into Onondaga Lake [and that such] contaminants . . . included, but were not limited to, . . . non-petroleum-related wastes, solvents, and other hazardous substances."  *See id.* at ¶¶ 184-185.  In addition, Plaintiff asserts that DEC has identified a number of non-petroleum contaminants in the CITGO Terminal area.  *See id.* at ¶ 207.

Moreover, Plaintiff alleges in its complaint that environmental contaminants that Defendant released "through spills, leaks, and discharges of . . . non-petroleum-related hazardous substances made their way to the Lake through various pathways."  *See id.* at ¶ 208.  Plaintiff

asserts that "[m]any contaminants from [Defendant's] operations at Oil City were directly introduced into Onondaga Lake." *See id.* at ¶ 209.  In addition, Plaintiff alleges that "[a] portion of contaminants spilled or leaked into the subsurface of the CITGO Terminal (or otherwise released by [Defendant] elsewhere in the Onondaga Lake basin) were transported through groundwater and/or non-aqueous phase liquid directly to the Lake." *See id.* at ¶ 216.  Plaintiff also contends that "[c]ontaminants from the CITGO Terminal were . . . introduced to the Lake via the Barge Canal" and "[a] portion of contaminants spilled or leaked into storm sewers on [Defendant's] Oil City properties were discharged directly into the Barge Canal." *See id.* at ¶¶ 217-218.  Finally, the complaint alleges that "[a] portion of [Defendant's] contaminants that were discharged to the Barge Canal was transported through the sediments of the Barge Canal into the Lake," *see id.* at ¶ 223; and "[a] portion of [Defendant's] contaminants that were discharged to the Barge Canal was also dredged from the sediments of the Barge Canal and deposited in the Lake or on SYW-12," *see id.* at ¶ 224.

The Court finds that these above-cited allegations, as well as many others in the complaint, are more than sufficient to demonstrate that CERCLA's oil exclusion does not bar Plaintiff's CERCLA claims.  Therefore, the Court denies Defendant's motion to dismiss Plaintiff's CERCLA claims on this ground.

### 2. Plaintiff's SYW-12 CERCLA § 113 claims for contribution

Explaining the difference between § 107(a) and § 113(f) of CERCLA, the Seventh Circuit stated in *Metropolitan Water Reclamation Dist. of Greater Chicago v. N. Am. Galvanizing & Coatings, Inc.*, 473 F.3d 824 (7th Cir. 2007), that

> Section 107(a) of the Comprehensive Environmental Response,
> Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9601

> et seq., imposes liability for certain private parties for the cleanup
> costs associated with a hazardous waste contamination.  In turn,
> CERCLA Section 113(f), added by the Superfund Amendments
> and Reauthorization Act of 1986 ("SARA"), Pub. L. No. 99-499,
> 100 Stat. 1613 (1986), allows those responsible for cleanup costs
> to bring actions for contribution against one another as a means of
> apportioning fault.

*Id.* at 825.

Furthermore, "following the creation of the statutory § 113 contribution action the question arose as to whether that section should now be viewed as a party's *exclusive* means of obtaining payment from other PRPs ["Potentially Responsible Parties"]."  *Appleton Papers Inc. v. George A. Whiting Paper Co.*, 572 F. Supp. 2d 1034, 1039 (E.D. Wis. 2008).  As the *Appleton Papers* court noted, "[a]ppellate courts addressing that issue all concluded that the § 113(f) contribution claim should in fact generally be deemed a PRP's exclusive remedy for obtaining contribution."  *Id.*  There were several reasons for this conclusion, including that "§ 113(f)'s contribution provisions were stricter: for example, it has a 3-year statute of limitations versus § 107(a)'s six-year limitations period."  *Id.*  Furthermore, the court stated that "the Second Circuit [had] noted [that], to allow a PRP to use § 107(a) to recover costs when § 113(f) was now available would render § 113(f) meaningless and undermine Congress' purpose in creating the cause of action."  *Id.* (citing *Bedford Affiliates v. Sills*, 156 F.3d 416, 424 (2d Cir. 1998)).  Thus, according to the *Appleton Papers* court, "[i]t . . . became clear that § 113(f) was the exclusive remedy of a PRP whose cleanup costs came in response to Government-ordered remedial action."  *Id.*

On the other hand, the *Appleton Papers* court noted that the Supreme Court had held in *Cooper Indus. v. Aviall Svcs., Inc.*, 543 U.S. 157 (2004), that "a private party who had *not* been the subject of a Government-ordered cleanup action [could] *not* maintain a § 113(f) contribution

claim against other liable parties." *Id.* (citing [*Cooper Indus. v. Aviall Servs., Inc.*,] 543 U.S. 157, 160-61, 125 S. Ct. 577, 160 L. Ed. 2d 548 (2004)).  Thus, "the [Supreme] Court made it clear that § 113(f) was unavailable to PRPs who had not been the subject of any civil action under § 107(a) or § 106." *Id.*  However, the court noted that "the [Supreme] Court [had] left open the possibility (without deciding the question) that the implied right of action under § 107 would still survive as a viable remedy for a party that had incurred cleanup costs on its own." *Id.* at 1039-40.

Subsequently, in *Metropolitan Water,* the Seventh Circuit addressed the question that the Supreme Court had left open in *Cooper Indus*.  The *Appleton Papers* court explained that, in *Metropolitan Water*, the question was "whether there was a private right of action for a party under § 107(a) for a *potentially* liable party – i.e., a party who has not been sued under § 107 or § 106 but who *might* be subject to such a suit one day." *Id.* at 1040.  The plaintiff in *Metropolitan Water* had not been the subject of any EPA order nor had it been compelled to initiate any cleanup action; and, therefore, the cleanup costs it had incurred were voluntary rather than as a result of adverse litigation. *See id.*  Nonetheless, the defendant argued that the plaintiff "could, in the future, be subject to such an action and thus should be limited to seeking relief under § 113(f)." *Id.*  The Seventh Circuit disagreed and found, as had the Eighth and Second Circuits, "that a party was not foreclosed from bringing a § 107(a) cost recovery action merely because it might later be eligible to bring a contribution action under § 113(f)." *Id.*  The *Metropolitan Water* court reasoned that "[a]llowing such cost-recovery actions at an early stage (e.g., before a party was sued by the Government) would foster CERCLA's goal of speedy cleanup and would encourage parties to take remedial action rather than wait to be sued." *Id.* (citation omitted).  "In sum, the court found that when a PRP incurs cleanup costs *voluntarily*

(i.e., not the result of an adverse lawsuit), it may seek recovery of those costs under § 107 against the other parties regardless of the fact that § 113(f) might be available to it in the event it were later sued." *Id.*

The *Appleton Papers* court explained, however, that, "[i]n finding a viable § 107 action under those circumstances, . . the [*Metropolitan Water* court] was careful to note that it was not overturning its earlier precedent, in particular its decision in *Akzo Coatings, Inc. v. Aigner Corp.* 30 F.3d 761, 764 (7th Cir. 1994) [, in which it] had found § 113(f) to be the exclusive recovery remedy for parties [that] had incurred costs as a result of lawsuits: a claim '"by and between jointly and severally liable parties for an appropriate division of the payment one of them has been compelled to make' sounds in contribution, and must be brought under § 113(f)(1).'" *Id.* (quoting *Metropolitan Water*, 473 F.3d at 828 (quoting *Akzo*, 30 F.3d at 764)). "Such *involuntary* incurred recovery costs are the sort for which § 113(f)'s contribution regime is the exclusive remedy." *Id.* Likewise, the *Appleton Papers* court noted that "the Second Circuit summarized its own view succinctly: 'we hold that section 107(a) permits a party that has not been sued or made to participate in an administrative proceeding, but that, if sued, would be held liable under section 107(a), to recover necessary response costs incurred voluntarily, not under a court or administrative order or judgment.'" *Id.* (quoting *Consolidated Edison Co. of New York, Inc. v. UGI Utilities, Inc.*, 423 F.3d 90, 100 (2d Cir. 2005)). The Supreme Court agreed with both the Second and Seventh Circuit's approach in *United States v. Atl. Research Corp.*, 127 S. Ct. 2331 (2007). In that case, the defendant "had caused pollution at a site owned by the United States Government owned [and had] cleaned up the site on its own and then sought cost recovery and contribution from the Government under both § 107 and § 113." *Appleton Papers*, 572 F. Supp. 2d at 140. "The Court's decision in *Cooper Industries* foreclosed recovery under § 113

- 18 -

because Atlantic Research had not been the subject of any enforcement action[, *i.e.*, it had not

incurred any] compelled cleanup costs.  The Supreme Court held, however, that by its plain

terms § 107 allowed recovery even though Atlantic Research was a PRP – in other words, as in

*Metropolitan Water*, the fact that it might later be subject to suit for liability did not render

recovery under § 107 unavailable."  *Id.*

The Supreme Court explained that "[a] contribution action under § 113 was premised on

the traditional meaning of 'contribution' – 'a tortfeasor's right to collect from others responsible

for the same tort after the tortfeasor has paid more than his or her proportionate share, the shares

being determined as a percentage of fault.'"  *Appleton Papers*, 572 F. Supp. 2d at 1040-41

(quoting [*Atl. Research Corp.*, 127 S. Ct.] at 2338 (quoting Black's Law Dictionary 353 (8th ed.

1999))).

> "By contrast § 107(a) permits recovery of cleanup costs but
> does not create a right to contribution.  A private party may
> recover under § 107(a) without any establishment of liability to a
> third party.  Moreover, § 107(a) permits a PRP to recover only the
> costs it has "incurred" in cleaning up a site.  42 U.S.C.
> § 9607(a)(4)(B).  When a party pays to satisfy a settlement
> agreement or a court judgment, it does not incur its own costs of
> response.  Rather, it reimburses other parties for costs that those
> parties incurred.
>
> Accordingly, the remedies available in §§ 107(a) and
> 113(f) complement each other by providing causes of action 'to
> persons in different procedural circumstances.'"

*Id.* at 1041 (quoting [*Atl. Research Corp.*, 127 S. Ct. at 2338] (quoting *Consolidated Edison*, 423

F.3d at 99)).

The *Atl. Research Corp.* "summarized the state of affairs as follows: '[f]or our purposes,

it suffices to demonstrate that costs incurred voluntarily are recoverable only by way of

§ 107(a)(4)(B), and costs of reimbursement to another person pursuant to a legal judgment or settlement are recoverable only under § 113(f).'" *Id.* (quoting [*Atl. Research Corp.* at 2338] n.6).

Based on this case law, the court in *Appleton Papers* concluded that,

> after *Atlantic Research*, the present state of the law can be boiled down to the following two principles:
>
> 1. Costs incurred involuntarily (e.g., as the result of adverse litigation or Government order) must be recovered through a contribution action under § 113(f).
>
> 2. Costs incurred voluntarily when no adverse litigation has occurred (as in *Atlantic Research* and *Metropolitan Water*) may be recouped through a cost recovery action under § 107.

*Appleton Papers Inc.*, 572 F. Supp. 2d at 1041.

In *Appleton Papers*, the plaintiffs argued that "the costs they [sought] to recover under § 107 were voluntarily incurred because they were 'in addition to those costs and damages paid or to be paid pursuant to the State Agreement, the 2001 Consent Decree, the 2005 Consent Decree Extension, the Administrative Settlement Agreement and Order on Consent and the 2006 Phase 1 Consent Decree.'" *Id.* at 1042 (quotation omitted). The court explained that, in sum, the plaintiffs "believe[d] that costs incurred above and beyond those explicitly provided for in consent decrees and settlement agreements [were] fairly recoverable under § 107." *Id.* (footnote omitted).

On the other hand, the Government, as *amicus curia*, argued that "a PRP may have a cause of action under § 107 (as in *Atlantic Research*) *or* it may have a cause of action under § 113. Once it has been sued, however, it cannot pursue both." *Id.* To support this argument, the Government and the defendants focused on the following language, "'*PRPs that have been subject to §§ 106 or 107 enforcement actions are still required to use § 113. . . .*'" *Id.* (quoting [*Atl. Research*, 127 S. Ct. at 2335] (italics added) (quoting [*Atlantic Research Corp. v. United*

*States*, 459 F.3d [827] at (8th Cir. 2006)])).  The court explained that "[t]his phrase suggests that courts are not interested in analyzing the particular nature of the costs sought (as Plaintiffs prefer) but rather focus simply on the PRP's procedural status, specifically, whether it has been 'subject' to an enforcement action."  *Id.*

The *Appleton Papers* court concluded that the position of the defendants and the Government "[found] greater support in the text of CERCLA and the caselaw construing it."  *Id.*  The court explained that, "[d]espite the courts' use of the terms 'voluntary' and 'involuntary' to distinguish between payments recoverable under § 107(a) and those recoverable under § 113(f), the operative principle appears to be that § 107(a) is available to recover payments only in cases where § 113(f) is not. . . In cases where a claim for contribution can be asserted under § 113(f), § 107(a) cannot be used."  *Id.* at 1042-43 (internal footnote omitted).  The court stated that "[t]his ma[de] sense for the reasons noted by the Third Circuit in *Bedford Affiliates v. Sills*:

> 'Were we to permit a potentially responsible person to elect recovery under either § 107(a) or § 113(f)(1), § 113(f)(1) would be rendered meaningless. . . . A recovering liable party would readily abandon a § 113(f) suit in favor of the substantially more generous provisions of § 107(a).' 156 F.3d at 424.  At the same time, parties who do not have access to § 113(a), either because they are completely innocent and do not share common liability with any PRPs, or because the Government has not brought an enforcement action, must be allowed to recover under § 107(a) if injustice is to be avoided.'

*Id.* at 1043.

The court also found that "[t]his interpretation [was] consistent with *Atlantic Research* and *Metropolitan Water*, [in which] the party seeking recovery under § 107 had not been sued by the Government for cleanup and thus could not bring a claim under § 113(f)."  *Id.*  The court noted that "[t]he Seventh Circuit's discussion in *Metropolitan Water*, in particular, strongly

suggest[ed] that it [was] the procedural history of the case that determine[d] whether § 107 [was] available." *Id.*

> "In *Akzo*, the plaintiff, before bringing suit against another PRP, had been the subject of an EPA administrative order under § 106 requiring Akzo Coatings and several other 'liable persons' to conduct certain emergency removal activities.  [30 F.2d] at 762.  Here, by contrast, there has been no EPA order and no proceeding apportioning necessary costs of response to Metropolitan Water.  Thus, unlike in *Akzo*, Metropolitan Water has not been compelled to initiate cleanup or repay the EPA, and Metropolitan Water's action against North American is not an action 'for an appropriate division of the payment one of them has been compelled to make.' *Id.* at 764."

*Appleton Papers*, 572 F. Supp. 2d at 1043 (quoting [*Metropolitan Water*,] 473 F.3d at 836).

The court also noted that, "in *Atlantic Research* the Supreme Court quoted the Eighth Circuit's holding that PRPs that 'have been subject to §§ 106 or 107 enforcement actions are still required to use § 103.'"  *Id.* (quoting [*Atl. Research*,] 127 S. Ct. at 2335).  Finally, the court concluded that it "follow[ed] that the question whether Plaintiffs have a claim under § 107(a) depends on whether any of the payments they seek to recover are recoverable under § 113(f).  If all of the payments they now seek to recover are recoverable under § 113(f), their § 107(a) claim should be dismissed.  If, on the other hand, some of their payments can not [sic] be recovered under § 113(f), then their § 107(a) claim survives." *Id.*

In this case, Plaintiff asserts in its complaint the following with regard to SYW-12:

> 54.    The SYW-12 property is located at the southern end of Onondaga Lake along the southeastern shoreline of the Lake.

> 55.    The SYW-12 property is bounded by railroad tracks and the former Oil City area to the south and east, a barge canal to the south, and the Lake to the north and northwest.

> 56.    The area is currently approximately 40.7 acres but has expanded and contracted over time based on Lake depth and deposition of dredged and fill material.

- 22 -

57.     The area is currently owned by Onondaga County.

58.     Neither Honeywell nor its predecessors owned or operated at SYW-12.

59.     Nonetheless, Honeywell – with approval and oversight from DEC – began investigation at the SYW-12 property in 2006.

60.     Neither EPA nor DEC has ever formally concluded that Honeywell is a responsible party at SYW-12.

61.     No administrative or judicial settlement or order explicitly resolves any Honeywell liability for SYW-12.

62.     Honeywell has incurred and anticipates incurring significant costs in the investigation of contamination at SYW-12 all of which have been or will be incurred with DEC approval.

*See* Complaint at ¶¶ 54-62.

There can be no doubt that, given Plaintiff's "procedural posture" regarding SYW-12, § 9607 provides the remedy for the "voluntary" costs that Plaintiff has incurred or may incur in the future.  As the Seventh Circuit explained in *Bernstein v. Bankert*, 733 F.3d 190 (7th Cir. 2013), "each CERCLA right of action carries with it its own statutory trigger, and each is a distinct remedy available to persons in different procedural circumstances." *Id.* at 202 (citing *Atl. Research*, 551 U.S. at 139, 127 S. Ct. 2331 (citing *Consol. Edison Co.*, 423 F.3d at 99); *Niagara Mohawk Power Corp. v. Chevron USA, Inc.*, 596 F.3d 112, 122 (2d Cir. 2010)). "Where a person has been subjected to a civil action under 42 U.S.C. §§ 9606, 9607(a), he may attempt to recover his expenditures through a contribution suit under 42 U.S.C. § 9613(f)(1)." *Id.*  "Where a person has resolved his liability to the United States, or to a state, for some or all of a response action or for some or all of the costs of such action in an administrative or judicially approved settlement, he may attempt to recover his expenditures in a contribution suit pursuant to 42 U.S.C. § 9613(f)(3)(B)." *Id.*  "If neither of those triggers has occurred, a plaintiff does not

have a claim for contribution under CERCLA.  That does not mean he has no remedy, however. Any time a person has incurred 'necessary costs of response . . . consistent with the national contingency plan[,]' CERCLA provides for a § 9607(a)(4)(B) cost recovery action."  *Id.*

Therefore, based on the relevant case law, as well as the allegations in Plaintiff's complaint, it is clear that Plaintiff, at this time, may only assert a claim under § 9607(a) against Defendant for the costs that it has incurred and may incur in the future as those costs relate to SYW-12.  Accordingly, the Court dismisses Plaintiff's claim under § 9613 against Defendant to the extent that Plaintiff is asserting such a claim regarding costs associated with SYW-12. However, dismissal of that claim is **without prejudice** so that, if the situation changes and Plaintiff can demonstrate that it has met the statutory triggers for a § 9613 claim against Defendant regarding SYW-12, it may seek to reassert that claim.

## IV. CONCLUSION

Having considered the entire file in this case, the parties' submissions, and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendant's motion to dismiss the complaint, *see* Dkt. No. 15, is **GRANTED in part** and **DENIED in part**; and the Court further

**ORDERS** that Defendant's motion to dismiss Plaintiff's CERCLA cost recovery claim for SYW-12 response costs pursuant to 42 U.S.C. § 9613 is **GRANTED** and such claim is **DISMISSED without prejudice**; and the Court further

**ORDERS** that Defendant's motion to dismiss Plaintiff's CERCLA cost recovery claim for SYW-12 response costs pursuant to 42 U.S.C. § 9607 is **DENIED**; and the Court further

**ORDERS** that Plaintiff's CERCLA contribution claim related to response costs at the Onondaga Lake Bottom Site pursuant to 42 U.S.C. § 9613(f) is **DENIED**; and the Court further

**ORDERS** that Plaintiff's CERCLA contribution claim related to natural resource development ("NRD") costs pursuant to 42 U.S.C. § 9613 is **DENIED**; and the Court further

**ORDERS** that Defendant's motion to dismiss Plaintiff's Oil Pollution Act ("OPA") contribution claim is **GRANTED**; and the Court further

**ORDERS** that Defendant's motion to dismiss Plaintiff's New York Navigation Law contribution claim is **DENIED**; and the Court further

**ORDERS** that Defendant's motion to dismiss Plaintiff's state common law contribution claim is **GRANTED**; and the Court further

**ORDERS** that is case is referred to Magistrate Judge Lovric for all further pretrial matters.

**IT IS SO ORDERED.**

Dated: December 7, 2021
      Syracuse, New York

                                          Frederick J. Scullin, Jr.
                                          Senior United States District Judge