**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

**HONEYWELL INTERNATIONAL INC.,**

                                        **Plaintiff,**

              **v.**                                        **5:18-CV-1176**
                                                            **(FJS/ML)**

**SUNOCO (R&M), LLC; SUNOCO, INC.;**
**ATLANTIC REFINING & MARKETING,**
**LLC; and SUN PIPE LINE COMPANY,**
**LLC,**

                                        **Defendants.**

---

**APPEARANCES**                          **OF COUNSEL**

**ARNOLD & PORTER KAYE**                  **BRIAN D. ISRAEL, ESQ.**
**SCHOLER LLP**                           **LAUREN C. DANIEL, ESQ.**
601 Massachusetts Ave., NW               **JOHN ROBINSON, ESQ.**
Washington, D.C. 20001                   **GEOFFREY J. MICHAEL, ESQ.**
Attorneys for Plaintiff

**MCCARTER & ENGLISH, LLP**               **JOHN J. MCALEESE, III, ESQ.**
1600 Market Street                       **MINJI KIM, ESQ.**
Suite 3900                               **AMANDA G. DUMVILLE, ESQ.**
Philadelphia, Pennsylvania 19103
              -and-
Worldwide Plaza
825 Eighth Avenue
31st Floor
New York, New York 10019
              -and-
Four Gateway Center
100 Mulberry Street
Newark, New Jersey 07102
Attorneys for Defendants


**SCULLIN, Senior Judge**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

Pending before the Court is Defendants' motion to dismiss the complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.  *See* Dkt. No. 18.

### II. BACKGROUND

In its 47-page, 336-paragraph complaint, Plaintiff asserts claims against Defendants "pursuant to the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 ('CERCLA'), 42 U.S.C. §§ 9601 *et seq.*, the Oil Pollution Act of 1990 ('OPA'), 33 U.S.C. §§ 2701 *et seq.*, and New York State law . . .  for costs incurred and to be incurred as a result of releases of petroleum and hazardous substances by [Defendants] into Onondaga Lake, its tributaries, and onto land areas which drain into Onondaga Lake in Onondaga County, New York." *See* Dkt. No. 1, Compl., at ¶ 1.

Specifically, Plaintiff asserts the following six causes of action in its complaint:

(1) a CERCLA cost recovery claim for SYW-12 response costs pursuant to § 107(a) of CERCLA, 41 U.S.C. § 9607(a);

(2) a claim for contribution in relation to response costs at the Onondaga Lake Bottom Site, pursuant to § 113(f) of CERCLA, 42 U.S.C. § 9613(f);

(3) a claim for contribution related to natural resource development ("NRD") costs pursuant to § 113(f) of CERCLA, 42 U.S.C. § 9613(f);

(4) a claim for contribution related to oil-related removal costs incurred at the Onondaga Lake Bottom Site and SYW-112, pursuant to OPA, 33 U.S.C. § 2702;

(5) a contribution claim related to petroleum discharges at the Onondaga Lake Bottom Site and SYW-12 pursuant to New York Navigation Law, N.Y. Nav. L. §§ 176(8), 181; and

(6) a claim for contribution for contamination of Onondaga Lake that resulted in and will result in Plaintiff's incurrence of costs pursuant to New York State common law and N.Y. C.P.L.R. § 1401.

*See generally id.*

Among other things, Plaintiff seeks a declaratory judgment finding Defendants "to be jointly and severally liable for response, removal, and/or cleanup costs incurred or to be incurred by [Plaintiff] with respect to the investigation of environmental contamination at SYW-12" and the Onondaga Lake Bottom Subsite. *See id.* at ¶¶ 330-335.

## III. DISCUSSION

### A. Standard of review

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the plaintiff's claim for relief. *See Patane v. Clark*, 508 F.3d 106, 111-12 (2d Cir. 2007). When considering the legal sufficiency of a claim, the court must accept as true all well-pleaded facts in the complaint and draw all reasonable inferences in the plaintiff's favor. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (citation omitted). This presumption, however, does not apply to legal conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Generally, when considering dismissal pursuant to Rule 12(b)(6), the court only considers matters within the four corners of the complaint; however, it may, in addition, consider matters outside the complaint if those matters consist of (1) documents attached to the complaint or answer; (2) documents incorporated by reference in the complaint, and provided by the parties; (3) documents that, although not incorporated by reference, are 'integral' to the complaint; or (4) any matter of

which the court can take judicial notice for the factual background of the case." *See L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011) (quotations omitted). Moreover, even if a document is not incorporated by reference in the complaint, the court may still consider it when the complaint "'relies heavily upon its terms and effect,' thereby rendering the document 'integral' to the complaint. . . . However, 'even if a document is "integral" to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document.' . . . 'It must also be clear that there exist no material disputed issues of fact regarding the relevance of the document.'. . . " *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (internal quotations omitted).

To survive a motion to dismiss, a plaintiff need only plead "a short and plain statement of the claim[,]" Fed. R. Civ. P. 8(a)(2), with sufficient factual "heft to 'sho[w] that the [plaintiff] is entitled to relief[.]'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (quotation omitted).  Under this standard, the complaint's "[f]actual allegations must be  enough to raise a right to relief above the speculative level," *id.* at 555 (citation omitted), and present claims that are "plausible on [their] face," *id.* at 570.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citation omitted).  Furthermore, "[t]he *Twombly* plausibility standard, . . . does not prevent a plaintiff from 'pleading facts alleged "upon information and belief"' where the facts are peculiarly within the possession and control of the defendant, *see*, *e.g.*, *Boykin v. KeyCorp*, 521 F.3d 202, 215 (2d Cir. 2008), or where the belief is based on factual information that makes the inference of culpability plausible, *see Iqbal*, 129 S. Ct. at 1949 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.")." *Arista*

- 4 -

*Records LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010). Finally, this plausibility standard

"'simply calls for enough fact[s] to raise a reasonable expectation that discovery will reveal

evidence of illegal[ity].'" *Id.* (quoting [*Twombly*], 550 U.S. at 556, 127 S. Ct. 1955).


### B.  Plaintiff's OPA claim

Defendants move to dismiss Plaintiff's OPA claim for lack of subject matter jurisdiction

pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure because Plaintiff did not

present that claim to Defendant prior to filing this action. However, because the Court finds, as

did Magistrate Judge Lovric in *Honeywell Int'l Inc. v. Buckeye Partners, L.P.*, 18-CV-646, that

"OPA presentment is a mandatory condition precedent and not a jurisdictional requirement[,]"

*Buckeye Partners, L.P.*, 18-CV-646, Dkt. No. 201 at 36 (citing *In re Oil Spill by Oil Rig*

*DEEPWATER HORIZON the Gulf of Mexico, on April 20, 2010*, 10-4182, 10-4183, 11-0516,

2011 WL 5520295, *9 (E.D. La. Nov. 14, 2011) (citing *Henderson ex rel. Henderson v.*

*Shinseki*, 562 U.S. 428, 434-442 (2011); *Leboeuf v. Texaco*, 9 F. Supp. 2d 661, 665 (E.D. La.

1998))), the Court will treat Defendants' motion as one to dismiss for failure to state a claim

pursuant to Rule 12(b)(6).

Pursuant to Rule 9(c) of the Federal Rules of Civil Procedure, "[i]n pleading conditions

precedent, it suffices to allege generally that all conditions precedent have occurred or been

performed." Fed. R. Civ. P. 9(c). OPA's presentation provision provides, in pertinent part, as

follows:

> (a) Presentation
>
> Except as provided in subsection (b) [delineating presentation to the Fund], all claims for removal costs or damages shall be presented first to the responsible party or guarantor . . . .
>
> (c) Election
>
> If a claim is presented in accordance with subsection (a) and –
>
> > (1) each person to whom the claim is presented denies all liability for the claim, or
> >
> > (2) the claim is not settled by any person by payment within 90 days after the date upon which (A) the claim was presented, or (B) advertising was begun pursuant to section 2714(b) of this title [delineating the claims clearing house procedures], whichever is later,
> >
> > the claimant may elect to commence an action in court against the responsible party or guarantor or to present the claim to the Fund. . . .

33 U.S.C. § 2713.

"OPA defines a 'claim' as 'a request, made in writing for a sum certain, for compensation for damages or removal costs resulting from an incident.'" *Boca Ciega Hotel, Inc. v. Bouchard Transp. Co., Inc.*, 51 F.3d 235, 237-38 (11th Cir. 1995) (quoting 33 U.S.C.A. § 2701(3)). "The OPA does not define the term 'sum certain.' However, the Seventh Circuit has addressed what is needed to satisfy the requirements for a 'sum certain' in the context of the Federal Tort Claims Act." *Nodine v. Plains All Am. Pipeline, L.P.*, No. 17-CV-163-SMY-DGW, 2018 WL 4636242, *3 (S.D. Ill. Sept. 27, 2018). "In *Khan v. U.S.*, 808 F.3d 1169, 1172-73 (7th Cir. 2015), the Court noted, '[a]ll that must be specified . . . is "facts plus a[] demand for money;" if those two things are specified, "the claim encompasses any cause of action fairly implicit in the facts."'" *Nodine*, 2018 WL 4636242, at *3 (quoting [*Kahn*, 808 F.3d] at 1172-73 (quoting *Murrey v.*

- 6 -

*United States*, 73 F.3d 1448, 1452 (7th Cir. 1996))).  "'But as "facts plus a demand for money" must be specified, failure to ask for any damages – any money – is fatal.'"  *Id.* (quoting [*Kahn*, 808 F.3d] at 1173 (quoting *Smoke Shop, LLC v. United States*, 761 F.3d 779, 787-88 (7th Cir. 2014))).

In response to Defendants' argument that it had not met OPA's presentation requirement, Plaintiff filed under seal its 2013 presentation to Defendants, which it referenced in its complaint.  Defendants do not question the authenticity of this document and because Plaintiff relies on this document in its complaint to argue that it has met OPA's presentation requirement, the Court may consider the 2013 presentation in deciding Defendants' motion to dismiss. Having thoroughly reviewed the 2013 presentation, the Court finds that there is no mention of OPA anywhere in the document.  Moreover, although the 2013 presentation provides a sum, which if accepted, would settle all of Plaintiff's claims against Defendants, it does not indicate how that sum would be allocated between the various types of claims – CERCLA, OPA, state-law – that Plaintiff asserts against Defendants.  For these reasons, the Court finds that Plaintiff has not met OPA's presentation requirement and, therefore, grants Defendants' motion to dismiss Plaintiff's OPA claim on this ground.

### C.  Plaintiff's state-law claims

With respect to Plaintiff's New York Navigation Law claim, the Court notes that there is no general express preemption of all state activities and no implied "field" preemption of state law under CERCLA.  *See New York v. Ametek, Inc.*, 473 F. Supp. 2d 432, 433 (S.D.N.Y. 2007) (citations omitted).  Moreover, CERCLA contains "savings clauses" that suggest that Congress did not intend a complete preemption of state laws related to hazardous materials

contamination.  *See, e.g.*, 42 U.S.C. § 9614(a) (providing that "[n]othing in this chapter shall be construed or interpreted as preempting any State from imposing any additional liability or requirements with respect to the release of hazardous substances within such State"); 42 U.S.C. § 9652(d) (providing that "[n]othing in this chapter shall affect or modify in any way obligations or liabilities of any person under other Federal or State Law, including common law, with respect to releases of hazardous substances or other pollutants or contaminants . . . "). However, the doctrine of conflict preemption is an affirmative defense available to parties "notwithstanding the presence of the savings clauses."  1 James T. O'Reilly, *Preemption and state-federal Conflicts: Superfund and Brownfields Cleanup*, § 5:1 (2019).  "Conflict preemption occurs when 'compliance with both federal and state regulations is a physical impossibility or when state law is an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'"  *Town of Halfmoon v. Gen. Electric Co.*, 105 F. Supp. 3d 202, 217 (N.D.N.Y. 2015) (Hurd, J.) (quoting *Marsh v. Rosenbloom*, 499 F.3d 165, 177 (2d Cir. 2007) (internal quotation marks and citation omitted)).

Under New York Navigation Law, "[a]ny person who has discharged petroleum shall be strictly liable, without regard to fault, for all cleanup and removal costs and all direct and indirect damages . . . ." N.Y. Nav. L. § 181(1).  This includes costs incurred from investigation and remediation of petroleum.  *See, e.g.*, *New York v. LVF Realty Co., Inc.*, 59 A.D.3d 519, 521 (2d Dep't 2009).  A party who shoulders the cleanup and removal costs and is not at fault for the petroleum discharge may pursue a claim against the actual polluters.  *See* N.Y. Nav. L. §§ 172(3), 181(5).

With regard to its New York Navigation Law claim, Plaintiff alleges in its complaint, among other things, that (1) it "is a 'person' that has incurred, and will continue to incur,

- 8 -

'cleanup and removal' costs, as that phrase is defined by N.Y. Nav. Law § 172(5), at the Onondaga Lake Bottom Subsite and SYW-12, which were undertaken with the approval of DEC," *see* Dkt. No. 1 at ¶ 320; (2) its "actions related to the 'cleanup and removal' of 'petroleum' at the Onondaga Lake Bottom Subsite and SYW-12 have been in accordance with the NCP, codified at 40 C.F.R. Part 300, and as required by N.Y. Nav. Law § 176(4)," *see id.* at ¶ 321; (3) "Defendants are 'persons' who 'discharged' 'petroleum,' as those terms are defined by N.Y. Nav. Law §§ 172(14), (8), and (15), at the Onondaga Lake Bottom Subsite and SYW-12," *see id.* at ¶ 313; (4) "Defendants' 'petroleum' 'discharges' at Onondaga Lake and SYW-12 were into the waters of the State of New York and/or onto lands from which the discharges might flow or drain into those waters," *see id.* at ¶ 314; (5) "Defendants' petroleum discharges caused direct and indirect damages to the natural resources of Onondaga Lake," *see id.* at ¶ 315; and (6) "[a] portion of the costs [Plaintiff] has incurred and will incur pursuant to the 2018 NRD Consent Decree are direct or indirect damages caused by Defendants' petroleum discharges," *see id.* at ¶ 316.

Furthermore, CERCLA specifically excludes from the definition of the term "pollutant or contaminant" "petroleum, including crude oil or any fraction thereof which is not otherwise specifically listed or designated as a hazardous substance under subparagraphs (A) through (F) of paragraph (14) . . . ". 42 U.S.C. § 9601(33). "Therefore, [Plaintiff's] Navigation Law claim[] related to [Defendants'] alleged release of petroleum are not preempted by CERCLA." *Town of Halfmoon*, 105 F. Supp. 3d at 221 (citing *Coastline Terminals* [*of Connecticut, Inc. v. USX Corp.*], 156 F. Supp. 2d [203,] 209 [(D. Conn. 2001)]).

For all these reasons, the Court finds that Plaintiff has stated a plausible claim against Defendants under New York Navigation Law and, therefore, denies Defendants' motion to dismiss this claim.

### D.  Plaintiff's CERCLA claims

CERCLA's primary purposes are (1) to encourage "'the timely cleanup of hazardous waste sites'" and (2) to "'plac[e] the cost of that [cleanup] on those responsible for creating or maintaining the hazardous condition.'"  *Consol. Edison Co. of New York, Inc. v. UGI Utils., Inc.*, 423 F.3d 90, 94 (2d Cir. 2005) (quoting *Control Data Corp. v. S.C.S.C. Corp.*, 53 F.3d 930, 935-36 (8th Cir. 1995) (internal quotation marks and citations omitted)) (other citations omitted).  Thus, the court is required to "construe the statute liberally in order to effect these congressional concerns."  *Schiavone v. Pearce*, 79 F.3d 248, 253 (2d Cir. 1996) (citations omitted).  However, "CERCLA's scope of coverage is not limitless."  *Town of Halfmoon v. Gen. Elec. Co.*, Nos. 1:09-CV-288, 1:11-CV-6, 2015 WL 6872308, *1 (N.D.N.Y. Nov. 9, 2015) (Hurd, J.).  "CERCLA's definition of hazardous substance does not include petroleum, or the hazardous substances normally found in refined petroleum, including unadulterated waste oil."  *Booth Oil Site Admin. Grp. v. Safety-Kleen Corp.*, 532 F. Supp. 2d 477, 510 (W.D.N.Y. 2007) (citing 42 U.S.C. § 9901(14); *City of New York v. Exxon Corp.*, 766 F. Supp. 177, 186 (S.D.N.Y. 1991); *Aces & Eights Realty, LLC v. Hartman*, No. 02-CV-6032, 2002 WL 31663515, at *6 (W.D.N.Y. Nov. 4, 2002)); *see also* 42 U.S.C. § 9601(33) (excluding "petroleum" from the definition of a hazardous substance).

Defendants seek to dismiss Plaintiff's CERCLA claims, arguing that petroleum is excluded from CERCLA's definition of "hazardous substances," and Plaintiff has not established that

Defendants were responsible for non-petroleum hazardous substance contamination.  *See* Dkt. No. 18-1 at 12-16.  The Court finds this argument unpersuasive.

Plaintiff's complaint alleges facts plausibly suggesting that, in addition to petroleum contamination, Defendants' operations caused contamination in Oil City as well as in the Lake Bottom Subsite with non-petroleum-related hazardous substances.  *See* Dkt. No. 1 at ¶ 190; *T & K Realty, LLC v. Teeter Envtl. Servs., Inc.*, No. 5:07-CV-0990 (GTS/GHL), 2010 WL 1189375, *4 (N.D.N.Y. Mar. 24, 2010) (Suddaby, J.) (holding that the complaint alleged facts plausibly suggesting that, "in addition to causing petroleum contamination, the [defendant's] removal of the underground storage tank ("UST") caused Plaintiff's property to be contaminated with the volatile organic compounds dichlorobenzene, dichloroethane, methylene, chloride, trichloroethene, benzene, ethylbenzene, naphthalene, toluene, trimethylbenzene, xylenes, solvents, and petroleum constitutes" (citation omitted)).  For example, in its complaint, Plaintiff alleges that Defendants "spilled or leaked contaminants contained in non-petroleum-related hazardous substances" during their operations in Oil City, and that those compounds included "chlorinated volatile organic compounds ('VOCs'), which are not a constituent found in petroleum products but are associated with products like equipment cleaning solvents," which were "found in the soil and/or groundwater at Oil City as well as in the Lake Bottom Subsite." *See* Dkt. No. 1 at ¶ 191.  According to Plaintiff, "[t]he chlorinated VOCs found at Oil City include carbon tetrachloride, chlorobenzene, methylene chloride, trichloroethylene ('TCE'), vinyl chloride, 1,3-butadien, 1,40dichlorobenzene, 1,1-dichloroethane, 1,2-dichloroethane, 1-3-dichloroethene, tetrachloroethylene, and 1,2,4-trichlorobenzene." *See id.* at ¶ 192.

Additionally, Plaintiff alleges that "DEC has identified at least the following as current or pre-remediation contaminants of concern in the Oil City area: 1,2,4-trimethylbenzene, arsenic,

barium, benzene, benzo(a)anthracene, benzo(a)pyrene, benzo(b)fluoranthene,

benzo(k)fluoranthene, butylbenzenes, cadmium, chlorobenzene, chromium, chrysene, copper,

dibenz[a,h]anthracene, ethylbenzene, indeno(1,2,3-CD)pyrene, lead, manganese, mercury,

methyl tert-butyl ether, naphthalene, n-propylbenzenes, PCB (Aroclor 1260), propylbenzenes,

petroleum products, phenanthrene, TCE, trimethylbenzenes, zinc, and xylenes." *See id.* at

¶ 193.  Plaintiff further alleges that, "[i]n addition to petroleum-related materials," Defendants'

terminal parcels "contained significant zinc waste contamination," high quantities of lead, and

that "at least a portion of the hazardous wastes, hazardous substances, and industrial wastes

generated, handled, treated, or stored at [Defendants'] facilities, including tank bottoms and

separator sludge, were disposed of or released on or near Oil City." *See id.* at ¶¶ 163-167.

Plaintiff additionally alleges various other types of contamination from hazardous substances,

including, among other things, corrosion of tank bottoms resulting in spills of product

contaminated with rust, metals, and other hazardous substances; spills from tank bottom

cleanout and tank bottom sludge, and oil/water separator sludge disposal; and spills and leaks of

solvents used to clean equipment.  *See id.* at ¶ 91.

   The Court finds that these above-cited allegations, as well as many others in the complaint,

are more than sufficient to demonstrate that CERCLA's oil exclusion does not bar Plaintiff's

CERCLA claims.  Therefore, the Court denies Defendants' motion to dismiss Plaintiff's

CERCLA claims on this ground.


## IV. CONCLUSION

   After carefully considering the entire file in this matter, the parties' submissions and the

applicable law, and for the above-stated reasons, the Court hereby

ORDERS that Defendants' motion to dismiss the complaint, *see* Dkt. No. 18, is **GRANTED in part** and **DENIED in part**; and the Court further

ORDERS that Defendants' motion to dismiss Plaintiff's CERCLA claims is **DENIED**; and the Court further

ORDERS that Defendants' motion to dismiss Plaintiff's Oil Pollution Act ("OPA") contribution claim is **GRANTED**; and the Court further

ORDERS that Defendants' motion to dismiss Plaintiff's New York Navigation Law contribution claim is **DENIED**; and the Court further

ORDERS that this case is referred to Magistrate Judge Lovric for all further pretrial matters.

**IT IS SO ORDERED.**

Dated:  March 28, 2022
        Syracuse, New York

Frederick J. Scullin, Jr.
Senior United States District Judge

- 13 -