FIRST AMENDED CIVIL CASE MANAGEMENT PLAN

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Honeywell International Inc., *Plaintiff*, v. Buckeye Partners, L.P., et al., *Defendants*. | No. 5:18-CV-00646 (FJS/ML) |
| Buckeye Partners, L.P., et al. *First Third-Party Plaintiffs*, v. YAD Associates, Inc., et al., *First Third-Party Defendants*. | |
| Buckeye Partners, L.P., et al. *Second Third-Party Plaintiffs*, v. Atlantic Richfield Company, et al., *Second Third-Party Defendants*. | |

| | |
|---|---|
| Chevron Corporation, et al., <br><br> *Counter-Claimants,* <br><br> v. <br><br> Buckeye Partners, L.P., et al., <br><br> *Counter-Defendants.* | |
| Chevron Corporation, et al., <br><br> *Cross-Claimants,* <br><br> v. <br><br> Atlantic Richfield Company, et al., <br><br> *Cross-Defendants.* | |
| Honeywell International Inc., <br><br> *Plaintiff,* <br><br> v. <br><br> Sunoco (R&M), LLC, et al., <br><br> *Defendants.* | No. 5:18-CV-01176 (FJS/ML) <br> *(Consolidated)* |
| Honeywell International Inc., <br><br> *Plaintiff,* <br><br> v. <br><br> CITGO Petroleum Corporation, <br><br> *Defendant.* | No. 5:19-CV-01219 (FJS/ML) <br> *(Consolidated)* |

**IT IS HEREBY ORDERED that**, pursuant to Rule16(b), Federal Rules of Civil Procedure, an initial conference will be held in this case before the Honorable MIROSLAV LOVRIC, United States Magistrate Judge, on **May 12, 2022, at 1:00 PM** via telephone conference.

2

Counsel for all parties or individuals appearing pro se in the above-captioned action are directed to confer in accordance with Fed. R. Civ. P. 26(f) with respect to all of the agenda items listed below, no later than **twenty-one (21) days** before the scheduled Rule 16 Conference. Following that Rule 26(f) conference, a report of the results of the conference, in the format set forth below, must be filed with the clerk. Pursuant to the April 4, 2022 and April 22, 2022 Text Orders of the Court, this report must be filed on or before May 5, 2022.

This First Amended Civil Case Management Plan ("First Amended CCMP") provides responses from the parties in each of the three above-captioned consolidated cases. Where appropriate, the parties individually reference *Honeywell International Inc. v. Buckeye Partners, L.P. et al.*, No. 5:18-CV-00646 (FJS/ML) as the "Buckeye Case," *Honeywell International Inc. v. Sunoco (R&M), LLC et al.*, No. 5:18-CV-01176 (FJS/ML) as the "Sunoco Case," and *Honeywell International Inc. v. CITGO Petroleum Corporation*, No. 5:19-CV-01219 (FJS/ML) as the "CITGO Case."

Matters which the Court will discuss at the status conference include the following:

1) **JOINDER OF PARTIES.**

   The parties do not intend to join additional parties to these actions.

   If Honeywell's request to amend its complaints is granted and as anticipated, the Buckeye Defendants/Third-Party Plaintiffs continue to prosecute their current third-party claims, the YAD Defendants would request an extension of time for the YAD Defendants or any other similarly situated third-party defendant to initiate crossclaims or fourth-party claims until October 31, 2022 or 45 days after the production of any existing settlement agreements between parties to this litigation, whichever occurs first.

2) **AMENDMENT OF PLEADINGS.**

   On April 21, 2022, Honeywell filed a Letter Motion seeking leave to amend its pleadings to (1) omit the claims that were dismissed in the Court's Memorandum-Decisions and Orders (ECF Nos. 224, 263, 268) and (2) omit its claims and allegations related to SYW-12, including Honeywell's claim brought pursuant to Section 107 of the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"). ECF No. 276. The Court denied Honeywell's Letter Motion, without prejudice and further held that, "[t]he Court will address at the Rule 16 Initial Conference the procedure to be followed as to any amendment of any pleadings or joinder of any parties." ECF No. 277. Buckeye set forth its position in a Letter Brief to the Court on April 26, 2022. ECF No. 278.

   This Section of the First Amended CCMP will be updated after the Rule 16 conference in accordance with Magistrate Judge Lovric's April 22, 2022 Text Order.

3) **DISCOVERY.**

   All fact discovery shall be completed consistent with the schedule set forth below. All expert discovery shall be completed consistent with the schedule below.

3

**4) MOTIONS.**

All dispositive motions, excluding discovery motions, shall be made consistent with the schedule below. Discovery motions shall be made on or before sixty (60) days after the deadline for the relevant phase of discovery, as provided in the schedule below.

**5) TRIAL.**

These consolidated actions will be ready to proceed to trial 120 days after the Court issues a decision on all dispositive motions filed in the cases or 120 days after the deadline for dispositive motions passes without any party filing the same, whichever is later. The length of the trial cannot be determined at this time. The parties request that the trial be held in Syracuse, New York.

**6) HAVE THE PARTIES FILED A JURY DEMAND:**

Yes.

**7) DOES THE COURT HAVE SUBJECT MATTER JURISDICTION? ARE THE PARTIES SUBJECT TO THE COURT'S JURISDICTION? HAVE ALL PARTIES BEEN SERVED?**

The parties agree that the Court has subject matter jurisdiction over these cases and personal jurisdiction over all Defendants. All parties have been served in each of the consolidated actions.

**8) WHAT ARE THE FACTUAL AND LEGAL BASES FOR PLAINTIFF'S CLAIMS AND DEFENDANTS' DEFENSES (INCLUDE COUNTERCLAIMS & CROSSCLAIMS, IF APPLICABLE)?**

   A. *Buckeye Case.*

   Honeywell's Position: The factual and legal basis for Plaintiff's claims are set forth in Plaintiff's complaint. Without waiving its right to argue any factual or legal basis supported by its Complaint, Plaintiff provides the following summary of the factual and legal bases for its claims.

   The legal bases for Plaintiff's claims include the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, 42 U.S.C. §§ 9601 et seq.; the New York Navigation Law, N.Y. Nav. Law § 181; New York State law; and the common law.

   The factual bases for Plaintiff's claims include, but are not limited to:

   i. Buckeye's ownership and operation of facilities in Oil City.

   ii. Buckeye's contribution to contamination in the Onondaga Lake Bottom Subsite of the Onondaga Lake Superfund Site.

    iii. Honeywell's costs incurred in investigating and remediating the Onondaga Lake Bottom Subsite.

    iv. Buckeye's corporate structures and their relationships to predecessor entities that owned or operated facilities in Oil City.

<u>Buckeye's Position</u>: Without waiving its right to argue any factual or legal defense, and subject to any future amendment of the pleadings, Buckeye states generally that it denies that its activities caused or contributed to the contamination in the Onondaga Lake Bottom Subsite of the Onondaga Lake Superfund Site and the SYW-12 property and denies that it is liable to Honeywell on any of the claims asserted, or for any of the amounts sought, in this lawsuit. Buckeye further asserts that any damages which could be allocable to Buckeye are divisible amongst numerous other parties, including Honeywell and the Third-Party Defendants, and should be allocated according to fault.

As is more fully set out below, Buckeye further claims that it is entitled to complete contractual indemnification and defense from Exxon Mobil and/or the YAD Defendants.

B. *Sunoco Case.*

<u>Honeywell Position</u>: The factual and legal basis for Plaintiff's claims are set forth in Plaintiff's complaint. Without waiving its right to argue any factual or legal basis supported by its Complaint, Plaintiff provides the following summary of the factual and legal bases for its claims.

The legal bases for Plaintiff's claims include the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, 42 U.S.C. §§ 9601 et seq.; the New York Navigation Law, N.Y. Nav. Law § 181; New York State law; and the common law.

The factual bases for Plaintiff's claims include, but are not limited to:

    i. Sunoco's ownership and operation of facilities in Oil City.

    ii. Sunoco's contribution to contamination in the Onondaga Lake Bottom Subsite of the Onondaga Lake Superfund Site.

    iii. Honeywell's costs incurred in investigating and remediating the Onondaga Lake Bottom Subsite.

    iv. Sunoco's corporate structures and their relationships to predecessor entities that owned or operated facilities in Oil City.

<u>Sunoco Response:</u> Without waiving their right to argue any factual or legal defense, Defendants Sunoco (R&M), LLC n/k/a Energy Transfer (R&M), LLC, Sunoco, Inc. n/k/a ETC Sunoco Holdings LLC, Atlantic Refining & Marketing, LLC, and Sun Pipe Line Company, LLC (hereinafter "Sunoco Defendants") deny that they caused or contributed to the contamination of the Onondaga Lake Bottom Subsite of the Onondaga Lake Superfund Site and/or the SYW-12 property, during their ownership and operations and deny that they

are liable to Honeywell on any of the claims asserted, or any third party claims, or for any amounts sought in the consolidated actions.

C. *CITGO Case*.

Honeywell Position: The factual and legal basis for Plaintiff's claims are set forth in Plaintiff's complaint. Without waiving its right to argue any factual or legal basis supported by its Complaint, Plaintiff provides the following summary of the factual and legal bases for its claims.

The legal bases for Plaintiff's claims include the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, 42 U.S.C. §§ 9601 et seq.; the New York Navigation Law, N.Y. Nav. Law § 181; New York State law; and the common law.

The factual bases for Plaintiff's claims include, but are not limited to:

   i. CITGO's ownership and operation of facilities in Oil City.

   ii. CITGO's contribution to contamination in the Onondaga Lake Bottom Subsite of the Onondaga Lake Superfund Site.

   iii. Honeywell's costs incurred in investigating and remediating the Onondaga Lake Bottom Subsite.

   iv. CITGO's corporate structures and their relationships to predecessor entities that owned or operated facilities in Oil City.

CITGO Response: Without waiving its right to argue any factual or legal defense, Defendant CITGO states generally that it denies that its operations or activities caused or contributed to the contamination of the Onondaga Lake Bottom Subsite of the Onondaga Lake Superfund Site and/or the SYW-12 property, during its period of ownership and operations and denies that it is liable to Honeywell on any of the claims asserted, or any third party claims, or for any amounts sought in the consolidated actions.

D. *Buckeye Case Against Oil City PRP Third-Party Defendants*.

Buckeye Position: This Section will be completed after Magistrate Judge Lovric has issued a determination on the extent to which Honeywell's pleadings can be amended.

Regardless of any future amendments to the pleadings, the factual and legal bases for Buckeye's claims against Exxon Mobil are more fully set forth in the Second Amended Third-Party Complaint and will remain. Buckeye has claims based on, *inter alia*, Exxon Mobil's obligations and duties pursuant to certain Asset Purchase Agreement under which Exxon Mobil must defend and indemnify Buckeye.

Third-Party Defendants' Response: As discussed above, Honeywell intends to amend its complaint to strike its claim against Buckeye under CERCLA Section 107, which based on the Court's Orders, *see* ECF No. 236, would remove any basis for Buckeye to maintain its

claims against the majority of the second third-party defendants, including Second Third-Party Defendants Atlantic Richfield Company; CITGO Petroleum Corporation; Chevron Corporation, Chevron U.S.A., Inc., Texaco, Inc., and TRMI-H LLC (the "STP Chevron Defendants"); Hess Corporation; Sunoco (R&M) LLC; Sun Pipe Line Company, LLC; and Shell Oil Company ("Shell").

ExxonMobil's Response:  Honeywell's intention to strike its claim against Buckeye under CERCLA Section 107 would also remove any basis for Buckeye to maintain any of its contribution claims against ExxonMobil, along with all of the second third-party defendants.  With regard to any of Buckeye's remaining claim(s) against ExxonMobil, ExxonMobil reserves all of its rights and defenses with respect to them, and/or cross claims asserted against it and/or any counterclaims ExxonMobil may assert.

E.  *Buckeye Case Against the YAD Third-Party Defendants.*

Buckeye Position: The factual and legal bases for Buckeye's claims against the first third-party defendants, YAD Associates, Inc., Pyramid Company of Onondaga, Robert J. Congel, and Bruce A. Keenan ("YAD Defendants") are set forth completely in Buckeye's First Third-Party Complaint (ECF No. 38).  Without waiving its right to argue any factual or legal basis set forth in its First Third-Party Complaint, Buckeye states that its claims against the YAD Defendants arise out of the YAD Defendants' contractual obligations to defend and indemnify Buckeye under the 1989 Agreement of Sale and the related Continuing Guaranty and Surety Agreement.

YAD Defendants' Response: Without waiving their right to argue any factual or legal defense in response to any current or future third-party claims and its right to bring any counterclaims or crossclaims, the YAD Defendants deny that there is any underlying set of facts that triggered any obligation that may exist under the terms of the subject agreements and/or for which the Buckeye Defendants have or will not be indemnified by others.

ExxonMobil's Response: To the extent the YAD Defendants pursue cross-claims against ExxonMobil, ExxonMobil reserves its right to pursue cross-claims against the YAD Defendants.  ExxonMobil also reserve its rights to bring any claim against the YAD Defendants, pursuant to the Settlement Agreement between the parties.

9) **WHAT FACTUAL AND LEGAL ISSUES ARE GENUINELY IN DISPUTE?**

The parties are not able to assess all of the factual and legal issues that will be genuinely in dispute in this case.  However, the parties anticipate that they will dispute the following: Defendants'/Third-Party Defendants' and/or their predecessors' contributions to, or liability for, contamination in the Onondaga Lake Bottom Subsite as well as each party's equitable share of costs incurred by Honeywell, and/or the applicability of those costs to the alleged activity attributable to Defendants/Third-Party Defendants.  The parties may identify additional factual and legal issues genuinely in dispute as discovery in the cases progresses.

10) **CAN THE ISSUES IN LITIGATION BE NARROWED BY AGREEMENT OR BY MOTIONS?  ARE THERE DISPOSITIVE OR PARTIALLY DISPOSITIVE ISSUES APPROPRIATE FOR DECISION ON MOTION?**

Case 5:18-cv-00646-FJS-ML   Document 281   Filed 05/05/22   Page 8 of 18

While it is possible that some additional portion of the issues in these actions may be narrowed either by agreement or by summary judgment motion, the parties are not able to specifically identify such issues this early in the case.

All parties anticipate seeking summary judgment in these cases where appropriate.

Honeywell and Third-Party Defendants further believe that Honeywell's proposed amendment of its complaint to strike its claims related to SYW-12, including its CERCLA Section 107 claim will substantially narrow the issues and parties in the consolidated action. Based on the Court's orders, *see* ECF No. 236, Honeywell's proposed amendment will remove any basis for Buckeye to maintain suit against the majority of the second third-party defendants, including Second Third-Party Defendants Atlantic Richfield Company; CITGO Petroleum Corporation; the STP Chevron Defendants; Hess Corporation; Sunoco (R&M) LLC; Sun Pipe Line Company, LLC; and Shell.

11) **WHAT SPECIFIC RELIEF DO THE PARTIES SEEK?  WHAT ARE THE DAMAGES SOUGHT?**

   A. *Buckeye Case.*

   Honeywell seeks the relief identified in the Complaint, including without limitation: contribution by Defendants with respect to the costs incurred or to be incurred by Honeywell for the investigation and remediation costs associated with the Onondaga Lake Bottom Subsite; contribution by defendants of their share of NRD costs incurred or to be incurred by Honeywell pursuant to the 2018 NRD Consent Decree, and declaratory judgement as specified in the Complaint.

   B. *Sunoco Case.*

   Honeywell seeks the relief identified in the Complaint, including without limitation: contribution by Defendants with respect to the costs incurred or to be incurred by Honeywell for the investigation and remediation costs associated with the Onondaga Lake Bottom Subsite; contribution by defendants of their share of NRD costs incurred or to be incurred by Honeywell pursuant to the 2018 NRD Consent Decree, and declaratory judgement as specified in the Complaint.

   C. *CITGO Case.*

   Honeywell seeks the relief identified in the Complaint, including without limitation: contribution by Defendants with respect to the costs incurred or to be incurred by Honeywell for the investigation and remediation costs associated with the Onondaga Lake Bottom Subsite; contribution by defendants of their share of NRD costs incurred or to be incurred by Honeywell pursuant to the 2018 NRD Consent Decree, and declaratory judgement as specified in the Complaint.

   D. *Oil City PRPs Third-Party Actions.*

8

Subject to any future amendments to the pleadings, Buckeye seeks the relief identified in the Second Amended Third-Party Complaint against the OIL City PRPs pursuant to CERCLA § 113 which are derivative of Honeywell's CERCLA § 107 claims.

Buckeye also seeks the relief identified in the Second Amended Third-Party Complaint against Exxon Mobil including contractual defense and indemnification under a certain Asset Purchase Agreement.

E. *YAD Defendants Third-Party Action.*

Buckeye seeks the relief demanded in the First Third-Party Complaint against the YAD Defendants including a declaratory judgment finding that the YAD Defendants must defend and indemnify Buckeye in this Action. Buckeye also seeks damages from the YAD Defendants for their breaches of contract under the Agreement of Sale and Continuing Guaranty and Surety Agreement.

**12) DISCOVERY PLAN:**

A. **Mandatory Disclosures**

**The parties will exchange the mandatory disclosures required under Rule 26(a)(1) at least seven (7) days prior to the date of the Rule 16 conference, unless they have obtained prior approval from the assigned Magistrate Judge to extend that deadline.**

i. *Buckeye Case.* The parties exchanged mandatory disclosures under Rule 26(a)(1) on August 30, 2018. Second Third Party Defendant Shell served its Rule 26(a)(1) disclosures on August 16, 2021.

ii. *Sunoco and CITGO Cases*. The parties exchanged mandatory disclosures under Rule 26(a)(1) on May 5, 2022.

iii. *Third-Party Cases.* Second Third-Party Defendant Chevron Corporation moved via Letter Brief on May 2, 2022 for relief from the Rule 26 Mandatory Disclosures requirement, which was denied in the Court's May 4, 2022 Text Order. ECF No. 280. All third-parties exchanged mandatory disclosures under Rule 26(a)(1) on May 5, 2022.

iv. Honeywell and the Buckeye Third-Party Plaintiffs agree to provide their previously exchanged mandatory disclosures and previously served discovery responses to the YAD Defendants by July 15, 2022 or within 15 days of the entry of a protective order, whichever occurs last.

B. **Subjects of Disclosure**

**The parties jointly agree that discovery will be needed to address the following subjects:**

1.   Defendants' ownership and operation of facilities in Oil City.

2. Defendants' contribution to contamination in the Onondaga Lake Bottom Subsite of the Onondaga Lake Superfund Site.

3. Honeywell's costs incurred in investigating and remediating the Onondaga Lake Bottom Subsite.

4. Defendants' corporate structures and their relationships to predecessor entities that owned or operated facilities in Oil City.

5. Contractual indemnification agreements between the parties in Buckeye's First and Amended Second Third-Party Complaints related to the liabilities at issue in Honeywell's complaints.

All Parties, including third-party defendants, will seek any other category of information that is relevant to their claims, defenses, and/or third-party claims.

Honeywell's Position on certain discovery: Honeywell does not agree that discovery on the topic of Honeywell's and/or any third party's contribution of contamination to the Onondaga Lake Bottom Subsite is needed and reserves all right to object to discovery requests related to this, or any other, topic.

Buckeye's Position on certain discovery: Buckeye will also seek information related to Honeywell's own contribution to the contamination in the Onondaga Lake Bottom Subsite of the Onondaga Lake Superfund Site and SYW-12, as well as the potential contamination introduced by third parties.

Buckeye will similarly seek information relating to Honeywell's settlement of claims like those in these cases with other potentially responsible parties, including the Third-Party Defendants.

CITGO's Position on certain discovery: CITGO will also seek information related to Honeywell, its predecessors and related affiliates and entities, contribution to the contamination in Onondaga Lake Superfund Site, its subsites and environs, Onondaga Lake Bottom Subsite, SYW-12, and tributaries of Onondaga Lake as well as the potential contamination introduced by third parties relevant to this cause of action. CITGO will also seek information relating to Honeywell's settlement of claims like those in these cases with other potentially responsible parties.

Sunoco's Position on certain discovery: Sunoco will also seek information related to Honeywell, its predecessors and related affiliates and entities, contribution to the contamination in Onondaga Lake Superfund Site, its subsites and environs, Onondaga Lake Bottom Subsite, SYW-12, and tributaries of Onondaga Lake as well as the potential contamination introduced by third parties relevant to this cause of action. Sunoco will also seek information relating to Honeywell's settlement of claims like those in these cases with other potentially responsible parties.

Third-Party Defendants' Position on certain discovery: Third-Party Defendants will seek information related to:

    a. Plaintiff's and other third party contribution of contamination to the Onondaga Lake Superfund Site, its subsites, and environs.

    b. The remedial action objectives established by the Record of Decision and the relationship between the nature, extent, and volume of Honeywell's contamination of Onondaga Lake and the ROD-selected remedy and related costs incurred by Honeywell.

    c. Plaintiff's settlement of like claims including out of court settlements with other potentially responsible parties.

**C. Discovery Sequence**

**Describe the parties' understanding regarding the timing of discovery, and state whether it is anticipated that discovery will be phased to address different issues in stages.**

The parties anticipate that voluminous discovery will need to be exchanged, including with respect to anticipated expert witnesses.

    1) Fact discovery will conclude on November 30, 2023.

    2) Expert discovery will conclude on September 30, 2025.

The following summary details the combined discovery schedule for all consolidated actions:

| Event | Date |
|---|---|
| Exchange of Initial Disclosures in Sunoco and Citgo Cases | May 5, 2022 |
| Rule 16 Conference | May 12, 2022 |
| Deadline for Honeywell to Amend its Pleadings | Subject to discussion at Rule 16 Conference |
| Deadline for Primary Defendants to Respond to Amended Complaint | Subject to discussion at Rule 16 Conference |
| Deadline for Buckeye to Amend Existing Third-Party Complaints | Subject to discussion at Rule 16 Conference |
| Deadline for Third-Parties to Respond to Amended Complaints | Subject to discussion at Rule 16 Conference |
| Entry of Stipulated Protective Order | July 1, 2022 |
| Entry of Stipulation and Order on E-Discovery | July 1, 2022 |
| Fact Discovery Closes | November 30, 2023 |

| Deadline for Exchange of Affirmative Expert Reports and Reliance Materials[1] | May 30, 2024 |
|---|---|
| Deadline for Exchange of Responsive Expert Reports and Reliance Materials[1] | December 15, 2024 |
| Deadline for Exchange of Rebuttal Expert Reports and Materials[1] | April 30, 2025 |
| Expert Discovery Closes | September 30, 2025 |
| Deadline for Filing any Daubert Motions | November 30, 2025 |
| Deadline for Initiating Dispositive Motions | January 30, 2026 |
| Deadline to File Joint Pretrial Order | 90 days after the Court issues a decision on all dispositive motions filed in the case |
| Deadline to File Pre-Trial Motions | TBD |
| Trial Begins | 120 days after the Court issues a decision on all dispositive motions filed in the cases or 120 days after the deadline for dispositive motions passes without any party filing the same, whichever is later. |

### D. Written Discovery

**Describe the written discovery demands which the parties contemplate serving under Rules 33, 34 and 36, including when they will be promulgated, the areas to be covered, and whether there is any need for any party to exceed the number of interrogatories permitted under Rule 33.**

The scope of written discovery demands will include the issues identified supra in this Order. A party may serve on any other party no more than 60 written interrogatories, including all discrete subparts. Any interrogatories already served prior to this order in the Buckeye action will count against the 60 written interrogatory limit.

### E. Depositions

**Set forth the parties' expectations regarding depositions, including the approximate number to be taken, their location, a general description of the deponents, and an indication of whether any non-party fact depositions are anticipated.**

It is not possible at this stage of the case to set out with certainty the number of depositions that will be necessary. However, the parties anticipate conducting depositions pursuant to

---

[1] Affirmative experts are those who will testify for a party on an issue on which that party bears the burden of proof; responsive experts are those who will testify for a party on an issue on which the opposing party bears the burden of proof or otherwise in response to any affirmatively disclosed opinions; and rebuttal experts are those who will testify for a party on an issue newly raised by an opposing party's responsive expert.

Rule 30(b)(6), as well as depositions of current or former employees of the parties with knowledge of the parties' operations.

F. **Experts**

**Set forth the parties' expectations regarding the retention of experts, and identify any particular issues to be addressed by the court concerning the retention and exchange of the information regarding experts, including whether the parties seek a variance from the expert disclosure requirements of the form uniform pretrial scheduling order typically issued by the court (i.e., initial expert disclosure at least ninety days, responsive expert disclosures at least forty-five days, and rebuttal reports due at least thirty days, before the close of discovery).**

At this time, the parties do not anticipate any particular issues that would need to be addressed by the Court relating to the retention of experts. The parties anticipate retaining one or more experts but cannot effectively assess their needs at this time. The parties agree to exchange all materials relied on by any testifying expert witness.

Due to the complexity of the litigation that will be expert driven, the parties expect significant scientific analysis and expert testimony will be required, requiring adequate and necessary time in the discovery schedule for expert reports, fact analysis, related reports and depositions of experts.

G. **Electronic Discovery**

**Set forth the parties' understanding and expectations regarding discovery of electronically stored information. This description should include any agreements reached with respect to the retention of electronically stored information and the manner in which it will be produced, if requested. The parties should also identify any agreements regarding the manner in which electronically stored information subject to claims of privilege or work product protection will be handled, and whether a court order will be requested, either on stipulation or otherwise, to address this issue. If an agreement has been reached on the entry of such an order, provide a brief description of the provisions which will be included in a proposed order.**

The parties agree that a stipulation and order are needed to govern discovery of electronically stored information for each action. The parties agree to jointly enter a stipulation and propose an order on electronic discovery on or before July 1, 2022.

H. **Protective Orders**

**If the parties anticipate requesting a protective order from the court pursuant to Rule 26(c), describe the basis for the request and nature of the proposed protective order.**

The parties agree that a stipulated protective order is needed to govern issues of confidentiality and privilege, including a Rule 502(d) Order for each action. The parties

agree to propose a joint stipulated protective order pursuant to Fed. R. Civ. P. Rule 26(c) on or before July 1, 2022.

I. **Anticipated Issues Requiring Court Intervention**

**Provide a brief description of any discovery related issues which, the parties reasonably anticipate, may require court intervention.**

At this time, the parties do not anticipate any discovery related issues that may require the Court's intervention.

13) **IS IT POSSIBLE TO REDUCE THE LENGTH OF TRIAL BY STIPULATIONS, USE OF SUMMARIES OR STATEMENTS, OR OTHER EXPEDITED MEANS OF PRESENTING EVIDENCE? IS IT FEASIBLE AND DESIRABLE TO BIFURCATE ISSUES FOR TRIAL?**

It may be possible to reduce the length of trial by motions, stipulations, or other means and/or to bifurcate the issues for trial, but the parties are not able to effectively assess this possibility this early in the cases. The parties will consult one another about these issues as the cases develop.

14) **ARE THERE RELATED CASES PENDING BEFORE THE JUDGES OF THIS COURT?**

No. All pending related cases have been consolidated.

15) **IN CLASS ACTIONS, WHEN AND HOW WILL THE CLASS BE CERTIFIED?**

These are not class action cases.

16) **WHAT ARE THE PROSPECTS FOR SETTLEMENT?**

A. *Buckeye Case.*

**Please circle below the prospect for settlement:**

1---2---3---4---(5)---6---7---8---9---10

**(VERY UNLIKELY)º º º º º º º º º º º (LIKELY)**

**CANNOT BE EVALUATED PRIOR TO** completion of initial fact discovery.

**HOW CAN SETTLEMENT EFFORTS BE ASSISTED?** (Do not indicate any monetary amounts at this time, settlement will be explored by the Magistrate Judge at the time of the initial status conference)

The parties in the Buckeye case held mandatory mediation on April 11, 2019 and were unable to settle. The parties are hopeful that in light of the Court's recent orders, the parties may resolve this matter before trial.

B. *Sunoco Case.*

**Please circle below the prospect for settlement:**

1---2---3---4---(5)---6---7---8---9---10

**(VERY UNLIKELY)º º º º º º º º º º (LIKELY)**

**CANNOT BE EVALUATED PRIOR TO** completion of initial fact discovery.

**HOW CAN SETTLEMENT EFFORTS BE ASSISTED?** (Do not indicate any monetary amounts at this time, settlement will be explored by the Magistrate Judge at the time of the initial status conference)

Prior to litigation, the parties in the Sunoco Case engaged in settlement discussions, which for the most part were productive negotiations, despite a final settlement not being reached. For this reason, we are hopeful that in light of the Court's recent orders, the parties may resolve this matter before trial.

C. *CITGO Case.*

**Please circle below the prospect for settlement:**

1---2---3---4---(5)---6---7---8---9---10

**(VERY UNLIKELY)º º º º º º º º º º (LIKELY)**

**CANNOT BE EVALUATED PRIOR TO** completion of initial fact discovery.

**HOW CAN SETTLEMENT EFFORTS BE ASSISTED?** (Do not indicate any monetary amounts at this time, settlement will be explored by the Magistrate Judge at the time of the initial status conference)

The parties in the CITGO Case have differing views on corporate successorship issues. Early motions on this issue may help move settlement negotiations forward.

17) **IF YOUR CASE WAS SELECTED AS A QUALIFYING MANDATORY MEDIATION CASE, CONFIRM THAT YOU HAVE:**

The Buckeye Case was selected for mandatory mediation; a mediation session was held on April 11, 2019, but the case did not settle. *See* ECF No. 47.

The Sunoco and CITGO Cases have not yet been selected for mandatory mediation.

*****************************************************************************

Pursuant to Fed. R. Civ. P. 26(f), the parties conferred via email, and in certain instances via telephone, on several dates, beginning Tuesday, April 19, 2022, with the participation of:

*For Plaintiff Honeywell International, Inc.*

Brian Israel
Arnold & Porter Kaye Scholer, LLP
Brian.Israel@arnoldporter.com
T:  202.942.5876

Lauren Daniel
Arnold & Porter Kaye Scholer, LLP
Lauren.Daniel@arnoldporter.com
T:  202.942.5970

Geoffrey Michael
Arnold & Porter Kaye Scholer, LLP
geoffrey.michael@arnoldporter.com
T:  202.942.6752

*For Defendants Buckeye Partners, L.P., Buckeye GP, LLC, Buckeye Pipe Line Company, L.P., and Buckeye Pipe Line Holdings, L.P.*

John G. Powers
Hancock Estabrook, LLP
jpowers@hancocklaw.com
T:  315-565-4547

James O'Shea
Hancock Estabrook, LLP
joshea@hancocklaw.com
T:  315-565-4545

*For Defendants Sunoco (R&M), LLC n/k/a Energy Transfer (R&M), Sunoco, Inc. n/k/a ETC Sunoco Holdings LLC, Atlantic Refining & Marketing, LLC, and Sun Pipe Line Company, LLC*

John J. McAleese, III
Herold Law, P.A.
jmcaleese@heroldlaw.com
T:  215-680-1860

*For Defendant CITGO Petroleum Corporation*

Karen L. Prena
Karen Lee Prena P.C.
kprena@prenalaw.com
T:  773-327-0952

*For First Third-Party Defendants YAD Associates, Inc., Pyramid Company of Onondaga, and Bruce Kenan*

Kevin C. Murphy
The Wladis Law Firm, PC
kmurphy@wladislawfirm.com
T: 315-445-1700

Timothy J. Lambrecht
The Wladis Law Firm, PC
tlambrecht@wladislawfirm.com
T: 315-445-1700

Christopher Baiamonte
The Wladis Law Firm, PC
cbaiamonte@wladislawfirm.com
T: 315-445-1700

*For Second Third-Party Defendant Atlantic Richfield Company*

S. David Devaprasad
Devaprasad PLLC
sdd@devalaw.com
T: 855-496-1500

*For Second Third-Party Defendants Chevron Corporation, Chevron U.S.A. Inc., Texaco, Inc. and TRMI-H LLC*

Michael W. Peters
The West Firm, PLLC
mpeters@westfirmlaw.com
T: 518-641-0500

*For Second Third-Party Defendants Exxon Mobil Corporation and ExxonMobil Oil Corporation*

John B. McCusker
Rosemarie DaSilva
Duane Morris LLP
jcmccusker@duanemorris.com
rdasilva@duanemorris.com
T: 973-424-2081

*For Second Third-Party Defendant Hess Corporation*

Robert M. Germain , I
Germain, Germain Law Firm

robert@germainlaw.com
T:  315-422-0314

*For Second Third-Party Defendant Shell Oil Company*

Megan Brillault
Beveridge & Diamond, P.C.
mbrillault@bdlaw.com
T:  212-702-5414

Eric Klein
Beveridge & Diamond, P.C.
eklein@bdlaw.com
T:  617-419-2316