**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**YAD ASSOCIATES, INC.; PYRAMID**
**COMPANY OF ONONDAGA; and**
**BRUCE KENAN,**

                    **First Third-Party Defendants,**

               **v.**                                      **5:18-CV-646**
                                                             **(FJS/ML)**
**EXXONMOBIL OIL CORPORATION and**
**EXXONMOBIL CORPORATION,**

                    **Second Third-Party Defendants.**
_____

APPEARANCES                          OF COUNSEL

**THE WLADIS LAW FIRM, P.C.**         **KEVIN C. MURPHY, ESQ.**
P.O. Box 245                         **TIMOTHY J. LAMBRECHT, ESQ.**
Syracuse, New York 13214             **CHRISTOPHER BAIAMONTE, ESQ.**
Attorneys for YAD Associates, Inc.;
Pyramid Company of Onondaga;
and Bruce Kenan

**KAREN LEE PRENA P.C.**              **KAREN L. PRENA, ESQ.**
3100 North Sheridan Road
Suite 4D
Chicago, Illinois 60657
Attorneys for ExxonMobil Oil
Corporation

**DUANE MORRIS LLP**                  **JOHN B. MCCUSKER, ESQ.**
One Riverfront Plaza                 **ROSEMARIE DASILVA, ESQ.**
1037 Raymond Boulevard               **ARJUN D. SHAH, ESQ.**
Suite 1800
Newark, New Jersey 07102
Attorneys for ExxonMobil Oil
Corporation and ExxonMobil
Corporation

**MCCUSKER, ANSELMI, ROSEN &**      **KATHERINE E. SUELL, ESQ.**
**CARVELLI, PC**
805 Third Avenue
12th Floor
New York, New York 10022
Attorneys for ExxonMobil Oil
Corporation and ExxonMobil
Corporation

**SCULLIN, Senior Judge**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

Pending before the Court are (1) Second Third-Party Defendants Exxon Mobil Oil Corporation's and ExxonMobil Corporation's motion to dismiss four additional crossclaims by First Third-Party Defendants YAD Associates, Inc., Pyramid Company of Onondaga, and Bruce Kenan (collectively "YAD Defendants") pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, *see* Dkt. No. 309, and (2) YAD Defendants' cross-motion for leave to file a Second Amended Answer containing an amended first additional crossclaim pursuant to Rule 15 of the Federal Rules of Civil Procedure, *see* Dkt. No. 324.

### II. BACKGROUND

Plaintiff Honeywell International, Inc. commenced the lead action in this matter in 2018 against Defendants Buckeye Partners, L.P., Buckeye GP, LLC, Buckeye Pipe Line Company, L.P., and Buckeye Pipe Line Holdings, L.P. (collectively "the Buckeye Defendants") seeking to recover costs incurred as a result of the Buckeye Defendants' and other Defendants' alleged releases of petroleum and other hazardous substances into Onondaga Lake, its tributaries, and into the groundwater beneath "Oil City," an oil storage center near Onondaga Lake, in

- 2 -

Onondaga County, New York.  *See generally* Dkt. No. 1.[1]  In turn, the Buckeye Defendants

commenced a third-party action against YAD Defendants and a second third-party action

against Exxon Mobil Oil Corporation and ExxonMobil Corporation (collectively referred to as

the singular entity "Exxon"), among others, seeking indemnification for any costs that it may

owe Plaintiff Honeywell for cleaning up the petroleum and hazardous substances, as well as to

hold Exxon responsible for the releases.  *See* Dkt. Nos. 38, 72.  YAD Defendants alleged

various counterclaims against the Buckeye Defendants as well as crossclaims against Exxon.

*See* Dkt. No. 237.  On March 30, 2022, this Court granted in part and denied in part Exxon's

motion to dismiss YAD Defendants' crossclaims against it, thus dismissing YAD Defendants'

first crossclaim against Exxon pursuant to New York's Navigation Law § 181 but permitting

YAD Defendants to maintain their second and third crossclaims for common law

indemnification and contribution.  *See* Dkt. No. 269.

On May 20, 2022, Exxon filed its Answer and asserted counterclaims against YAD

Defendants for breach of contract as well as seeking a declaratory judgment.  *See* Dkt. No. 290.

Exxon generally alleged that YAD Defendants had failed to indemnify it pursuant to a

Settlement Agreement that the parties executed in 2007.  *See id.* at ¶¶ 50-62.  YAD Defendants

then answered Exxon's counterclaims and raised four additional "counterclaims" against Exxon

for breach of contract (two claims), fraudulent inducement, and indemnification, all of which

relate to the 2007 Settlement Agreement.  *See* Dkt. No. 292.  Pursuant to the Court's request,

Exxon and YAD Defendants conferred regarding procedural issues related to YAD Defendants'

---

[1] As will be discussed below, Plaintiff Honeywell previously commenced a similar action in
2010 against Exxon pertaining to discharges into Onondaga Lake, which Plaintiff Honeywell
voluntarily dismissed without prejudice as a result of Exxon's willingness to enter into a tolling
agreement for claims asserted from January 4, 2010, until June 1, 2018.  *See* Dkt. No. 1 at
¶¶ 256-259.

"counterclaims," and YAD Defendants submitted an Amended Answer, which properly identified their "counterclaims" as additional crossclaims against Exxon. *See* Dkt. Nos. 297, 299, 300.

Exxon now moves to dismiss all four of YAD Defendants' additional crossclaims in their Amended Answer pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See* Dkt. No. 309. YAD Defendants oppose Exxon's motion with respect to their second additional crossclaim for fraudulent inducement and third additional crossclaim for indemnification and have cross-moved for leave, pursuant to Rule 15 of the Federal Rules of Civil Procedure, to file a Second Amended Answer containing an amended first additional crossclaim for breach of contract. *See* Dkt. No. 324. YAD Defendants also withdrew their fourth additional crossclaim for breach of contract with prejudice. *See* Dkt. No. 324-10 at 8.

## III. DISCUSSION

### A. Legal standards

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the claimant's allegations. *See Patane v. Clark*, 508 F.3d 106, 112 (2d Cir. 2007). When considering the legal sufficiency of a claim, the court must accept as true all well-pleaded facts in the pleadings and draw all reasonable inferences in the claimant's favor. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (citation omitted). This presumption, however, does not apply to legal conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

To survive a motion to dismiss, a claimant need only plead "a short and plain statement of the claim[,]" Fed. R. Civ. P. 8(a)(2), with sufficient factual "heft to 'sho[w]' that the pleader is

entitled to relief[.]'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (quotation omitted). Under this standard, the pleading's "[f]actual allegations must be enough to raise a right to relief above the speculative level," *id.* at 555 (citation omitted), and present claims that are "plausible on [their] face," *id.* at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citation omitted). Furthermore, "[t]he *Twombly* plausibility standard, . . . does not prevent a [claimant] from 'pleading facts alleged "upon information and belief"' where the facts are peculiarly within the possession and control of the defendant, *see, e.g.*, *Boykin v. KeyCorp*, 521 F.3d 202, 215 (2d Cir. 2008), or where the belief is based on factual information that makes the inference of culpability plausible, *see Iqbal*, 129 S. Ct. at 1949 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.")." *Arista Records LLC v. Doe*, 604 F.3d 110, 120 (2d Cir. 2010) (internal citation omitted). Finally, this plausibility standard "'simply calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of illegal[ity].'" *Id.* (quoting [*Twombly*], 550 U.S. at 556).

With respect to YAD Defendants' motion to amend, Federal Rule of Civil Procedure 15(a)(2) provides that courts should freely grant a claimant leave to amend a pleading "'when justice so requires.'" *Haag v. MVP Health Care*, 866 F. Supp. 2d 137, 140 (N.D.N.Y. 2012) (quoting Fed. R. Civ. P. 15(a)(2)). However, courts should deny leave to amend a pleading as futile where the proposed amended pleading would not survive a motion to dismiss. *See id.* (citing *Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 88 (2d Cir. 2002)). Thus, courts review the futility of a Rule 15(a) motion to amend under the same standard as a motion to dismiss. *See Cottone v. Does*, No. 1:17-cv-1006 (DNH/TWD), 2018

U.S. Dist. LEXIS 72756, *3 (N.D.N.Y. Apr. 30, 2018) (Dancks, M.J.) (citing *Nettis v. Levitt*, 241 F.3d 186, 194 n.4 (2d Cir. 2001) (parenthetical omitted)) (other citation omitted).

### B.  YAD Defendants' first additional crossclaim for breach of contract

In April of 2007, Exxon, Third-Party Defendant Pyramid Company of Onondaga ("PCO"), Third-Party Defendant Bruce A. Kenan, and others, entered into a Settlement Agreement regarding Exxon's property located in Oil City (hereinafter referred to as the "Exxon Terminal").  *See generally* Dkt. No. 324-4.  YAD Defendants' first crossclaim generally alleges that Exxon did not comply with the "Notice and Tender" provision in Section 7.1(A) of the Settlement Agreement when it failed to notify YAD Defendants of its historical petroleum handling and waste management and disposal practices at the Exxon Terminal site and of potential claims against Exxon for those practices.  *See* Dkt. No. 300 at ¶¶ 102-116.  Section 7.1(A) provides the following in its entirety:

> Notice and Tender.  In the event that any officer or registered agent of any party hereto or PCO receives actual notice of any written claim by a Third Party giving rise to a right of Indemnification of such party or PCO under this Agreement (the "Indemnitee"), such Indemnitee shall, within sixty (60) days after receipt of such notice, or such shorter time period as may be required by litigation, give written notice thereof to the other parties hereto responsible for such Indemnification (the "Indemnitor") setting forth the facts and circumstances giving rise to such claim for Indemnification and shall tender the defense of such claim to the Indemnitor.  If the Indemnitee fails to give such notice and tender such defense within such 60-day period, or such shorter time period as may be required by litigation, the Indemnitee shall be solely responsible for any Costs with respect to such claim to the extent they are attributable to such failure; but failure to give such notice and tender such defense within such 60-day period, or such shorter time period as may be required by litigation, shall not result in a forfeiture or waiver of any rights to Indemnification for any Costs with respect to such claim to the extent they are not attributable to such failure.

*See* Dkt. No. 324-4 at § 7.1(A) (hereinafter "the Notice and Tender provision").

Exxon moved to dismiss YAD Defendants' first additional crossclaim as time barred. *See* Dkt. No. 309-2 at 9-11.  YAD Defendants concede that, as drafted, their first crossclaim for breach of contract failed to explicitly allege Exxon's post-2010 breach of the Notice and Tender provision.  *See* Dkt. No. 324-10 at 32.  YAD Defendants have therefore cross-moved for leave to file a Second Amended Answer containing an amended first additional crossclaim to set forth Exxon's conduct more explicitly in breaching the Notice and Tender provision.  *See id.*

To support their cross-motion, YAD Defendants argue that there is no evidence in the record that Exxon complied with the Notice and Tender provision by notifying YAD Defendants of potential costs pertaining to (1) Plaintiff Honeywell's June 1, 2018 complaint, (2) the Buckeye Defendants' August 5, 2019 Second Third-Party complaint, and (3) the Buckeye Defendants' October 30, 2019 Amended Second Third-Party complaint.  *See id.* at 27-28.  YAD Defendants contend that, in violation of the Notice and Tender provision, Exxon failed to set forth in writing to YAD Defendants the facts and circumstances of each filing and explain how such filing may have triggered a duty to indemnify, and also failed to tender or seek indemnification under the terms of the Settlement Agreement.  *See id.* at 28.  According to YAD Defendants, because Exxon failed to comply with the Notice and Tender provision, it breached the terms of the Settlement Agreement, and YAD Defendants' duty to indemnify "was either reduced in scope or voided outright."  *See id.*

YAD Defendants also identify various provisions in Plaintiff Honeywell's 2018 complaint that Exxon allegedly failed to disclose in violation of the Notice and Tender provision, including that Plaintiff Honeywell alleged claims for costs it incurred for natural resources damages and in reimbursing past USEPA costs that it incurred regarding the SYW-12

site.  *See id.* at 30.  YAD Defendants further contend that Plaintiff Honeywell's 2018 complaint raised more expansive and more detailed allegations of Exxon's liability and ways in which Exxon's wastes caused Plaintiff Honeywell to incur reimbursable response costs.  *See id.* at 30-31.  Accordingly, YAD Defendants request that the Court permit them to amend their first additional crossclaim through a Second Amended Answer to the extent that they allege that Exxon's failure to notify them of these new and expanded claims, from both Plaintiff Honeywell and the Buckeye Defendants, constituted a breach of the Settlement Agreement.  *See id.* at 32.

More specifically, in YAD Defendants' Proposed Second Amended Answer ("PSAA"), they include allegations that Exxon failed to disclose "each of the following at the time the Settlement Agreement was entered into:

      (a)  Spills or leaks into sanitary sewers;

      (b)  Spills or leaks to storm sewers;

      (c)  Direct discharges to the Barge Canal;

      (d)  Wastes flowing over the ground into the Barge Canal;

      (e)  Spills or leaks into the subsurface at locations other than Oil City that were transported by groundwater directly into the Lake or the Barge Canal; and

      (f)  The dredging and relocation of sediments contaminated with ExxonMobil wastes into the Lake and at SYW-12; and

      (g)  The disposal of hazardous substances owned or possessed by ExxonMobil at SYW-12."

*See* Dkt. No. 324-2 at ¶ 111.

YAD Defendants further allege in the PSAA that Exxon failed to comply with the Notice and Tender provision of the Settlement Agreement when it failed to provide notice or seek indemnification with respect to Plaintiff Honeywell's 2018 complaint, the Buckeye

Defendants' Second Third-Party Complaint, or the Buckeye Defendants' Amended Second Third-Party Complaint until May 20, 2022, and such failure to provide timely notice constitutes a breach of the Settlement Agreement.  *See id.* at ¶¶ 115-117.

Exxon responds that such amendment is futile because the Notice and Tender provision explicitly provides that "failure to provide notice and tender defense within the 60-day time period 'shall not result in a forfeiture or waiver of any rights to Indemnification,'" and Exxon's "alleged failure to do so did not and could not constitute a breach of contract."  *See* Dkt. No. 335 at 18-19.  As such, Exxon asserts that YAD Defendants' proposed amended first additional crossclaim for breach of contract cannot state a claim on which relief may be granted and is futile. *See id.* at 19.

"'If [a] contract is capable of only one reasonable interpretation, *i.e.*, is unambiguous, [courts] are required to give effect to the contract as written.'"  *VKK Corp. v. Nat'l Football League*, 244 F.3d 114, 129 (2d Cir. 2001) (quoting *K. Bell & Assoc.*, 97 F.3d at 637 (internal quotation marks omitted)) (other citations omitted); *accord Vincenzo v. Wallkill Cent. Sch. Dist.*, No. 1:21-CV-0308 (GTS/TWD), 2022 U.S. Dist. LEXIS 57583, *31 (N.D.N.Y. Mar. 29, 2022) (Suddaby, C.J.).  In this case, the plain language of the Notice and Tender provision sets forth that, to the extent the Indemnitee (Exxon) fails to provide notice and tender the defense of a claim to the Indemnitor (YAD Defendants) within sixty days, the Indemnitee will be responsible for costs with respect to that claim to the extent they are attributable to the Indemnitee's failure to provide notice.  *See* Dkt. No. 234-4 at § 7.1(A).  However, the Notice and Tender provision further provides that the Indemnitee's failure to provide the notice and tender defense to the Indemnitor within sixty days "shall not result in a forfeiture or waiver of

any rights to Indemnification for any Costs with respect to such claim" to the extent they are not attributable to the Indemnitee's failure to provide notice.  *See id.*

Thus, the Court finds that, even if Exxon breached the Settlement Agreement by failing to provide notice or tender the defense to YAD Defendants, the no-waiver clause provides that Exxon can still be indemnified for any costs not relating to their failure to provide notice.  Since YAD Defendants' amended allegations in the PSAA pertain to the claims for which they believe Exxon should have notified them, but do not pertain to costs attributable to Exxon's failure to provide notice, the Court finds that permitting YAD Defendants to amend the allegations in their first additional crossclaim would be futile.  As such, the Court grants Exxon's motion to dismiss YAD Defendants' first additional crossclaim and denies YAD Defendants' cross-motion for leave to file a Second Amended Answer amending that crossclaim.

### C.  YAD Defendants' second additional crossclaim for fraudulent inducement

In YAD Defendants' second additional crossclaim against Exxon, they allege that, during the negotiations leading up to the 2007 Settlement Agreement, Exxon made fraudulent representations to Defendants PCO and Kenan "with the intention of securing a release and indemnification agreement" regarding costs that Exxon caused with respect to its conduct at the Exxon Terminal.  *See* Dkt. No. 300 at ¶¶ 117-124.  Exxon moves to dismiss this crossclaim as untimely.  *See* Dkt. No. 309-2 at 11-15.

"In New York, an action for fraud must be commenced within six years of the fraud, or within two years from the time that plaintiff discovered the fraud or reasonably could have discovered it." *Koral v. Saunders*, 36 F.4th 400, 408 (2d Cir. 2022) (citing *Sargiss v. Magarelli*, 12 N.Y.3d 527, 532, 909 N.E.2d 573, 881 N.Y.S.2d 651 (2009) (citing N.Y. C.P.L.R. § 213(8);

- 10 -

§ 203(g))).  This statute of limitations also applies to claims for fraudulent inducement.  *See*

*Maslin v. Angel Eyes Produce, Inc.*, No. 8:18-cv-01309 (MAD/DJS), 2019 U.S. Dist. LEXIS

100539, *9-*10 (N.D.N.Y. June 17, 2019) (D'Agostino, J.).

Exxon contends that this crossclaim is premised on alleged conduct that transpired in

2007 and is barred by New York's six-year statute of limitations for fraud claims.  *See* Dkt. No.

309-2 at 12.  Exxon admits that YAD Defendants' crossclaim would be timely if they

discovered the alleged fraud no later than two years prior to filing the crossclaim on June 10,

2022.  *See id.*  However, Exxon argues that YAD Defendants' own pleading establishes that

they could have discovered the alleged fraud in 2010 when Plaintiff Honeywell filed its initial

complaint, and again in 2019 when the Buckeye Defendants filed their First Third-Party

Complaint.  *See id.* at 13.  Therefore, Exxon asserts that the statute of limitations bars YAD

Defendants' crossclaim for fraudulent inducement.  *See id.* at 15.

YAD Defendants respond that they did not know the facts from which the fraud could

have been inferred prior to May 20, 2022, when Exxon filed its counterclaims against them.

*See* Dkt. No. 324-10 at 20.  According to YAD Defendants, they could not have learned of

Exxon's historical petroleum handling and waste management and disposal practices from

Plaintiff Honeywell's 2010 complaint because that complaint did not suggest that Exxon

withheld facts from YAD Defendants to induce them to enter into a Settlement Agreement that

would trigger YAD Defendants' duty to indemnify Exxon.  *See id.* at 22.  Specifically, YAD

Defendants argue that Plaintiff Honeywell's 2010 complaint pertained to direct discharges into

Onondaga Lake and did not concern direct discharges at the Exxon Terminal.  *See id.*  With

respect to the Buckeye Defendants' 2019 complaints, YAD Defendants argue that they

concerned a different terminal from the Exxon Terminal that was the subject of the 2007 Settlement Agreement.  *See id.* at 22-23.

In response, Exxon contends that "there can be no doubt that it conclusively appears YAD Defendants had knowledge of facts from which the fraud they allege could reasonably have been inferred based upon their own express statements in their denial of tender letter, dated August 4, 2010," which Exxon attached to its memorandum in reply.[2]  *See* Dkt. No. 335 at 9 (citing Dkt. No. 335-1, Ex. A. at 5-14).  According to Exxon, YAD Defendants analyzed the 2007 Settlement Agreement's indemnity provision and compared Exxon's representations made therein with a complete analysis of Plaintiff Honeywell's 2010 complaint as it related to that indemnity provision, and they "raised the very same fraudulent inducement theory as claimed here[.]"  *See id.* at 11.

In that 2010 letter, YAD Defendants argued that Exxon's conduct or actions, as Plaintiff Honeywell alleged and including "the release or disposal of hazardous substances in sewers, pipes, tributaries to Onondaga Lake[,] and Onondaga Lake" itself, were "acts or actions that ExxonMobil or its corporate predecessors either arranged or caused to take place.  They are such actions ExxonMobil or its corporate predecessors would have known took place."  *See* Dkt. No. 335-1 at 10-11.  YAD Defendants further pointed to Section 6(A) of the Settlement Agreement and asserted that, if Exxon understood that allegations of the type set forth in Plaintiff Honeywell's 2010 complaint were potentially subject to indemnification, then Exxon "breached the terms of the Settlement Agreement by not disclosing" that information to YAD Defendants by the Effective Date.  *See id.* at 11; *see also* Dkt. No. 324-4 at § 6.  Based on YAD

---

[2] Exxon incorporated this 2010 letter by reference in its Answer and Counterclaims.  *See* Dkt. No. 290 at ¶ 39.

Defendant's argument in this 2010 letter, the Court finds that they knew of or reasonably could have discovered Exxon's alleged fraud as they were aware that Exxon allegedly withheld important information about their practices for handling and disposing of toxic substances both in Onondaga Lake and in the area around it.  Having known of such alleged fraud and Exxon's failure to report it to YAD Defendants before the Effective Date, it follows that YAD Defendants would have also been on notice at that time of Exxon's alleged conduct in fraudulently inducing Defendants PCO and Kenan into executing the 2007 Settlement Agreement so that Exxon could be indemnified for undisclosed wrongdoings if eventually discovered and litigated, as they were in Plaintiff Honeywell's 2010 complaint.  Since YAD Defendants would have been aware of or should have discovered the alleged fraud in 2010, and they did not file their second additional crossclaim until June 10, 2022, the Court finds that YAD Defendants' second additional crossclaim for fraudulent inducement is time-barred and, therefore, grants Exxon's motion to dismiss this claim.

### D.  YAD Defendants' third additional crossclaim for indemnification

YAD Defendants' third additional crossclaim alleges that, in Section 7 of the 2007 Settlement Agreement, Exxon agreed to indemnify Defendants PCO and Kenan "from any and all Costs of any kind or nature, including attorney's fees, with regard to Environmental Contamination removed by or on behalf of" Exxon "as of or prior to the Effective Date of the Settlement Agreement."  *See* Dkt. No. 300 at ¶ 126.  YAD Defendants further allege that Exxon seeks indemnification from them in its counterclaims with respect to costs associated with the Onondaga Lake NPL Site, the Onondaga Lake Bottom Subsite, SYW-12, and the Onondaga Lake Superfund Site.  *See id.* at ¶ 131.  However, according to YAD Defendants, pursuant to

the terms of the Settlement Agreement, it is Exxon who is required to indemnify Defendants

PCO and Kenan, not the other way around.  *See id.*

Section 7 of the Settlement Agreement provides the following, in its entirety:

> Retention of Liabilities.  Notwithstanding any other provisions of
> this Agreement, however, ExxonMobil and Mobil Pipe Line each
> retain their respective responsibilities for and shall Indemnify
> Pyramid and PCO and their Affiliates from any and all Costs of
> any kind or nature, respectively, (i.e. ExxonMobil will Indemnify
> Pyramid and its Affiliates against claims involving ExxonMobil
> and not claims involving Mobil Pipe Line, and Mobil Pipe Line
> will Indemnify Pyramid and its Affiliates against claims involving
> Mobil Pipe Line and not claims involving ExxonMobil), with
> regard to: (a) any workers' compensation claims filed or accruing
> against ExxonMobil and/or Mobil Pipe Line for or related to
> claims arising prior to the Effective Date; (b) business invitee
> claims filed or accruing against ExxonMobil and/or Mobil Pipe
> Line for or related to claims arising prior to the Effective Date; (c)
> Environmental Contamination removed by or on behalf of
> ExxonMobil or Mobil Pipe Line (i.e. transported via hauler off
> site) from the Mobil Property as of or prior to the Effective Date;
> and (d) costs for any third party services actually provided to or
> contracted for by ExxonMobil and/or Mobil Pipe Line, including,
> without limitation, attorney fees, prior to the Effective Date of
> this Agreement; and (e) fines or penalties imposed on
> ExxonMobil and/or Mobil Pipe Line prior to the Effective Date
> (collectively, "Retained Liabilities" or individually, "Retained
> Liability").

*See* Dkt. No. 324-4 at § 7.

Exxon first argues that YAD Defendants' third additional crossclaim for indemnification

fails to state a claim because they seek indemnification for potential exposure from Plaintiff

Honeywell's 2018 complaint and lawsuit based upon contamination at the Exxon Terminal.  *See*

Dkt. No. 309-2 at 15.  However, Exxon argues that such claim does not exist because Plaintiff

Honeywell voluntarily withdrew any and all claims against Exxon; and, therefore, YAD

Defendants seek indemnification for exposure that is not triggered anywhere in Plaintiff

Honeywell's action.  *See id.* at 15-16.

- 14 -

Secondly, Exxon argues that YAD Defendants' third additional crossclaim seeks indemnification for defending Exxon's pending counterclaim for indemnification and not a claim asserted by a third party. *See id.* at 16. According to Exxon, the express language of Section 7 only addresses costs for third-party claims relating to Environmental Contamination removed by or on behalf of Exxon through transporting it off site via a hauler. *See id.* Exxon contends that YAD Defendants do not seek to recover costs that they have already paid to a third party or for which they may be exposed to a third party, which are not covered under Section 7. *See id.* at 17. To further support this argument, Exxon points to the Notice and Tender provision in Section 7.1, which requires notice and tender of any such claim subject to indemnification liability. *See id.* at 16.

YAD Defendants first assert that Exxon's argument that Plaintiff Honeywell's claim no longer exists and therefore there is no claim for which Exxon must indemnify YAD Defendants is "fully at odds" with the allegations in Exxon's counterclaim, which alleges that Exxon "'continues to incur costs and suffer damages, including but not limited to, Costs associated with defending the Honeywell Action, the negotiation and entry into the Tolling Agreement and any subsequent extensions thereof, and Costs associated with defending the related Buckeye Action.'" *See* Dkt. No. 324-10 at 24 (quoting Dkt. No. 290 at ¶ 55).

YAD Defendants further contend that Exxon attempts to "graft onto Section 7 of the Settlement Agreement a limitation on [Exxon's] duty to indemnify that is not found in the document." *See id.* at 25. YAD Defendants interpret Section 7 as explicitly stating that Exxon must indemnify them for any and all costs, including, without limitation, attorney's fees of any kind or nature, as a result of Environmental Contamination removed from the Exxon Terminal prior to the Settlement Agreement's Effective Date. *See* Dkt. No. 324-10 at 25-26. YAD

Defendants argue that there is no exclusion or exception for legal fees that they incur in fending off Exxon's claim for indemnification of "obvious retained liabilities[.]" *See id.* at 26. Specifically, YAD Defendants point to the Settlement Agreement's definition of "Costs," which are defined as "'any and all claims, liabilities, actions, costs, damages, losses, fines, penalties and other expenses, including without limitation, attorney fees of any kind or nature.'" *See id.* at 25 (quoting Dkt. No. 324-4 § 5(B)).

Although Plaintiff Honeywell dropped its claims against Exxon, Exxon admits in its counterclaims against YAD Defendants that it continues to incur costs and damages as a result of Plaintiff Honeywell's and the Buckeye Defendants' actions. *See* Dkt. No. 290 at ¶ 55. Exxon also seeks a declaratory judgment defining YAD Defendants' liability to Exxon regarding "(1) any and all claims brought by Honeywell upon termination of the Tolling Agreement and/or during the course of settlement negotiations, [and] (2) any and all claims brought by third parties in connection with purported migration of environmental contamination" from the Exxon Terminal and in accordance with the terms, conditions, and obligations of the 2007 Settlement Agreement. *See id.* at ¶ 62. Although Plaintiff Honeywell may have dismissed its claims against Exxon, based on these allegations in Exxon's counterclaim, the Court finds that there are still questions of liability and costs with respect to Exxon's practices at the Exxon Terminal site, which exist for YAD Defendants to seek indemnification.

The Court next addresses whether Section 7 of the Settlement Agreement permits YAD Defendants to seek indemnification for costs, including attorneys' fees, with respect to Exxon's pending counterclaim. Section 7 provides the following five instances in which Exxon retained liabilities and must indemnify YAD Defendants: (1) workers' compensation claims; (b) business invitee claims; (3) "Environmental Contamination removed by or on behalf of [Exxon] (i.e.

transported via hauler off site) from the [Exxon Terminal] as of or prior to the Effective Date"; (4) costs for third-party services provided to or contracted for by Exxon; and (e) fines and penalties imposed on Exxon.  *See* Dkt. No. 324-4 at § 7.  Although Exxon argues that this language does not authorize a first party claim for indemnification under New York law, the Court concludes that the plain language of Section 7 does not include such limitation.  The only reference to a "third party" in Section 7 pertains to indemnification for third party services that Exxon contracted for or received, but that is not the provision under which YAD Defendants seek indemnification.[3]  Instead, YAD Defendants seek indemnification for costs pertaining to Environmental Contamination removed from the Exxon Terminal site.  There is no limitation to those costs, as the phrase preceding the list of indemnifiable claims explicitly states that Exxon must indemnify "any and all Costs of any kind or nature" with regard to those claims.  *See id.* As YAD Defendants argue, the Settlement Agreement defines "Costs" as including "attorneys' fees, of any kind or nature."  *See* Dkt. No. 324-4 at § 5(b).  As such, the Court finds that YAD Defendants have sufficiently alleged that they may seek indemnification from Exxon pursuant to Section 7 of the Settlement Agreement for costs, including attorneys' fees, relating to claims of environmental contamination removed from the Exxon Terminal site.  Accordingly, the Court denies Exxon's motion to dismiss this third additional crossclaim.

---

[3] Exxon points to the Notice and Tender provision in Section 7.1 as relating to Section 7 and showing that Section 7 only pertains to third-party claims.  However, the Court finds that nothing in Section 7.1 limits Section 7 to indemnification for third-party claims; instead, it provides extra requirements for a party seeking indemnification for a third-party's claims.  *See* Dkt. No. 324-4 §§ 7, 7.1.

## IV. CONCLUSION

After carefully considering the entire file in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Exxon's motion to dismiss YAD Defendants' four additional crossclaims, *see* Dkt. No. 309, is **GRANTED in part** and **DENIED in part**; and the Court further

**ORDERS** that Exxon's motion to dismiss YAD Defendants' first, second, and fourth additional crossclaims for breach of contract and fraudulent inducement is **GRANTED**; and the Court further

**ORDERS** that Exxon's motion to dismiss YAD Defendants' third additional crossclaim for indemnification is **DENIED**; and the Court further

**ORDERS** that YAD Defendants' cross-motion for leave to file a Second Amended Answer to amend its first additional crossclaim against Exxon for breach of contract, *see* Dkt. No. 324, is **DENIED**; and the Court further

**ORDERS** that this case is referred to Magistrate Judge Lovric for all further pretrial matters.

**IT IS SO ORDERED.**

Dated:  March 27, 2023
        Syracuse, New York

_____
Frederick J. Scullin, Jr.
Senior United States District Judge

- 18 -